# 21-847

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

PETROFF AMSHEN LLP,

*Plaintiff-Appellant,*

ABC COMPANIES, JOHN DOES,

*Plaintiffs-Third-Party-Defendants,*

—against—

ALFA REHAB PT PC, BRUNSWICK BANK & TRUST COMPANY, JAMES CHENG, CHUNG KWONG YAU, CAI FENG TAN, THE SAMANTHA LEE FAMILY TRUST, ADVANCED REHAB CARE PT PC, JOSEPHINE BELLONI, ANNAROSE ROTONDI TRUST, AGYAL PHYSICAL THERAPY PLLC, WEI JI LI, ASSEM PHYSICAL THERAPY PC, AMRO MAHMOUD SHOKRY BARAKAT, WISDOM PHYSICAL

(*Caption continued on inside cover*)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## JOINT APPENDIX
## VOLUME I OF IV
## (Pages A-1 to A-296)

STEVEN J. SICO
LAW OFFICES STEVEN J. SICO
235 Main Street
Woodbridge, New Jersey 07095
(732) 636-2660

*Attorneys for Defendants-Appellees Cambridge Clarendon Financial Services LLC*

STEVEN AMSHEN
PETROFF AMSHEN LLP
1795 Coney Island Avenue, 3rd Floor
Brooklyn, New York 11230
(718) 336-4200

*Attorneys for Plaintiff-Appellant*

(*Counsel continued on inside cover*)

THERAPY PC, HATEM E. ABOUHASSAN, KISHORE KANDURI, AKA KISHORE K. KANDURI, RADWA PT PC, MOHAMED M. ELMANDOUH, MD, ULTIMATE CARE CHIROPRACTIC PC, GRAIG GRANOVSKY, GRAIG GRANOVSKY CHIROPRACTIC PC, THIRD AVENUE CHIROPRACTIC CARE PC, NATHANIEL MAZZA, THERAKINEMATICE PT PC, LEGASPI MADELINE, PHYSIO SOLUTIONS PT PC, REHAB CONCEPTS PT PC, SIGNIFICANT CARE PT PC, SAYED F. SAYED, NBC HEALTH PHYSICAL THERAPY PC, NATHANIEL BREX ROA CAYETUNA, LITE CARE REHAB PT PC, ISLAM BEKHET, EXTENSIVE CARE PT PC, ANNA MEYERZON, MMA PHYSICAL THERAPY PT PC, MAZED ABDEL MAGID, MD, JMP REHAB CARE PT, HARKIRTAN SINGH, DALBIR KAUR, HOWARD KESSLER, MD, FIRST HAND PHYSICAL THERAPY PC, ABDELHAMID ABOURYA, AKA ABDELHAMID MAHMOUD ABOURYA, EYE ON WELL-BEING ACUPUNCTURE PC, OATES DEVAN, CORE BASICS PC, KHALED NASR, COMMUNITY WELLNESS PHARMACY INC., RAKMIN ILYABAYEV, COMFORT TOUCH PT PC, FERRIN MANUEL, CANARSIE WELLNESS PHARMACY INC., BODY ACUPUNCTURE CARE PC, OKSANA PODHAYETSKA, BRIGHT STAR REHAB PT PC, MOHAMED Y EL SAIDY, BL HEALTHY LIFE ACUPUNCTURE PC, ZENON KURKAREWICZ, BRONX CHIROPRACTIC REHABILITATION, P.C., SEAN DIAMOND, D.C., BEST TOUCH PT PC, MOTAZ M. EBEIDO, VITAL MERIDIAN ACUPUNCTURE PC, LUDMILA BOBCHYNSKA, MD, MEDS4DAYS PHARMACY INC., BRITTNEY COLEMAN, PHYSICAL THERAPY REHAB PC, ACUPUNCTURE HEALTHCARE PLAZA I PC, LAW OFFICES OF DOMINICK W. LAVELLE PC, DOMINICK LAVELLE, AKA DOMINICK W. LAVELLE, ELSANAA PT PC, MAHMOUD ELSANAA, ZHONG SU, LIBING SU, MANHATTAN'S HANDS OF HOPE PT PC, JOHN DOE #1-10, JEREMY JAMES SCHIES, BARAKAT PT PC, DANIMARK PHYSICAL THERAPY PC,

*Defendants-Cross-Defendants-Appellees,*

CAMBRIDGE CLARENDON FINANCIAL SERVICES LLC,

*Defendant-Third-Party-Plaintiff-Cross-Claimaint-Cross-Defendant-Appellee,*

KAI HO RICHARD TANG, CHRISTIAN FERNANDEZ,
DJ DRUG SERVICES LLC, DIANA FERNANDEZ, LIU YU,

*Defendants,*

ROMAN SHAMALOV, HILLSIDE FAMILY CHIROPRACTIC PC,
RIVER CHEMIST CORP.,

*Defendants-Cross-Defendant.*

BENJAMIN M. PINCZEWSKI
PINCZEWSKI & SHPELFOGEL, PC
2753 Coney Island Avenue, 2nd Floor
Brooklyn, New York 11235
(718) 891-8200

*Attorneys for Defendants-Appellees Alfa Rehab PT PC, Brunswick Bank & Trust Company, Agyal Physical Therapy PLLC, Assem Physical Therapy PC, Amro Mahmoud Shokry Barakat, Wisdom Physical Therapy PC, Hatem E. Abouhassan, Kishore Kanduri, AKA Kishore K. Kanduri, Radwa PT PC, Mohamed M. Elmandouh, MD, Therakinematice PT PC, Physio Solutions PT PC, Rehab Concepts PT PC, Significant Care PT PC, Sayed F. Sayed, Lite Care Rehab PT PC, Islam Bekhet, Extensive Care PT PC, Anna Meyerzon, MMA Physical Therapy PT PC, Mazed Abdel Magid, MD, Dalbir Kaur, First Hand Physical Therapy PC, Abdelhamid Abourya, AKA Abdelhamid Mahmoud Abourya, Rakmin Ilyabayev, Bright Star Rehab PT PC, Mohamed Y EL Saidy, Zenon Kurkarewicz, Best Touch PT PC, Motaz M. Ebeido, Vital Meridian Acupuncture PC, Ludmila Bobchynska, MD, Physical Therapy Rehab PC, Manhattan's Hands of Hope PT PC, Barakat PT PC, and Denimark Physical Therapy PC*

DONALD J. POLS
BEILIS & POLS, P.C.
5014 16th Avenue, Suite 338
Brooklyn, New York 11204
(212) 490-2700

*Attorneys for Defendants-Appellees Ultimate Care Chiropractic PC and Graig Granovsky Chiropractic PC*

LLOYD M. EISENBERG
EISENBERG & CARTON
405 RXR Plaza
Uniondale, New York 11556
(516) 221-3700

*Attorneys for Defendants-Appellees NBC Health Physical Therapy PC, Nathaniel Brex Roa Cayetuna, JMP Rehab Care PT, Harkirtari Singh, Dalbir Kaur*

JEFFREY A. CHABROWE
LAW OFFICE OF JEFFREY CHABROWE
261 Madison Avenue, 12th Floor
New York, New York 10016
(917) 529-3921

*Attorneys for Defendant-Appellee Eye On Well-Being Acupuncture PC*

WESLEY R. MEAD
20-77 Steinway Street, Suite SL
Astoria, New York 11105
(718) 306-2107

*Attorney for Defendants-Appellees Body Acupuncture Care PC and Oksana Podhayetska*

LAW OFFICES OF
DOMINICK W. LAVELLE, PC
and DOMINICK LAVELLE,
AKA DOMINICK W. LAVELLE
100 Herricks Road
Mineola, New York 11501
(516) 739-8111

*Defendants-Appellees Pro Se*

MARK L. FURMAN
ABRAMS, FENSTERMAN,
FENSTERMAN, EISMAN, FORMATO,
FERRARA & EINIGER, LLP
22 Donald Drive
Hastings-On-Hudson, New York 10706
(914) 584-6799

*Attorneys for Defendants-Appellees Bronx Chiropractic Rehabilitation, P.C. and Sean Diamond, D.C.*

GALINA FELDSHEROVA
KOPELEVICH & FELDSHEROVA, PC
241 37th Street, Suite 439
Brooklyn, New York 11232
(718) 332-0577

*Attorneys for Defendants-Appellees Third Avenue Chiropractic Care PC and Nathaniel Mazza*

JAMES CHENG
8844 24th Avenue
Brooklyn, New York 11214

*Defendant-Appellee Pro Se*

CHUNG KWONG YAU
225 Bay 44th Street
Brooklyn, New York 11214

*Defendant-Appellee Pro Se*

CAI FENG TAN
225 Bay 44th Street
Brooklyn, New York 11214

*Defendant-Appellee Pro Se*

THE SAMANTHA LEE FAMILY TRUST
8844 24th Avenue
Brooklyn, New York 11214

*Defendant-Appellee Pro Se*

ADVANCED REHAB CARE PT PC
1026 65th Street, 2nd Floor
Brooklyn, New York 12219

*Defendant-Appellee Pro Se*

JOSEPHINE BELLONI
1026 65th Street
Brooklyn, New York 11219

*Defendant-Appellee Pro Se*

ANNAROSE ROTONDI TRUST
1931 60th Street
Brookklyn, New York 11204

*Defendant-Appellee Pro Se*

WEI JI LI
223 Bay 44th Street, Apartment 1
Brooklyn, New York 11214

*Defendant-Appellee Pro Se*

LEGASPI MADELINE
82-50 135th Street, Apartment 6F
Jamaica, New York 11435

*Defendant-Appellee Pro Se*

HOWARD KESSLER
400 East 56th Street
New York, New York 10022

*Defendant-Appellee Pro Se*

OATES DEVAN
23 Sterling Road
Elmont, New York 11003

*Defendant-Appellee Pro Se*

CORE BASICS PC
780 8th Avenue
New York, New York 10036

*Defendant-Appellee Pro Se*

KHALED NASR
780 8th Avenue, Suite 201
New York, New York 10036

*Defendant-Appellee Pro Se*

COMMUNITY WELLNESS
PHARMACY INC.
156-16 Agular Avenue
Flushing, New York 11367

*Defendant-Appellee Pro Se*

COMFORT TOUCH PT PC
8535 58th Avenue
Elmhurst, New York 11373

*Defendant-Appellee Pro Se*

BRITTNEY COLEMAN
86 Dekalb Avenue, Suite 3J
White Plains, New York 10605

*Defendant-Appellee Pro Se*

ROSTISLAV KOFMAN
26 Broadway
New York, New York 10004
(646) 405-9838

*Attorneys for Defendant-Appellee Acupuncture Healthcare Plaza I PC*

ELSANAA PT PC
1247 74th Street, 2nd Floor
Brooklyn, New York 11228

*Defendant-Appellee Pro Se*

MAHMOUD ELSANAA
1247 74th Street, 2nd Floor
Brooklyn, New York 11228

*Defendant-Appellee Pro Se*

ZHONG SU
1247 74th Street
Brooklyn, New York 11228

*Defendant-Appellee Pro Se*

LIBING SU
1247 74th Street
*Brooklyn, New York 11228*

*Defendant-Appellee Pro Se*

JEREMY J. SCHIES
1053 Norton Street
Springfield, Missouri 65803

*Defendant-Appellee Pro Se*

FERRIN MANUEL
8535 58th Avenue
Elmhurt, New York 11373

*Defendant-Appellee Pro Se*

CANARSIE WELLNESS PHARMACY INC.
10317 Glenwood Road
Brooklyn, New York 11236

*Defendant-Appellee Pro Se*

BL HEALTHY LIFE ACUPUNCTURE PC
134 Beach 98th Street
Rockaway Park, New York 11694

*Defendant-Appellee Pro Se*

MEDS4DAYS PHARMACY INC.
86 Dekalb Avenue, Suite 3J
White Plains, New York 10605

*Defendant-Appellee Pro Se*

**TABLE OF CONTENTS**

PAGE

Docket Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

Complaint, dated April 1, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-42

Exhibit A—
Plaintiff's 2016 Form W-9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-295

Exhibit B—
Checks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-297

Exhibit C—
Check, dated June 4, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-316

Exhibit D—
Check, dated May 31, 2017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-318

Exhibit E—
Checks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-320

Exhibit F—
Check, dated June 19, 2017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-323

Exhibit G—
Checks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-325

Exhibit H—
Checks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-336

Exhibit I—
Check, dated July 15, 2017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-340

Exhibit J—
Checks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-342

Exhibit K—
Check, dated June 5, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-345

Exhibit L—
Checks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-347

PAGE

Exhibit M—
Check, dated June 9, 2017 .......... A-353

Exhibit N—
Checks .......... A-355

Exhibit O—
Checks .......... A-359

Exhibit P—
Checks .......... A-362

Exhibit Q—
Checks .......... A-365

Exhibit R—
Check, dated May 31, 2018 .......... A-368

Exhibit S—
Checks .......... A-370

Exhibit T—
Checks .......... A-373

Exhibit U—
Check, dated April 20, 2018 .......... A-377

Exhibit V—
Check, dated July 11, 2018 .......... A-379

Exhibit W—
Check, dated October 30, 2018 .......... A-381

Exhibit X—
Checks .......... A-383

Exhibit Y—
Checks .......... A-386

Exhibit Z—
Checks .......... A-391

PAGE

Exhibit AA-
Check, dated August 7, 2017 .................................... A-397

Exhibit BB—
Checks .................................................. A-399

Exhibit CC—
Check, dated July 2, 2018 ..................................... A-402

Exhibit DD—
Check, dated December 24, 2017 ................................ A-404

Exhibit EE—
Checks .................................................. A-406

Exhibit FF—
Checks .................................................. A-410

Exhibit GG—
Checks .................................................. A-413

Exhibit HH—
Check, dated November 1, 2018 ................................. A-416

Exhibit II—
Checks .................................................. A-418

Exhibit JJ—
Checks .................................................. A-427

Exhibit KK—
Checks .................................................. A-431

Exhibit LL—
Checks .................................................. A-434

Exhibit MM—
Checks .................................................. A-437

Exhibit NN—
Checks .................................................. A-442

PAGE

Exhibit OO—
Check . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-449

Exhibit PP—
Check, dated January 13, 2017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-451

Summons, dated April 1, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-453

Answer and Affirmative Defenses of Defendants Roman Shamalov and River Chemist Corp. to the Complaint, dated July 4, 2019 . . . . A-466

Defendants Nathaniel Mazza and Third Avenue Chiropractic Care PC's Answer, dated July 31, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-508

Defendant Cambridge Clarendon Financial Services, LLC's Answer, Affirmative Defenses, Cross Claims against Co-Defendants and Third-Party Complaint, dated August 1, 2019 . . . . . . . . . . . . . . . . . . . . A-536

Answer of Ultimate Care Chiropractic, PC, Graig Granovsky and Graig Granovsky Chiropractic, PC to Cross-Claim of Cambridge Clarendon Financial Services, LLC, dated August 22, 2019 . . . . . . . A-541

Defendant Brunswick Bank & Trust Company's Notice of Motion to Dismiss in Lieu of Answer, dated August 30, 2019 . . . . . . . . . . . . . . . A-547

Memorandum of Law of Defendant Brunswick Bank & Trust Company in Support of their Motion to Dismiss the Complaint, dated August 30, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-549

Alfa Rehab Defendants' Memorandum of law in Support of Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(B)(1) and 12(B)(6), dated August 30, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-563

Affidavit of Donald S. Neumann, Jr. in Support of Motion to Dismiss the Complaint, sworn to September 27, 2019 . . . . . . . . . . . . . . . . . . . . A-580

PAGE

Exhibit A to Neumann Affidavit—
Initial Disclosures of Dominick W. Lavelle,
dated September 20, 2019 .......................................... A-590

Exhibit B to Neumann Affidavit—
Defendant Dominick W. Lavelle's Answer, dated May 9, 2019 .... A-594

Defendants Graig Granovsky and Graig Granovsky Chiropractic,
P.C.'s Notice of Motion to Dismiss the Complaint,
dated August 29, 2019 (filed November 20, 2019) ................ A-658

Declaration of Donald Jay Pols in Support of Defendants Ultimate
Care Chiropractic, Graig Granovsky and Graig Granovsky
Chiropractic, P.C.'s Motion to Dismiss the Complaint,
dated August 29, 2019 (filed November 20, 2019) ................ A-660

Exhibit A to Pols Declaration—
Plaintiff's Automatic Disclosures............................... A-661

Memorandum of Law in Support of Defendants Ultimate Care
Chiropractic, Graig Granovsky and Graig Granovsky
Chiropractic, P.C.'s Motion to Dismiss the Complaint,
dated August 29, 2019 (filed November 20, 2019) ................ A-689

Reply Memorandum of Law in Further Support of Defendants
Ultimate Care Chiropractic, Graig Granovsky and
Graig Granovsky Chiropractic, P.C.'s Notice of Motion to
Dismiss the Complaint, dated November 21, 2019 ................ A-711

Defendants Sean Diamond D.C. and Bronx Chiropractic Care P.C.'s
Notice of Motion to Dismiss the Complaint,
dated August 30, 2019 (filed November 21, 2019) ................ A-726

Diamond Defendants' Memorandum of Law in Support of Motion to
Dismiss Plaintiffs' Complaint Pursuant to FRCP 12(B)(1) and
12(B)(6), dated August 30, 2019 (filed November 21, 2019) ...... A-727

PAGE

Diamond Defendants' Reply Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint, dated November 21, 2019 . . . . . . . . . . A-743

Defendants NBC Health Physical Therapy P.C., Nathaniel Brex Roa Cayetuna, JMP Rehab Care, P.T.P.C., Harkirtan Singh and Dalbir Kaur's ("the NBC/JMP Defendants") Motion to Dismiss the Complaint, dated August 30, 2019 (filed November 21, 2019) . A-751

Declaration of Ruya Carton in Support of the NBC/JMP Defendants' Motion to Dismiss the Complaint, dated August 30, 2019 (filed November 21, 2019) . . . . . . . . . . A-753

Exhibit A to Carton Declaration—
Complaint, dated April 1, 2019, with exhibits
(Reproduced herein at pages A-42 to A-452)

The NBC/JMP Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint, dated August 30, 2019 (filed November 21, 2019) . . . . . . . . . . A-755

The NBC/JMP Defendants' Reply Memorandum of Law in Further Support of their Motion to Dismiss the Complaint, dated November 21, 2019 . . . . . . . . . . A-774

Reply Declaration of Ruya Carton in Further Support of the NBC/JMP Defendants' Motion to Dismiss the Complaint, dated November 21, 2019 . . . . . . . . . . A-782

Exhibit A to Carton Declaration—
Plaintiff's Automatic Disclosures
(Reproduced herein at pages A-661 to A-688)

Defendants Eye on Well-Being Acupuncture, P.C. and Fleurette Harris' ("Acupuncture Defendants") Notice of Motion to Dismiss the Complaint, dated August 30, 2019 (filed November 21, 2019) . A-784

PAGE

Memorandum of Law in Support of the Acupuncture Defendants' Motion to Dismiss the Complaint, dated August 30, 2019 (filed November 21, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-788

Declaration of Jeffrey Chabrowe in Support of the Acupuncture Defendants' Motion to Dismiss the Complaint, dated August 30, 2019 (filed November 21, 2019) . . . . . . . . . . . . . . . . A-806

Exhibit A to Chabrowe Declaration— Complaint, dated April 1, 2019, with Exhibit Z (Reproduced herein at pages A-42 to A-294 and A-391 to A-396)

Defendants Body Acupuncture Care PC and Oksana Podhayetska's Notice of Motion to Dismiss the Complaint, dated August 30, 2019 (filed November 21, 2019) . . . . . . . . . . . . . . . . A-809

Defendants Body Acupuncture Care PC and Oksana Podhayetska's Amended Notice of Motion to Dismiss the Complaint, dated September 26, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-811

Memorandum of Law in Support of Defendants Body Acupuncture Care PC and Oksana Podhayetska's Notice of Motion to Dismiss the Complaint, dated August 30, 2019 (filed November 21, 2019) . A-813

Declaration of Wesley Mead in Support of Defendants Body Acupuncture Care PC and Oksana Podhayetska's Notice of Motion to Dismiss the Complaint, dated August 30, 2019 (filed November 21, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-839

Reply Memorandum of Law in Further Support of Defendants Body Acupuncture Care PC and Oksana Podhayetska's Notice of Motion to Dismiss the Complaint, dated November 21, 2019 . . . . . . A-841

Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Complaint, dated October 11, 2019 (filed November 21, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-854

PAGE

Declaration of Christopher Villanti in Opposition to Defendants' Motions to Dismiss the Complaint, dated October 11, 2019 (filed November 21, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-894

Exhibit A to Villanti Declaration— Plaintiff's Automatic Disclosures (Reproduced herein at pages A-661 to A-688)

Defendant Alfa Rehab PT PC's Notice of Motion to Dismiss the Complaint and Memorandum of Law in Support of Motion, dated November 22, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-896

Declaration of Benjamin M. Pinczewski in Support of Defendant Alfa Rehab PT PC's Motion to Dismiss the Complaint, dated August 30, 2019 (filed November 22, 2019) . . . . . . . . . . . . . . . . A-911

Transcript of Oral Argument, dated January 22, 2020 . . . . . . . . . . . . . . . . . A-913

Report and Recommendation, dated December 14, 2020 . . . . . . . . . . . . . . . A-958

Plaintiff's Objection to the Report and Recommendation, dated December 21, 2020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-977

Memorandum of Law in Opposition to Plaintiff's Objections to the Report and Recommendation, dated January 2, 2021 . . . . . . . . . . . . . A-1003

Reply of Defendants Graig Granovsky, Ultimate Care Chiropractic, P.C. and Graig Granovsky Chiropractic, P.C. to Plaintiff's Objections to the Report and Recommendation, dated January 3, 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1009

Response of NBC/JMP Defendants to Plaintiff's Objections to the Report and Recommendation, dated January 4, 2021 . . . . . . . . . . . . . A-1018

Letter from Steven J. Sico to the Honorable Margaret K. Brodie, dated January 4, 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1026

PAGE

Letter from Dianne E. Malone to the Honorable Margaret K. Brodie, dated January 4, 2021 .......... A-1028

Letter from Benjamin M. Pinczewski to the Honorable Margaret K. Brodie, dated January 4, 2021 .......... A-1031

Letter from Donald S. Neumann, Jr. to the Honorable Margaret K. Brodie, dated January 8, 2021 .......... A-1032

Memorandum and Order of the Honorable Margaret K. Brodie Appealed From, dated March 15, 2021 .......... A-1033

Plaintiff's Notice of Appeal, dated March 30, 2021 .......... A-1065

Judgment Appealed From, dated March 31, 2021 .......... A-1066

Plaintiff's Amended Notice of Appeal, dated April 9, 2021 .......... A-1067

APPEAL,ACO

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CIVIL DOCKET FOR CASE #: 1:19-cv-01861-MKB-RML

Petroff Amshen LLP et al v. Alfa Rehab PT PC et al
Assigned to: Chief Judge Margo K. Brodie
Referred to: Magistrate Judge Robert M. Levy
Demand: $4,100,000
Cause: 18:1962 Racketeering (RICO) Act

Date Filed: 04/01/2019
Date Terminated: 03/31/2021
Jury Demand: Plaintiff
Nature of Suit: 140 Negotiable Instrument
Jurisdiction: Federal Question

**Plaintiff**

**Petroff Amshen LLP** represented by

**Christopher Anthony Villanti**
Petroff Amshen LLP
1795 Coney Island Avenue
3rd Floor
Brooklyn, NY 11230
718-336-4200
Fax: 718-336-4242
Email: cvillanti@lawpetroff.com
*TERMINATED: 08/18/2020*
*ATTORNEY TO BE NOTICED*

**Serge Felix Petroff**
Petroff Law Firm, P.C.
1795 Coney Island Avenue
3rd Floor
Brooklyn, NY 11230
718-336-4200
Fax: 718-336-4242
Email: spetroff@lawpetroff.com
*ATTORNEY TO BE NOTICED*

**Steven Amshen**
Petroff Amshen LLP
1795 Coney Island Avenue, 3rd Floor
Brooklyn, NY 11230
718-336-4200
Fax: 718-336-4242
Email: samshen@lawpetroff.com
*ATTORNEY TO BE NOTICED*

**Yehuda C. Morgenstern**
Petroff Amshen LLP
1795 Coney Island Avenue 3rd Floor
Brooklyn, NY 11230
718-336-4200
Email: Ymorgenstern@bergpllc.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ABC COMPANIES**

**Plaintiff**

**ABC COMPANIES**

**Plaintiff**

**JOHN DOES**

V.

**Defendant**

| | | |
|---|---|---|
| **Alfa Rehab PT PC**<br>*TERMINATED: 03/15/2021* | represented by | **Benjamin Max Pinczewski**<br>PINCZEWSKI & SHPELFOGEL, P.C<br>2753 Coney Island Ave, 2nd Floor<br>Brooklyn, NY 11235<br>718-891-8200<br>Fax: 718-891-5600<br>Email: ben.pinczewski@verizon.net<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Cambridge Clarendon Financial Services LLC**<br>*TERMINATED: 03/15/2021* | represented by | **Steven J. Sico**<br>Law Offices Steven J. Sico<br>235 Main Street<br>Woodbridge, NJ 07095<br>732-636-2660<br>Email: sjs@stevensico.com<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Brunswick Bank & Trust Company**<br>*TERMINATED: 03/15/2021* | represented by | **Steven J. Sico**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

**James Cheng**

**Defendant**

**Chung Kwong Yau**

**Defendant**

**Cai Feng Tan**

**Defendant**

**The Samantha Lee Family Trust**

**Defendant**

**Advanced Rehab Care PT PC**

**Defendant**

**Josephine Belloni**

**Defendant**

**Annarose Rotondi Trust**

**Defendant**

**Agyal Physical Therapy PLLC**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Wei Ji Li**

**Defendant**

**Assem Physical Therapy PC**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kai Ho Richard Tang**
*TERMINATED: 06/27/2019*

represented by **Anastasi Pardalis**
Pardalis Nohavicka LLP
35-10 Broadway, Suite 200
Astoria, NY 11106
718-777-0400
Fax: 718-777-0599
Email: taso@pnlawyers.com
*ATTORNEY TO BE NOTICED*

**Joseph D. Nohavicka**
Pardalis & Nohavicka LLP
35-10 Broadway, Suite 201
Astoria, NY 11106
(718)777-0400
Fax: (718)777-0599
Email: jnfirm@aol.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Amro Mahmoud Shokry Barakat**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Christian Fernandez**
*TERMINATED: 06/27/2019*

represented by **Howard Jay Kaplan**
Kaplan Rice LLP
142 West 57th Street
Suite 4a
New York, NY 10019
212-333-0219
Fax: 212-235-0301
Email: hkaplan@kaplanrice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Wisdom Physical Therapy PC**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Hatem E. Abouhassan**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kishore Kanduri**
*TERMINATED: 03/15/2021*
*also known as*
Kishore K Kanduri
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Radwa PT PC**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mohamed M. Elmandouh, MD**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ultimate Care Chiropractic PC**
*TERMINATED: 03/15/2021*

represented by **Donald Jay Pols**
Beilis & Pols, P.C.
5014 16th Avenue
Suite 338
Brooklyn, NY 11204
212-490-2700
Fax: 212-983-3419
Email: dpols@bptaxlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Graig Granovsky**
*TERMINATED: 03/15/2021*

represented by **Donald Jay Pols**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Graig Granovsky Chiropractic PC**
*TERMINATED: 03/15/2021*

represented by **Donald Jay Pols**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Third Avenue Chiropractic Care PC**

represented by **Dianne E. Malone**
Amoroso & Associates PC
Renaissance Plaza

43 West 43 Street
Suite 64
New York, NY 10036
212-709-8031
Fax: 212-943-2300
Email: dianneemalone@gmail.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Nathaniel Mazza** represented by **Dianne E. Malone**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Therakinematice PT PC**
*TERMINATED: 03/15/2021*
represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Legaspi Madeline**

**Defendant**

**Physio Solutions PT PC**
*TERMINATED: 03/15/2021*
represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rehab Concepts PT PC**
*TERMINATED: 03/15/2021*
represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Significant Care PT PC**
*TERMINATED: 03/15/2021*
represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sayed F. Sayed**
*TERMINATED: 03/15/2021*
represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**NBC Health Physical Therapy PC**
*TERMINATED: 03/15/2021*
represented by **Lloyd M. Eisenberg**
Eisenberg & Carton
535 Broadhollow Road, Suite M105
Melville, NY 11747
631-213-8282
Email: leisenberg@eisenbergcarton.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin Max Pinczewski**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Ruya Carton**
Eisenberg & Carton
405 Rxr Plaza
Uniondale, NY 11556
516-221-3700
Fax: 516-977-3337
Email: rcarton@eisenbergcarton.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Nathaniel Brex Roa Cayetuna**
*TERMINATED: 03/15/2021*

represented by **Lloyd M. Eisenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ruya Carton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lite Care Rehab PT PC**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Islam Bekhet**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Extensive Care PT PC**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Extensive Care PT PC**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Anna Meyerzon**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**DJ Drug Services LLC**
*TERMINATED: 06/27/2019*

represented by **Andrew Brett Zinman**
Robinson Brog Leinwand Greene Genovese & Gluck PC
875 Third Avenue, 9th Floor
New York, NY 10022
212-603-6300

Fax: 212-956-2164
Email: abz@robinsonbrog.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Roman Shamalov**
*TERMINATED: 10/02/2019*

represented by **David M Garvin**
David M. Garvin, P.A.
200 S. Biscayne Blvd.
Suite 3150
Miami, FL 33131
305-371-8101
Fax: 305-371-8848
Email: ontrial2@gmail.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**River Chemist Corp.**
*TERMINATED: 10/02/2019*

**Defendant**

**MMA Physical Therapy PT PC**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mazed Abdel Magid, MD**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JMP Rehab Care PT**
*TERMINATED: 03/15/2021*

represented by **Lloyd M. Eisenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ruya Carton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Harkirtan Singh**
*TERMINATED: 03/15/2021*

represented by **Lloyd M. Eisenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ruya Carton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dalbir Kaur**

represented by **Lloyd M. Eisenberg**

*TERMINATED: 03/15/2021*

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruya Carton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Hillside Family Chiropractic PC**

**Defendant**

**Howard Kessler, MD**

**Defendant**

**First Hand Physical Therapy PC**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Abdelhamid Abourya**
*TERMINATED: 03/15/2021*
*also known as*
Abdelhamid Mahmoud Abourya
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Eye On Well-Being Acupuncture PC**
*TERMINATED: 03/15/2021*

represented by **Jeff Alan Chabrowe**
261 Madison Avenue
12th Floor
New York, NY 10016
917-484-0880
Fax: 212-736-3910
Email: jchabrowe@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Oates Devan**

**Defendant**

**Core Basics PC**

**Defendant**

**Khaled Nasr**

**Defendant**

**Community Wellness Pharmacy Inc.**

**Defendant**

**Rakmin Ilyabayev**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Comfort Touch PT PC**

**Defendant**

**Ferrin Manuel**

**Defendant**

**Canarsie Wellness Pharmacy Inc.**

**Defendant**

**Body Acupuncture Care PC**
*TERMINATED: 03/15/2021*

represented by **Wesley Robert Mead**
Wesley Mead, ESQ.
20-77 Steinway Street
Suite Sl
Astoria, NY 11105-1801
718-306-2107
Email: wmeadlaw@gmail.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Oksana Podhayetska**
*TERMINATED: 03/15/2021*

represented by **Wesley Robert Mead**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bright Star Rehab PT PC**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mohamed Y EL Saidy**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BL Healthy Life Acupuncture PC**

**Defendant**

**Zenon Kurkarewicz**
*TERMINATED: 03/15/2021*

represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bronx Chiropractic Rehabilitation, P.C.**
*TERMINATED: 03/15/2021*

represented by **Mark L. Furman**
Abrams, Fensterman, Fensterman, Eisman,
Formato, Ferrara & Wolf, LLP
1 MetroTech Center

Suite 1701
Brooklyn, NY 11201
718-215-5300
Fax: 212-279-0600
Email: mfurman@abramslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Sean Diamond, D.C.**<br>*TERMINATED: 03/15/2021* | represented by | **Mark L. Furman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Best Touch PT PC**<br>*TERMINATED: 03/15/2021* | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Motaz M. Ebeido**<br>*TERMINATED: 03/15/2021* | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Vital Meridian Acupuncture PC**<br>*TERMINATED: 03/15/2021* | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Ludmila Bobchynska, MD**<br>*TERMINATED: 03/15/2021* | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

**Meds4Days Pharmacy Inc.**

**Defendant**

**Brittney Coleman**

**Defendant**

| | | |
|---|---|---|
| **Physical Therapy Rehab PC**<br>*TERMINATED: 03/15/2021* | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Acupuncture Healthcare Plaza I PC** | represented by | **Rostislav Kofman**<br>Lebedin Kofman LLP<br>26 Broadway, Suite 2100<br>New York, NY 10004<br>(212)500-3273<br>Fax: (855)696-6848 |

Email: Info@lebedinkofmanlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Conor McNamara**
Lebedin Kofman LLP
26 Broadway
Suite 2700
New York, NY 10023
212-500-3273
Email: conor.mcnamaraesq@gmail.com
*ATTORNEY TO BE NOTICED*

**Courtney Anne Chadwell**
Barry McTiernan & Moore LLC
101 Greenwich Street
Ste 14th Floor
New York, NY 10006
212-313-3600
Email: cchadwell@bmmfirm.com
*ATTORNEY TO BE NOTICED*

**Ruisi Guo**
Lebedin Kofman, LLP
26 Broadway, Suite 2100
New York, NY 10004
212-500-3273
Fax: 855-696-6848
Email: gguo@lebedinkofmanlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Law Offices of Dominick W. Lavelle PC**
*TERMINATED: 03/15/2021*

represented by **Donald S. Neumann , Jr.**
Montfort, Healy, McGuire & Salley
840 Franklin Avenue
Garden City, NY 11530
516-747-4082
Fax: 516-746-0748
Email: dneumann@mhms-law.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dominick Lavelle**
*TERMINATED: 03/15/2021*
*also known as*
Dominick W. Lavelle
*TERMINATED: 03/15/2021*

represented by **Donald S. Neumann , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Elsanaa PT PC**

**Defendant**

**Mahmoud Elsanaa**

| | | |
|---|---|---|
| **Defendant** | | |
| **Zhong Su** | | |
| **Defendant** | | |
| **Libing Su** | | |
| **Defendant** | | |
| **Manhattans Hands of Hope PT PC**<br>*TERMINATED: 03/15/2021* | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Defendant** | | |
| **John Doe #1-10** | | |
| **Defendant** | | |
| **Diana Fernandez**<br>*TERMINATED: 06/27/2019* | represented by | **Howard Jay Kaplan**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| **Defendant** | | |
| **Jeremy James Schies** | | |
| **Defendant** | | |
| **Liu Yu**<br>*TERMINATED: 06/27/2019* | represented by | **Anastasi Pardalis**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Joseph D. Nohavicka**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Defendant** | | |
| **Barakat PT PC**<br>*TERMINATED: 03/15/2021* | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Defendant** | | |
| **Danimark Physical Therapy PC**<br>*TERMINATED: 03/15/2021* | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Cross Defendant** | | |
| **Bronx Chiropractic Rehabilitation, P.C.** | represented by | **Mark L. Furman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| **Cross Defendant** | | |
| **Sean Diamond, D.C.** | represented by | **Mark L. Furman**<br>(See above for address) |

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

| | | |
|---|---|---|
| **Graig Granovsky** | represented by | **Donald Jay Pols**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**ThirdParty Plaintiff**

| | | |
|---|---|---|
| **Cambridge Clarendon Financial Services LLC** | represented by | **Steven J. Sico**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

V.

**ThirdParty Defendant**

**ABC COMPANIES**

**ThirdParty Defendant**

**JOHN DOES**

**ThirdParty Defendant**

**JOHN DOES**

**Cross Claimant**

| | | |
|---|---|---|
| **Cambridge Clarendon Financial Services LLC** | represented by | **Steven J. Sico**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

V.

**Cross Defendant**

| | | |
|---|---|---|
| **Cambridge Clarendon Financial Services LLC** | represented by | **Steven J. Sico**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Cross Defendant**

| | | |
|---|---|---|
| **Hatem E. Abouhassan** | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Cross Defendant**

| | | |
|---|---|---|
| **Abdelhamid Abourya** | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Cross Defendant**

| | | |
|---|---|---|
| **Acupuncture Healthcare Plaza I PC** | represented by | **Rostislav Kofman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Ruisi Guo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Advanced Rehab Care PT PC**

**Cross Defendant**

**Agyal Physical Therapy PLLC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Alfa Rehab PT PC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Annarose Rotondi Trust**

**Cross Defendant**

**Assem Physical Therapy PC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**BL Healthy Life Acupuncture PC**

**Cross Defendant**

**Amro Mahmoud Shokry Barakat** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Barakat PT PC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Islam Bekhet** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Josephine Belloni**

**Cross Defendant**

**Best Touch PT PC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Ludmila Bobchynska, MD** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Body Acupuncture Care PC** represented by **Wesley Robert Mead**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Bright Star Rehab PT PC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Brunswick Bank & Trust Company**

**Cross Defendant**

**Canarsie Wellness Pharmacy Inc.**

**Cross Defendant**

**Nathaniel Brex Roa Cayetuna** represented by **Lloyd M. Eisenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ruya Carton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**James Cheng**

**Cross Defendant**

**Brittney Coleman**

**Cross Defendant**

**Comfort Touch PT PC**

**Cross Defendant**

**Community Wellness Pharmacy Inc.**

**Cross Defendant**

**Core Basics PC**

**Cross Defendant**

**Danimark Physical Therapy PC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Oates Devan**

**Cross Defendant**

**Motaz M. Ebeido** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Mohamed M. Elmandouh, MD** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Mahmoud Elsanaa**

**Cross Defendant**

**Elsanaa PT PC**

**Cross Defendant**

**Extensive Care PT PC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Eye On Well-Being Acupuncture PC** represented by **Jeff Alan Chabrowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**First Hand Physical Therapy PC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Graig Granovsky Chiropractic PC** represented by **Donald Jay Pols**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Hillside Family Chiropractic PC**

**Cross Defendant**

**Rakmin Ilyabayev** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**JMP Rehab Care PT** represented by **Lloyd M. Eisenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ruya Carton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**John Doe #1-10**

**Cross Defendant**

**Kishore Kanduri** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Dalbir Kaur** represented by **Lloyd M. Eisenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Howard Kessler, MD**

**Cross Defendant**

**Zenon Kurkarewicz** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Dominick Lavelle** represented by **Donald S. Neumann , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Law Offices of Dominick W. Lavelle PC** represented by **Donald S. Neumann , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Wei Ji Li**

**Cross Defendant**

**Lite Care Rehab PT PC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**MMA Physical Therapy PT PC** represented by **Benjamin Max Pinczewski**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Legaspi Madeline**

**Cross Defendant**

**Mazed Abdel Magid, MD** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Manhattans Hands of Hope PT PC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Ferrin Manuel**

**Cross Defendant**

**Nathaniel Mazza** represented by **Dianne E. Malone**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Meds4Days Pharmacy Inc.**

**Cross Defendant**

**Anna Meyerzon** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**NBC Health Physical Therapy PC** represented by **Lloyd M. Eisenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ruya Carton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Khaled Nasr**

**Cross Defendant**

**Physical Therapy Rehab PC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

| | | |
|---|---|---|
| **Cross Defendant** | | |
| **Physio Solutions PT PC** | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Cross Defendant** | | |
| **Oksana Podhayetska** | represented by | **Wesley Robert Mead**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Cross Defendant** | | |
| **Radwa PT PC** | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Cross Defendant** | | |
| **Rehab Concepts PT PC** | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Cross Defendant** | | |
| **River Chemist Corp.**<br>*TERMINATED: 10/02/2019* | | |
| **Cross Defendant** | | |
| **Mohamed Y EL Saidy** | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Cross Defendant** | | |
| **Sayed F. Sayed** | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Cross Defendant** | | |
| **Jeremy James Schies** | | |
| **Cross Defendant** | | |
| **Roman Shamalov**<br>*TERMINATED: 09/11/2020* | represented by | **David M Garvin**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| **Cross Defendant** | | |
| **Significant Care PT PC** | represented by | **Benjamin Max Pinczewski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Cross Defendant** | | |
| **Harkirtan Singh** | represented by | **Lloyd M. Eisenberg**<br>(See above for address) |

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Libing Su**

**Cross Defendant**

**Zhong Su**

**Cross Defendant**

**Cai Feng Tan**

**Cross Defendant**

**The Samantha Lee Family Trust**

**Cross Defendant**

**Therakinematice PT PC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Third Avenue Chiropractic Care PC** represented by **Dianne E. Malone**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Ultimate Care Chiropractic PC** represented by **Donald Jay Pols**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Vital Meridian Acupuncture PC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Wisdom Physical Therapy PC** represented by **Benjamin Max Pinczewski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Chung Kwong Yau**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/01/2019 | 1 | COMPLAINT against All Defendants filing fee $ 400, receipt number ANYEDC-11341004 Was the Disclosure Statement on Civil Cover Sheet completed -YES,, filed by Petroff Amshen LLP. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Exhibit N, # 17 Exhibit O, # 18 Exhibit P, # 19 Exhibit Q, # 20 Exhibit R, # 21 Exhibit S, # 22 Exhibit T, # 23 Exhibit U, # 24 Exhibit V, # 25 Exhibit W, |

| | | |
|---|---|---|
| | | # 26 Exhibit X, # 27 Exhibit Y, # 28 Exhibit Z, # 29 Exhibit AA, # 30 Exhibit BB, # 31 Exhibit CC, # 32 Exhibit DD, # 33 Exhibit EE, # 34 Exhibit FF, # 35 Exhibit GG, # 36 Exhibit HH, # 37 Exhibit II, # 38 Exhibit JJ, # 39 Exhibit KK, # 40 Exhibit LL, # 41 Exhibit MM, # 42 Exhibit NN, # 43 Exhibit OO, # 44 Exhibit PP) (Morgenstern, Yehuda) (Entered: 04/01/2019) |
| 04/01/2019 | | Case assigned to Judge Margo K. Brodie and Magistrate Judge Robert M. Levy. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Bowens, Priscilla) (Entered: 04/02/2019) |
| 04/01/2019 | 2 | Summons Issued as to All Defendants. (Bowens, Priscilla) (Entered: 04/02/2019) |
| 04/02/2019 | 3 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that ***if*** all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if** **all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences**. **Do NOT return or file the consent unless all parties have signed the consent.** (Bowens, Priscilla) (Entered: 04/02/2019) |
| 04/02/2019 | 4 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (Bowens, Priscilla) (Entered: 04/02/2019) |
| 05/07/2019 | 5 | SUMMONS Returned Executed by Petroff Amshen LLP. Advanced Rehab Care PT PC served on 4/19/2019, answer due 5/10/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 6 | SUMMONS Returned Executed by Petroff Amshen LLP. Eye On Well-Being Acupuncture PC served on 4/19/2019, answer due 5/10/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 7 | SUMMONS Returned Executed by Petroff Amshen LLP. First Hand Physical Therapy PC served on 4/19/2019, answer due 5/10/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 8 | SUMMONS Returned Executed by Petroff Amshen LLP. Harkirtan Singh served on 4/19/2019, answer due 5/10/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 9 | SUMMONS Returned Executed by Petroff Amshen LLP. Dalbir Kaur served on 4/18/2019, answer due 5/9/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 10 | SUMMONS Returned Executed by Petroff Amshen LLP. Alfa Rehab PT PC served on 4/19/2019, answer due 5/10/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 11 | SUMMONS Returned Executed by Petroff Amshen LLP. Brunswick Bank & Trust Company served on 4/17/2019, answer due 5/8/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 12 | SUMMONS Returned Executed by Petroff Amshen LLP. Elsanaa PT PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 13 | SUMMONS Returned Executed by Petroff Amshen LLP. Graig Granovsky Chiropractic PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |

| | | |
|---|---|---|
| 05/07/2019 | 14 | SUMMONS Returned Executed by Petroff Amshen LLP. Lite Care Rehab PT PC served on 4/19/2019, answer due 5/10/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 15 | SUMMONS Returned Executed by Petroff Amshen LLP. Dominick Lavelle served on 4/19/2019, answer due 5/10/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 16 | SUMMONS Returned Executed by Petroff Amshen LLP. Barakat PT PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 17 | SUMMONS Returned Executed by Petroff Amshen LLP. Physio Solutions PT PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 18 | SUMMONS Returned Executed by Petroff Amshen LLP. Rehab Concepts PT PC served on 4/22/2019, answer due 5/13/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 19 | SUMMONS Returned Executed by Petroff Amshen LLP. Significant Care PT PC served on 4/22/2019, answer due 5/13/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 20 | SUMMONS Returned Executed by Petroff Amshen LLP. NBC Health Physical Therapy PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 21 | SUMMONS Returned Executed by Petroff Amshen LLP. River Chemist Corp. served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 22 | SUMMONS Returned Executed by Petroff Amshen LLP. DJ Drug Services LLC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 23 | SUMMONS Returned Executed by Petroff Amshen LLP. Bright Star Rehab PT PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 24 | SUMMONS Returned Executed by Petroff Amshen LLP. Core Basics PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 25 | SUMMONS Returned Executed by Petroff Amshen LLP. Best Touch PT PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 26 | SUMMONS Returned Executed by Petroff Amshen LLP. Josephine Belloni served on 4/18/2019, answer due 5/9/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 27 | SUMMONS Returned Executed by Petroff Amshen LLP. Motaz M. Ebeido served on 4/23/2019, answer due 5/14/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 28 | SUMMONS Returned Executed by Petroff Amshen LLP. Acupuncture Healthcare Plaza I PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 29 | SUMMONS Returned Executed by Petroff Amshen LLP. Ferrin Manuel served on 4/29/2019, answer due 5/20/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 30 | SUMMONS Returned Executed by Petroff Amshen LLP. Body Acupuncture Care PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 31 | SUMMONS Returned Executed by Petroff Amshen LLP. Comfort Touch PT PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 32 | SUMMONS Returned Executed by Petroff Amshen LLP. Oates Devan served on 4/17/2019, answer due 5/8/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |

| | | |
|---|---|---|
| 05/07/2019 | 33 | SUMMONS Returned Executed by Petroff Amshen LLP. BL Healthy Life Acupuncture PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 34 | SUMMONS Returned Executed by Petroff Amshen LLP. Bronx Chiropractice Rehabilitation PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 35 | SUMMONS Returned Executed by Petroff Amshen LLP. Vital Meridian Acupuncture PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 36 | SUMMONS Returned Executed by Petroff Amshen LLP. Meds4Days Pharmacy Inc. served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 37 | SUMMONS Returned Executed by Petroff Amshen LLP. Physical Therapy Rehab PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 38 | SUMMONS Returned Executed by Petroff Amshen LLP. Canarsie Wellness Pharmacy Inc. served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 39 | SUMMONS Returned Executed by Petroff Amshen LLP. Community Wellness Pharmacy Inc. served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 40 | SUMMONS Returned Executed by Petroff Amshen LLP. Hillside Family Chiropractic PC served on 4/22/2019, answer due 5/13/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 41 | SUMMONS Returned Executed by Petroff Amshen LLP. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 42 | SUMMONS Returned Executed by Petroff Amshen LLP. JMP Rehab Care PT served on 4/22/2019, answer due 5/13/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 43 | SUMMONS Returned Executed by Petroff Amshen LLP. MMA Physical Therapy PT PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 44 | SUMMONS Returned Executed by Petroff Amshen LLP. Danimark Physical Therapy PC served on 4/22/2019, answer due 5/13/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/07/2019 | 45 | SUMMONS Returned Executed by Petroff Amshen LLP. Radwa PT PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/07/2019) |
| 05/09/2019 | 46 | NOTICE of Appearance by Howard Jay Kaplan on behalf of Christian Fernandez, Diana Fernandez (aty to be noticed) (Kaplan, Howard) (Entered: 05/09/2019) |
| 05/09/2019 | 47 | MOTION for Extension of Time to File Answer re 1 Complaint,,,, *Stipulation and Proposed Order* by Christian Fernandez, Diana Fernandez. (Kaplan, Howard) (Entered: 05/09/2019) |
| 05/10/2019 | 48 | SUMMONS Returned Executed by Petroff Amshen LLP. Kai Ho Richard Tang served on 5/8/2019, answer due 5/29/2019. (Morgenstern, Yehuda) (Entered: 05/10/2019) |
| 05/10/2019 | 49 | SUMMONS Returned Executed by Petroff Amshen LLP. Rakmin Ilyabayev served on |

| | | |
|---|---|---|
| | | 4/29/2019, answer due 5/20/2019. (Morgenstern, Yehuda) (Entered: 05/10/2019) |
| 05/10/2019 | 50 | SUMMONS Returned Executed by Petroff Amshen LLP. Liu Yu served on 5/8/2019, answer due 5/29/2019. (Morgenstern, Yehuda) (Entered: 05/10/2019) |
| 05/10/2019 | 51 | SUMMONS Returned Executed by Petroff Amshen LLP. Hatem E. Abouhassan served on 4/18/2019, answer due 5/9/2019. (Morgenstern, Yehuda) (Entered: 05/10/2019) |
| 05/10/2019 | 52 | SUMMONS Returned Executed by Petroff Amshen LLP. Wisdom Physical Therapy PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/10/2019) |
| 05/10/2019 | 53 | SUMMONS Returned Executed by Petroff Amshen LLP. Ultimate Care Chiropractic PC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/10/2019) |
| 05/10/2019 | | ORDER granting 47 Motion for Extension of Time to Answer. Christian Fernandez answer due 6/18/2019; Diana Fernandez answer due 6/18/2019. Ordered by Magistrate Judge Robert M. Levy on 5/10/2019. (Marino, Janine) (Entered: 05/10/2019) |
| 05/10/2019 | 54 | ANSWER to 1 Complaint,,,, by Dominick Lavelle, Law Offices of Dominick W. Lavelle PC. (Neumann, Donald) (Entered: 05/10/2019) |
| 05/10/2019 | 55 | NOTICE of Appearance by Donald Jay Pols on behalf of Graig Granovsky Chiropractic PC (aty to be noticed) (Pols, Donald) (Entered: 05/10/2019) |
| 05/10/2019 | 56 | CERTIFICATE of Counsel re 55 Notice of Appearance by Donald Jay Pols on behalf of Graig Granovsky Chiropractic PC (Pols, Donald) (Entered: 05/10/2019) |
| 05/10/2019 | 57 | NOTICE of Appearance by Donald Jay Pols on behalf of Criag Granovsky (aty to be noticed) (Pols, Donald) (Entered: 05/10/2019) |
| 05/10/2019 | 58 | CERTIFICATE of Counsel re 57 Notice of Appearance by Donald Jay Pols on behalf of Criag Granovsky (Pols, Donald) (Entered: 05/10/2019) |
| 05/13/2019 | 60 | MOTION for Extension of Time to File Answer re 1 Complaint,,,, by Ultimate Care Chiropractic PC. (Attachments: # 1 Certificate of Service) (Pols, Donald) (Entered: 05/13/2019) |
| 05/13/2019 | 61 | NOTICE of Appearance by Lloyd M. Eisenberg on behalf of Nathaniel Brex Roa Cayetuna, JMP Rehab Care PT, NBC Health Physical Therapy PC (aty to be noticed) (Eisenberg, Lloyd) (Entered: 05/13/2019) |
| 05/13/2019 | 62 | NOTICE of Appearance by Ruya Carton on behalf of Nathaniel Brex Roa Cayetuna, JMP Rehab Care PT, NBC Health Physical Therapy PC (aty to be noticed) (Carton, Ruya) (Entered: 05/13/2019) |
| 05/13/2019 | 63 | Consent MOTION for Extension of Time to File Answer re 1 Complaint,,,, by Nathaniel Brex Roa Cayetuna, JMP Rehab Care PT, NBC Health Physical Therapy PC. (Carton, Ruya) (Entered: 05/13/2019) |
| 05/14/2019 | 64 | SUMMONS Returned Executed by Petroff Amshen LLP. (Morgenstern, Yehuda) (Entered: 05/14/2019) |
| 05/14/2019 | 65 | SUMMONS Returned Executed by Petroff Amshen LLP. (Morgenstern, Yehuda) (Entered: 05/14/2019) |
| 05/14/2019 | 66 | SUMMONS Returned Executed by Petroff Amshen LLP. Agyal Physical Therapy PLLC served on 4/24/2019, answer due 5/15/2019. (Morgenstern, Yehuda) (Entered: 05/14/2019) |

| | | |
|---|---|---|
| 05/14/2019 | | ORDER granting 60 Motion for Extension of Time to Answer. Ordered by Magistrate Judge Robert M. Levy on 5/14/2019. (Marino, Janine) (Entered: 05/14/2019) |
| 05/14/2019 | | ORDER granting 63 Motion for Extension of Time to Answer. Ordered by Magistrate Judge Robert M. Levy on 5/14/2019. (Marino, Janine) (Entered: 05/14/2019) |
| 05/14/2019 | 67 | Letter MOTION for Extension of Time to File Answer *correction to document 59* by Graig Granovsky Chiropractic PC. (Pols, Donald) (Entered: 05/14/2019) |
| 05/14/2019 | 68 | NOTICE of Appearance by Wesley Robert Mead on behalf of Body Acupuncture Care PC, Oksana Podhayetska (aty to be noticed) (Mead, Wesley) (Entered: 05/14/2019) |
| 05/15/2019 | | ORDER granting 59 Motion for Extension of Time to Answer. Ordered by Magistrate Judge Robert M. Levy on 5/15/2019. (Marino, Janine) (Entered: 05/15/2019) |
| 05/15/2019 | | ORDER granting 67 Motion for Extension of Time to Answer. Ordered by Magistrate Judge Robert M. Levy on 5/15/2019. (Marino, Janine) (Entered: 05/15/2019) |
| 05/15/2019 | 69 | First MOTION for Extension of Time to File Answer *or Move Upon Complaint* by Body Acupuncture Care PC, Oksana Podhayetska. (Mead, Wesley) (Entered: 05/15/2019) |
| 05/16/2019 | 70 | NOTICE of Appearance by Andrew Brett Zinman on behalf of DJ Drug Services LLC (aty to be noticed) (Zinman, Andrew) (Entered: 05/16/2019) |
| 05/16/2019 | 71 | Consent MOTION for Extension of Time to File Answer re 1 Complaint,,,, by DJ Drug Services LLC. (Zinman, Andrew) (Entered: 05/16/2019) |
| 05/17/2019 | 72 | NOTICE of Appearance by Benjamin Max Pinczewski on behalf of Hatem E. Abouhassan, Abdelhamid Abourya, Agyal Physical Therapy PLLC, Alfa Rehab PT PC, Assem Physical Therapy PC, Amro Mahmoud Shokry Barakat, Barakat PT PC, Islam Bekhet, Best Touch PT PC, Ludmila Bobchynska, MD, Bright Star Rehab PT PC, Danimark Physical Therapy PC, Motaz M. Ebeido, Mohamed M. Elmandouh, MD, Extensive Care PT PC, First Hand Physical Therapy PC, Rakmin Ilyabayev, Kishore Kanduri, Dalbir Kaur, Zenon Kurkarewicz, Lite Care Rehab PT PC, Manhattans Hands of Hope PT PC, NBC Health Physical Therapy PC, Physical Therapy Rehab PC, Physio Solutions PT PC, Radwa PT PC, Rehab Concepts PT PC, Mohamed Y EL Saidy, Sayed F. Sayed, Significant Care PT PC, Therakinematice PT PC, Vital Meridian Acupuncture PC, Wisdom Physical Therapy PC (aty to be noticed) (Pinczewski, Benjamin) (Entered: 05/17/2019) |
| 05/20/2019 | 73 | ACKNOWLEDGMENT OF SERVICE Executed *Graig Granovsky* Acknowledgement filed by Petroff Amshen LLP. (Morgenstern, Yehuda) (Entered: 05/20/2019) |
| 05/23/2019 | | ORDER granting 69 Motion for Extension of Time to Answer. Ordered by Magistrate Judge Robert M. Levy on 5/23/2019. (Marino, Janine) (Entered: 05/23/2019) |
| 05/24/2019 | 74 | NOTICE of Appearance by Jeff Alan Chabrowe on behalf of Eye On Well-Being Acupuncture PC (aty to be noticed) (Chabrowe, Jeff) (Entered: 05/24/2019) |
| 05/24/2019 | 75 | STIPULATION *extending time to answer* by Mahmoud Elsanaa, Elsanaa PT PC, MMA Physical Therapy PT PC, Mazed Abdel Magid, MD (Feldsherova, Galina) (Entered: 05/24/2019) |
| 05/24/2019 | 76 | MOTION for Extension of Time to File Answer *Re: Complaint* by Eye On Well-Being Acupuncture PC. (Chabrowe, Jeff) (Entered: 05/24/2019) |
| 05/28/2019 | 77 | NOTICE of Appearance by Joseph D. Nohavicka on behalf of Kai Ho Richard Tang, Liu Yu (aty to be noticed) (Nohavicka, Joseph) (Entered: 05/28/2019) |
| 05/28/2019 | 78 | First MOTION for Discovery by Petroff Amshen LLP. (Attachments: # 1 Exhibit) |

| | | |
|---|---|---|
| | | (Morgenstern, Yehuda) (Entered: 05/28/2019) |
| 05/29/2019 | 79 | STIPULATION *to Extend Time to Answer Complaint* by Kai Ho Richard Tang, Liu Yu (Nohavicka, Joseph) (Entered: 05/29/2019) |
| 05/30/2019 | 80 | First MOTION for Extension of Time to File Answer by Criag Granovsky. (Pols, Donald) (Entered: 05/30/2019) |
| 05/30/2019 | 81 | STIPULATION *TO EXTEND TIME* by Hatem E. Abouhassan, Abdelhamid Abourya, Agyal Physical Therapy PLLC, Assem Physical Therapy PC, Amro Mahmoud Shokry Barakat, Barakat PT PC, Islam Bekhet, Best Touch PT PC, Ludmila Bobchynska, MD, Bright Star Rehab PT PC, Danimark Physical Therapy PC, Motaz M. Ebeido, Mohamed M. Elmandouh, MD, Extensive Care PT PC, First Hand Physical Therapy PC, Rakmin Ilyabayev, Kishore Kanduri, Dalbir Kaur, Zenon Kurkarewicz, Lite Care Rehab PT PC, Manhattans Hands of Hope PT PC, NBC Health Physical Therapy PC, Physical Therapy Rehab PC, Physio Solutions PT PC, Radwa PT PC, Rehab Concepts PT PC, Mohamed Y EL Saidy, Sayed F. Sayed, Significant Care PT PC, Therakinematice PT PC, Vital Meridian Acupuncture PC, Wisdom Physical Therapy PC (Pinczewski, Benjamin) Modified, changed to motion on 6/3/2019 (Marino, Janine). (Entered: 05/30/2019) |
| 06/03/2019 | | ORDER granting 76 Motion for Extension of Time to Answer. Eye On Well-Being Acupuncture PC answer due 7/23/2019. Ordered by Magistrate Judge Robert M. Levy on 6/3/2019. (Marino, Janine) (Entered: 06/03/2019) |
| 06/03/2019 | | ORDER granting 80 Motion for Extension of Time to Answer. Ordered by Magistrate Judge Robert M. Levy on 6/3/2019. (Marino, Janine) (Entered: 06/03/2019) |
| 06/03/2019 | | ORDER granting [81 Stipulation for Extension of Time (*until 6/28/19*) to Answer. Ordered by Magistrate Judge Robert M. Levy on 6/3/2019. (Marino, Janine) (Entered: 06/03/2019) |
| 06/03/2019 | | ORDER granting 78 Motion for Discovery. Ordered by Magistrate Judge Robert M. Levy on 6/3/2019. (Marino, Janine) (Entered: 06/03/2019) |
| 06/03/2019 | 82 | MOTION for Reconsideration *of docket entry granting motion for expedited discovery* by Ultimate Care Chiropractic PC. (Pols, Donald) (Entered: 06/03/2019) |
| 06/03/2019 | 83 | Letter MOTION for Reconsideration re Order on Motion for Discovery by Graig Granovsky Chiropractic PC. (Pols, Donald) (Entered: 06/03/2019) |
| 06/04/2019 | 84 | NOTICE of Appearance by Mark L. Furman on behalf of Bronx Chiropractice Rehabilitation PC, Sean Daimand (aty to be noticed) (Furman, Mark) (Entered: 06/04/2019) |
| 06/05/2019 | 85 | MOTION for Extension of Time to File Answer re 1 Complaint,,,, by Bronx Chiropractice Rehabilitation PC, Sean Daimand. (Furman, Mark) (Entered: 06/05/2019) |
| 06/05/2019 | 86 | First MOTION for Reconsideration *to Vacate the Order granting Dkt No. 78 for Expedited Discovery* by Body Acupuncture Care PC, Oksana Podhayetska. (Mead, Wesley) (Entered: 06/05/2019) |
| 06/06/2019 | | SCHEDULING ORDER: A telephone conference re *motion for reconsideration* has been scheduled for **6/17/2019 at 01:30 PM** before Magistrate Judge Robert M. Levy at (718) 613-2340. Plaintiffs' counsel is directed to initiate the conference call. Ordered by Magistrate Judge Robert M. Levy on 6/6/2019. (Marino, Janine) (Entered: 06/06/2019) |
| 06/06/2019 | 87 | MOTION for Reconsideration by Hatem E. Abouhassan, Abdelhamid Abourya, Agyal Physical Therapy PLLC, Alfa Rehab PT PC, Assem Physical Therapy PC, Amro Mahmoud Shokry Barakat, Barakat PT PC, Islam Bekhet, Best Touch PT PC, Ludmila |

| | | |
|---|---|---|
| | | Bobchynska, MD, Bright Star Rehab PT PC, Danimark Physical Therapy PC, Motaz M. Ebeido, Mohamed M. Elmandouh, MD, Extensive Care PT PC, First Hand Physical Therapy PC, Rakmin Ilyabayev, Kishore Kanduri, Dalbir Kaur, Zenon Kurkarewicz, Lite Care Rehab PT PC, Manhattans Hands of Hope PT PC, NBC Health Physical Therapy PC, Physical Therapy Rehab PC, Physio Solutions PT PC, Radwa PT PC, Rehab Concepts PT PC, Mohamed Y EL Saidy, Sayed F. Sayed, Significant Care PT PC, Therakinematice PT PC, Vital Meridian Acupuncture PC, Wisdom Physical Therapy PC. (Pinczewski, Benjamin) (Entered: 06/06/2019) |
| 06/07/2019 | 88 | RESPONSE to Motion re 87 MOTION for Reconsideration , 82 MOTION for Reconsideration *of docket entry granting motion for expedited discovery*, 86 First MOTION for Reconsideration *to Vacate the Order granting Dkt No. 78 for Expedited Discovery*, 83 Letter MOTION for Reconsideration re Order on Motion for Discovery filed by All Plaintiffs. (Morgenstern, Yehuda) (Entered: 06/07/2019) |
| 06/11/2019 | 89 | MOTION for pre motion conference by Graig Granovsky Chiropractic PC. (Pols, Donald) Modified on 6/14/2019 to correct the filing event. (Brucella, Michelle) (Entered: 06/11/2019) |
| 06/11/2019 | 90 | MOTION for pre motion conference re 1 Complaint,,,, *to dismiss for failure to state a claim* by Criag Granovsky. (Pols, Donald) (Entered: 06/11/2019) |
| 06/11/2019 | 91 | MOTION for pre motion conference re 1 Complaint,,,, *to dismiss for failure to state a claim* by Ultimate Care Chiropractic PC. (Pols, Donald) (Entered: 06/11/2019) |
| 06/12/2019 | 92 | Letter MOTION for pre motion conference *, filed* by DJ Drug Services LLC. (Zinman, Andrew) (Entered: 06/12/2019) |
| 06/14/2019 | 93 | NOTICE of Appearance by Rostislav Kofman on behalf of Acupuncture Healthcare Plaza I PC (aty to be noticed) (Kofman, Rostislav) (Entered: 06/14/2019) |
| 06/14/2019 | 94 | NOTICE of Appearance by Ruisi Guo on behalf of Acupuncture Healthcare Plaza I PC (aty to be noticed) (Guo, Ruisi) (Entered: 06/14/2019) |
| 06/14/2019 | 95 | First MOTION for Extension of Time to File Answer by Acupuncture Healthcare Plaza I PC. (Kofman, Rostislav) (Entered: 06/14/2019) |
| 06/14/2019 | | ORDER re 90 , 91 , and 92 Motions for pre-motion conferences. The Court directs Plaintiff to respond to Defendants' letters requesting a pre-motion conference on or before 6/21/2019. Ordered by Judge Margo K. Brodie on 6/14/2019.(Obanor, Dorielle) (Entered: 06/14/2019) |
| 06/14/2019 | 96 | MOTION for Reconsideration *(of Order granting Dkt No. 78)* by Nathaniel Brex Roa Cayetuna, JMP Rehab Care PT, NBC Health Physical Therapy PC. (Eisenberg, Lloyd) (Entered: 06/14/2019) |
| 06/14/2019 | 97 | NOTICE of Appearance by Anastasi Pardalis on behalf of Kai Ho Richard Tang, Liu Yu (aty to be noticed) (Pardalis, Anastasi) (Entered: 06/14/2019) |
| 06/14/2019 | 98 | MOTION to Appear Pro Hac Vice Filing fee $ 150, receipt number ANYEDC-11578391. by Roman Shamalov. (Attachments: # 1 Affidavit, # 2 Certificate of Good Standing - Supreme Court of Florida, # 3 Certificate of Good Standing - The Florida Bar, # 4 Proposed Order) (Garvin, David) (Entered: 06/14/2019) |
| 06/14/2019 | 99 | First MOTION for pre motion conference *for Permission to File a Motion to Dismiss Plaintiff's Complaint Pursuant Fed. R. Civ. P. 12(b)(6)* by Body Acupuncture Care PC, Oksana Podhayetska. (Mead, Wesley) (Entered: 06/14/2019) |
| 06/17/2019 | 100 | MOTION for Reconsideration *of Court's June 3, 2019 Order* by Sean Daimand. (Furman, |

| | | |
|---|---|---|
| | | Mark) (Entered: 06/17/2019) |
| 06/17/2019 | 101 | NOTICE of Appearance by Christopher Anthony Villanti on behalf of Petroff Amshen LLP (aty to be noticed) (Villanti, Christopher) (Entered: 06/17/2019) |
| 06/17/2019 | | Minute Entry for proceedings held before Magistrate Judge Robert M. Levy: Counsel present by telephone. Argument heard on motion for reconsideration. For the reasons explained on the record, the motion for reconsideration is moot. It will be more efficient to hold a Rule 26(f) conference on 6/25/19 at 9:00 in Courtroom 11B.Motion Hearing held on 6/17/2019 re 100 MOTION for Reconsideration *of Court's June 3, 2019 Order* filed by Sean Daimand (FTR Log #1:53-2:31.) (Levy, Robert) Modified, to correct conf. date on 6/18/2019 (Marino, Janine). (Entered: 06/17/2019) |
| 06/17/2019 | | ORDER finding as moot 100 Motion for Reconsideration Ordered by Magistrate Judge Robert M. Levy on 6/17/2019. (Levy, Robert) (Entered: 06/17/2019) |
| 06/17/2019 | | ORDER granting 85 Motion for Extension of Time to Answer Bronx Chiropractice Rehabilitation PC answer due 7/8/2019. Ordered by Magistrate Judge Robert M. Levy on 6/17/2019. (Levy, Robert) (Entered: 06/17/2019) |
| 06/17/2019 | | ORDER granting 71 Motion for Extension of Time to Answer DJ Drug Services LLC answer due 6/21/2019. Ordered by Magistrate Judge Robert M. Levy on 6/17/2019. (Levy, Robert) (Entered: 06/17/2019) |
| 06/17/2019 | | ORDER finding as moot 82 Motion for Reconsideration Ordered by Magistrate Judge Robert M. Levy on 6/17/2019. (Levy, Robert) (Entered: 06/17/2019) |
| 06/17/2019 | | ORDER finding as moot 83 Motion for Reconsideration Ordered by Magistrate Judge Robert M. Levy on 6/17/2019. (Levy, Robert) (Entered: 06/17/2019) |
| 06/17/2019 | | ORDER finding as moot 86 Motion for Reconsideration Ordered by Magistrate Judge Robert M. Levy on 6/17/2019. (Levy, Robert) (Entered: 06/17/2019) |
| 06/17/2019 | | ORDER finding as moot 87 Motion for Reconsideration Ordered by Magistrate Judge Robert M. Levy on 6/17/2019. (Levy, Robert) (Entered: 06/17/2019) |
| 06/17/2019 | | ORDER finding as moot 95 Motion for Extension of Time to Answer Ordered by Magistrate Judge Robert M. Levy on 6/17/2019. (Levy, Robert) (Entered: 06/17/2019) |
| 06/17/2019 | | ORDER finding as moot 96 Motion for Reconsideration Ordered by Magistrate Judge Robert M. Levy on 6/17/2019. (Levy, Robert) (Entered: 06/17/2019) |
| 06/17/2019 | | ORDER granting 98 Motion for Leave to Appear Pro Hac Vice The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance and ensure that s/he receives electronic notification of activity in this case. Also, the attorney shall ensure that the 150 admission fee be submitted to the Clerks Office via filing the event *Pro Hac Vice Filing Fee* .. Ordered by Magistrate Judge Robert M. Levy on 6/17/2019. (Levy, Robert) (Entered: 06/17/2019) |
| 06/19/2019 | 102 | MOTION for pre motion conference re 1 Complaint,,,, *Dismissal under Rule 12(b)(6)* by Bronx Chiropractice Rehabilitation PC, Sean Daimand. (Furman, Mark) (Entered: 06/19/2019) |
| 06/19/2019 | 103 | STIPULATION of Dismissal *Without Prejudice as to Defendants Christian Fernandez and Diana Fernandez only* by Petroff Amshen LLP (Villanti, Christopher) (Entered: 06/19/2019) |
| 06/20/2019 | 104 | STIPULATION of Dismissal *Without Prejudice as to DJ Drugs & Surgicals, Inc. sued herein as DJ Drugs Services LLC only* by Petroff Amshen LLP (Villanti, Christopher) |

| | | |
|---|---|---|
| | | (Entered: 06/20/2019) |
| 06/20/2019 | 105 | NOTICE of Appearance by David M Garvin on behalf of Roman Shamalov (notification declined or already on case) (Garvin, David) (Entered: 06/20/2019) |
| 06/20/2019 | 106 | MOTION for Extension of Time to File Answer *Stipulation for Extension of Time for Defendants Roman Shamalov and River Chemist Corp. to Resond to the Complaint and Order* by Roman Shamalov. (Garvin, David) (Entered: 06/20/2019) |
| 06/20/2019 | 107 | RESPONSE in Opposition re 92 Letter MOTION for pre motion conference *, filed* filed by All Plaintiffs. (Morgenstern, Yehuda) (Entered: 06/20/2019) |
| 06/21/2019 | 108 | MOTION for pre motion conference *for leave to file Motion to Dismiss* by Hatem E. Abouhassan, Abdelhamid Abourya, Agyal Physical Therapy PLLC, Alfa Rehab PT PC, Assem Physical Therapy PC, Amro Mahmoud Shokry Barakat, Barakat PT PC, Islam Bekhet, Best Touch PT PC, Ludmila Bobchynska, MD, Bright Star Rehab PT PC, Danimark Physical Therapy PC, Motaz M. Ebeido, Mohamed M. Elmandouh, MD, Extensive Care PT PC, First Hand Physical Therapy PC, Rakmin Ilyabayev, Kishore Kanduri, Dalbir Kaur, Zenon Kurkarewicz, Lite Care Rehab PT PC, MMA Physical Therapy PT PC, Mazed Abdel Magid, MD, Manhattans Hands of Hope PT PC, Anna Meyerzon, NBC Health Physical Therapy PC, Physical Therapy Rehab PC, Physio Solutions PT PC, Radwa PT PC, Rehab Concepts PT PC, Mohamed Y EL Saidy, Sayed F. Sayed, Significant Care PT PC, Therakinematice PT PC, Vital Meridian Acupuncture PC, Wisdom Physical Therapy PC. (Pinczewski, Benjamin) (Entered: 06/21/2019) |
| 06/21/2019 | 109 | STIPULATION of Dismissal *Without Prejudice as to Defendants Liu Yu and Kai Ho Richard Tang only* by Petroff Amshen LLP (Villanti, Christopher) (Entered: 06/21/2019) |
| 06/21/2019 | 110 | RESPONSE in Opposition re 89 MOTION for pre motion conference, 99 First MOTION for pre motion conference *for Permission to File a Motion to Dismiss Plaintiff's Complaint Pursuant Fed. R. Civ. P. 12(b)(6)*, 102 MOTION for pre motion conference re 1 Complaint,,,, *Dismissal under Rule 12(b)(6)*, 91 MOTION for pre motion conference re 1 Complaint,,,, *to dismiss for failure to state a claim*, 90 MOTION for pre motion conference re 1 Complaint,,,, *to dismiss for failure to state a claim*, 108 MOTION for pre motion conference *for leave to file Motion to Dismiss* filed by All Plaintiffs. (Morgenstern, Yehuda) (Entered: 06/21/2019) |
| 06/24/2019 | 111 | SUMMONS Returned Executed by Petroff Amshen LLP. Khaled Nasr served on 4/26/2019, answer due 5/17/2019. (Morgenstern, Yehuda) (Entered: 06/24/2019) |
| 06/24/2019 | 112 | SUMMONS Returned Executed by Petroff Amshen LLP. Anna Meyerzon served on 5/9/2019, answer due 5/30/2019. (Morgenstern, Yehuda) (Entered: 06/24/2019) |
| 06/24/2019 | 113 | SUMMONS Returned Executed by Petroff Amshen LLP. (Morgenstern, Yehuda) (Entered: 06/24/2019) |
| 06/24/2019 | 114 | SUMMONS Returned Executed by Petroff Amshen LLP. Harkirtan Singh served on 4/18/2019, answer due 6/27/2019. (Morgenstern, Yehuda) (Entered: 06/24/2019) |
| 06/24/2019 | 115 | SUMMONS Returned Executed by Petroff Amshen LLP. Legaspi Madeline served on 5/30/2019, answer due 6/20/2019. (Morgenstern, Yehuda) (Entered: 06/24/2019) |
| 06/25/2019 | | Minute Entry for proceedings held before Magistrate Judge Robert M. Levy: INitial conference held. Initial disclosures due by 7/12/19. Discovery rulings made on the record. Next conference 11/13/19 at 11:00. counsel to contact chambers if conference is not necessary.Motion Hearing held on 6/25/2019 re 100 MOTION for Reconsideration *of Court's June 3, 2019 Order* filed by Sean Daimand, Initial Conference Hearing held on 6/25/2019 (FTR Log #9:18-10:25.) (Levy, Robert) (Entered: 06/25/2019) |

| | | |
|---|---|---|
| 06/27/2019 | 116 | NOTICE of Appearance by Lloyd M. Eisenberg on behalf of Dalbir Kaur, Harkirtan Singh (aty to be noticed) (Eisenberg, Lloyd) (Entered: 06/27/2019) |
| 06/27/2019 | 117 | SUMMONS Returned Executed by Petroff Amshen LLP. Cambridge Clarendon Financial Services LLC served on 5/25/2019, answer due 6/17/2019. (Morgenstern, Yehuda) (Entered: 06/27/2019) |
| 06/27/2019 | 118 | Letter MOTION for pre motion conference re 1 Complaint,,,, *Dismiss for Failure to State a Claim* by Nathaniel Brex Roa Cayetuna, JMP Rehab Care PT, Dalbir Kaur, NBC Health Physical Therapy PC, Harkirtan Singh. (Eisenberg, Lloyd) (Entered: 06/27/2019) |
| 06/27/2019 | 119 | Stipulation and Order of Voluntary Dismissal Without Prejudice Solely as to Liu Yu and Kai Ho Richard Tang. Dismissing Parties Party Kai Ho Richard Tang and Liu Yu terminated.Ordered by Judge Margo K. Brodie on 6/27/2019. (Piper, Francine) (Entered: 06/27/2019) |
| 07/03/2019 | 120 | TRANSCRIPT of Proceedings held on June 25, 2019, before Judge Levy. Court Reporter/Transcriber TypeWrite Word Processing Service, Telephone number 518-581-8973. Email address: transcripts@typewp.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 7/24/2019. Redacted Transcript Deadline set for 8/5/2019. Release of Transcript Restriction set for 10/1/2019. (Hong, Loan) (Entered: 07/03/2019) |
| 07/04/2019 | 121 | ANSWER to 1 Complaint,,,, *Answer and Affirmative Defenses of Defendants Roman Shamalov and River Chemist Corp. to the Complaint* by Roman Shamalov. (Garvin, David) (Entered: 07/04/2019) |
| 07/04/2019 | 122 | Corporate Disclosure Statement by River Chemist Corp. (Garvin, David) (Entered: 07/04/2019) |
| 07/05/2019 | 123 | Corporate Disclosure Statement by Ultimate Care Chiropractic PC (Attachments: # 1 Certificate of Service) (Pols, Donald) (Entered: 07/05/2019) |
| 07/05/2019 | 124 | Corporate Disclosure Statement by Graig Granovsky Chiropractic PC (Attachments: # 1 Certificate of Service) (Pols, Donald) (Entered: 07/05/2019) |
| 07/15/2019 | | ORDER granting in part and denying in part 89 , 90 , 91 , 99 , 102 , 108 118 . The Court denies Defendants' motions for a pre motion conference and directs the parties to file a joint proposed briefing schedule for Defendants' anticipated motions to dismiss. Ordered by Judge Margo K. Brodie on 7/15/2019.(Obanor, Dorielle) (Entered: 07/15/2019) |
| 07/15/2019 | 125 | ANSWER to 1 Complaint,,,, by Acupuncture Healthcare Plaza I PC. (Kofman, Rostislav) (Entered: 07/15/2019) |
| 07/16/2019 | 126 | Proposed Scheduling Order *Joint Letter requesting the proposed briefing schedule as to the several Defendants' motions to dismiss* by Oksana Podhayetska (Mead, Wesley) (Entered: 07/16/2019) |
| 07/17/2019 | 127 | Corporate Disclosure Statement by Acupuncture Healthcare Plaza I PC (Kofman, Rostislav) (Entered: 07/17/2019) |
| 07/19/2019 | 128 | MOTION for pre motion conference by Eye On Well-Being Acupuncture PC. (Chabrowe, Jeff) (Entered: 07/19/2019) |
| 07/22/2019 | | ORDER re 126 Proposed Scheduling Order. The Court adopts the parties' proposed briefing schedule. Defendants shall serve their motions on or before August 30, 2019; |

| | | |
|---|---|---|
| | | Plaintiff shall serve its motion on or before October 11, 2019; Defendants shall serve and file their replies, if any, on or before November 21, 2019. All Defendants seeking to move to dismiss must follow this schedule. Ordered by Judge Margo K. Brodie on 7/22/2019.(Obanor, Dorielle) (Entered: 07/22/2019) |
| 07/23/2019 | 129 | STIPULATION *extending time to answer* by Mahmoud Elsanaa, Elsanaa PT PC, MMA Physical Therapy PT PC, Mazed Abdel Magid, MD (Feldsherova, Galina) Modified, changed to motion on 7/24/2019 (Marino, Janine). (Entered: 07/23/2019) |
| 07/24/2019 | | ORDER RE 129 Motion for Extension of Time to Answer as to defendants Mahmoud Elsanaa, Elsanaa PT PC, MMA Physical Therapy PT PC, and Mazed Abdel Magid, MD answers due 9/2/2019. So Ordered by Magistrate Judge Robert M. Levy on 7/24/2019. (Marino, Janine) (Entered: 07/24/2019) |
| 07/31/2019 | 130 | ANSWER to 1 Complaint,,,, by Nathaniel Mazza, Third Avenue Chiropractic Care PC. (Malone, Dianne) (Entered: 07/31/2019) |
| 08/01/2019 | 131 | ANSWER to 1 Complaint,,,, , THIRD PARTY COMPLAINT against ABC COMPANIES, JOHN DOES, JOHN DOES, CROSSCLAIM against All Defendants by Cambridge Clarendon Financial Services LLC. (Sico, Steven) (Entered: 08/01/2019) |
| 08/21/2019 | | ORDER finding as moot 128 Motion for Pre Motion Conference. Ordered by Judge Margo K. Brodie on 8/21/2019.(Obanor, Dorielle) (Entered: 08/21/2019) |
| 08/22/2019 | 132 | ANSWER to 131 Answer to Complaint, Third Party Complaint, Crossclaim by Graig Granovsky Chiropractic PC. (Attachments: # 1 Certificate of Service) (Pols, Donald) (Entered: 08/22/2019) |
| 08/22/2019 | 133 | ANSWER to 131 Answer to Complaint, Third Party Complaint, Crossclaim by Criag Granovsky. (Attachments: # 1 Certificate of Service) (Pols, Donald) (Entered: 08/22/2019) |
| 08/22/2019 | 134 | ANSWER to 131 Answer to Complaint, Third Party Complaint, Crossclaim by Ultimate Care Chiropractic PC. (Attachments: # 1 Certificate of Service) (Pols, Donald) (Entered: 08/22/2019) |
| 08/29/2019 | 135 | Letter *transmitting papaers in support of motion to dismiss* by Criag Granovsky (Pols, Donald) (Entered: 08/29/2019) |
| 08/29/2019 | 136 | Letter *transmitting papers in support of motion to dismiss* by Graig Granovsky Chiropractic PC (Pols, Donald) (Entered: 08/29/2019) |
| 08/29/2019 | 137 | Letter *transmitting papers in support of motion to dismiss* by Ultimate Care Chiropractic PC (Pols, Donald) (Entered: 08/29/2019) |
| 08/30/2019 | 138 | Letter *transmitting papers in support of motion to dismiss* by Nathaniel Brex Roa Cayetuna, JMP Rehab Care PT, Dalbir Kaur, NBC Health Physical Therapy PC, Harkirtan Singh (Carton, Ruya) (Entered: 08/30/2019) |
| 08/30/2019 | 139 | Letter *transmitting Notice of Motion to Dismiss and accompanying Memorandum of Law* by Bronx Chiropractice Rehabilitation PC, Sean Daimand (Furman, Mark) (Entered: 08/30/2019) |
| 08/30/2019 | 140 | Letter *Cover Letter for Motion to Dismiss* by Eye On Well-Being Acupuncture PC (Chabrowe, Jeff) (Entered: 08/30/2019) |
| 08/30/2019 | 141 | MOTION to Dismiss for Failure to State a Claim by Brunswick Bank & Trust Company. (Attachments: # 1 Memorandum in Support) (Sico, Steven) Modified on 12/14/2020 (Marziliano, August). (Entered: 08/30/2019) |

| | | |
|---|---|---|
| 08/30/2019 | 142 | Letter *Transmittal of Defendants' Notice of Motion, Declaration, and Memo of Law in Support of Dismissal* by Body Acupuncture Care PC, Oksana Podhayetska (Mead, Wesley) (Entered: 08/30/2019) |
| 08/30/2019 | 143 | First MOTION to Dismiss for Lack of Jurisdiction *pursuant to FRCP 12(B)(1)*, Second MOTION to Dismiss for Failure to State a Claim *pursuant to FRCP 12(B)(6)* by Hatem E. Abouhassan, Abdelhamid Abourya, Agyal Physical Therapy PLLC, Alfa Rehab PT PC, Assem Physical Therapy PC, Amro Mahmoud Shokry Barakat, Barakat PT PC, Islam Bekhet, Best Touch PT PC, Ludmila Bobchynska, MD, Bright Star Rehab PT PC, Danimark Physical Therapy PC, Motaz M. Ebeido, Mohamed M. Elmandouh, MD, Extensive Care PT PC, First Hand Physical Therapy PC, Rakmin Ilyabayev, Kishore Kanduri, Dalbir Kaur, Zenon Kurkarewicz, Lite Care Rehab PT PC, MMA Physical Therapy PT PC, Mazed Abdel Magid, MD, Manhattans Hands of Hope PT PC, Anna Meyerzon, NBC Health Physical Therapy PC, Physical Therapy Rehab PC, Physio Solutions PT PC, Radwa PT PC, Rehab Concepts PT PC, Mohamed Y EL Saidy, Sayed F. Sayed, Significant Care PT PC, Therakinematice PT PC, Vital Meridian Acupuncture PC, Wisdom Physical Therapy PC. (Pinczewski, Benjamin) Modified on 12/14/2020 (Marziliano, August). (Entered: 08/30/2019) |
| 09/20/2019 | 144 | MOTION for Disclosure *26(a)* by Dominick Lavelle, Law Offices of Dominick W. Lavelle PC. (Attachments: # 1 Rule 26(a) Disclosure) (Neumann, Donald) (Entered: 09/20/2019) |
| 09/20/2019 | 145 | MOTION for Leave to Electronically File Document under Seal *enclosing Stipulation and Order of Voluntary Dismissal Without Prejudice Solely as to Defendants Roman Shamalov and River Chemists Corp. d/b/a DJ Drugs, Only* by Petroff Amshen LLP. (Attachments: # 1 Exhibit A) (Villanti, Christopher) (Entered: 09/20/2019) |
| 09/27/2019 | 146 | AFFIDAVIT/DECLARATION in Support re 141 MOTION to Dismiss for Failure to State a Claim , 143 First MOTION to Dismiss for Lack of Jurisdiction *pursuant to FRCP 12(B)(1)*Second MOTION to Dismiss for Failure to State a Claim *pursuant to FRCP 12(B)(6)* filed by Dominick Lavelle, Law Offices of Dominick W. Lavelle PC. (Attachments: # 1 Exhibit A & B, # 2 Affidavit of Service, # 3 Signed Backer, # 4 Letter to Counsels) (Neumann, Donald) (Entered: 09/27/2019) |
| 10/07/2019 | | ORDER terminating as moot 92 Motion for Pre Motion Conference and 106 Motion for Extension of Time to Answer. Ordered by Judge Margo K. Brodie on 10/7/2019. (Valentin, Winnethka) (Entered: 10/07/2019) |
| 10/10/2019 | 148 | MOTION for Leave to File Excess Pages *in Memorandum of Law in Opposition to Motions to Dismiss by Moving Defendants* by Petroff Amshen LLP. (Villanti, Christopher) (Entered: 10/10/2019) |
| 10/10/2019 | | ORDER granting 148 Motion for Leave to File Excess Pages. The Court grants Plaintiff's application to file a 30-page memorandum of law in opposition to Defendants' motions to dismiss. Ordered by Judge Margo K. Brodie on 10/10/2019.(Schindler, Emma) (Entered: 10/10/2019) |
| 10/11/2019 | 149 | Letter *transmitting papers in Opposition to the Motion(s) to Dismiss of the Moving Defendants* by Petroff Amshen LLP (Villanti, Christopher) (Entered: 10/11/2019) |
| 10/28/2019 | | ORDER REFERRING MOTIONS: The Court respectfully refers the 141 , 143 Motions to Dismiss to Magistrate Judge Robert M. Levy for a report and recommendation. The Court encourages the parties to consider consenting to Judge Levy's jurisdiction for purposes of deciding the motions. Ordered by Judge Margo K. Brodie on 10/28/2019. (Schindler, Emma) (Entered: 10/28/2019) |
| 10/31/2019 | 150 | Letter *re October 28, 2019 Order of Judge Brodie referring the 141 , 143 Motions to* |

| | | |
|---|---|---|
| | | *Dismiss to Magistrate Judge Robert M. Levy for a report and recommendation* by Petroff Amshen LLP (Villanti, Christopher) (Entered: 10/31/2019) |
| 11/04/2019 | | ORDER re: 150 Letter re October 28, 2019 Order. By letter dated October 31, 2019, Plaintiff wrote to the Court in connection with the Court's Order dated October 28, 2019. The Court clarifies that all pending motions to dismiss in this action are referred to Magistrate Judge Robert M. Levy for a report and recommendation. The Court again encourages the parties to consider consenting to Judge Levy's jurisdiction for purposes of deciding the motions. Ordered by Judge Margo K. Brodie on 11/4/2019. (Schindler, Emma) (Entered: 11/04/2019) |
| 11/04/2019 | | SCHEDULING ORDER: The parties are reminded of the conference scheduled for **11/13/2019 at 11:00 AM** in Courtroom 11B South before Magistrate Judge Robert M. Levy. Ordered by Magistrate Judge Robert M. Levy on 11/4/2019. (Marino, Janine) (Entered: 11/04/2019) |
| 11/08/2019 | 151 | First MOTION to Adjourn Conference by Graig Granovsky Chiropractic PC. (Pols, Donald) (Entered: 11/08/2019) |
| 11/08/2019 | | ORDER RE 151 The in-person conference scheduled for 11/13/19 at 11:00 a.m. has been changed to a *telephone conference* to discuss the logistics of the pending motions. Ordered by Magistrate Judge Robert M. Levy on 11/8/2019. (Marino, Janine) (Entered: 11/08/2019) |
| 11/13/2019 | | ORDER terminating 144 Motion for Disclosure. Ordered by Magistrate Judge Robert M. Levy on 11/13/2019. (Ferrara, Alicia) (Entered: 11/13/2019) |
| 11/13/2019 | | ORDER denying 151 Motion to Adjourn Conference. Ordered by Magistrate Judge Robert M. Levy on 11/13/2019. (Ferrara, Alicia) (Entered: 11/13/2019) |
| 11/13/2019 | | Minute Entry for proceedings held before Magistrate Judge Robert M. Levy: All counsel present by telephone. (1) Counsel will meet and confer and determine the format for argument of defendants' positions on the motions to dismiss, to avoid duplication. The parties shall memorialize their agreement in a letter to be filed by 11/22/19. (2) In the event the parties wish to consent to the jurisdiction of a magistrate judge to decide the motions to dismiss, they are requested to do so by 11/22/19. (3) Oral argument is scheduled for 1/22/20 at 2:30 in Courtroom 11B. Status Conference held on 11/13/2019 (FTR Log #11:22-11:31 (partial/technical).) (Levy, Robert) (Entered: 11/13/2019) |
| 11/14/2019 | | ORDER granting 145 Motion for Leave to Electronically File Document under Seal. Counsel is directed to file the original document under seal as a separate entry. Instructions on filing sealed documents on ECF are located at www.nyed.uscourts.gov. The Court previously approved the proposed stipulation of dismissal (see ECF 147 ) and terminated the appropriate parties. Ordered by Judge Margo K. Brodie on 11/14/2019. (Schindler, Emma) Ordered by Judge Margo K. Brodie on 11/14/2019. (Schindler, Emma) (Entered: 11/14/2019) |
| 11/15/2019 | 152 | SETTLEMENT AGREEMENT *between Plaintiff and Defendants Shamalov and River Chemist Corp. d/b/a DJ Drugs* by Petroff Amshen LLP (Villanti, Christopher) (Entered: 11/15/2019) |
| 11/20/2019 | 153 | MOTION to Dismiss for Failure to State a Claim by Graig Granovsky Chiropractic PC, Criag Granovsky, Ultimate Care Chiropractic PC. (Pols, Donald) (Entered: 11/20/2019) |
| 11/20/2019 | 154 | MOTION to Dismiss for Failure to State a Claim *Declaration of Donald Jay Pols in Suport of Motion to Dismiss* by Graig Granovsky Chiropractic PC, Criag Granovsky, Ultimate Care Chiropractic PC. (Pols, Donald) (Entered: 11/20/2019) |
| 11/20/2019 | 155 | MOTION to Dismiss for Failure to State a Claim *memorandum of law in support of* by |

| | | |
|---|---|---|
| | | Graig Granovsky Chiropractic PC, Criag Granovsky, Ultimate Care Chiropractic PC. (Pols, Donald) (Entered: 11/20/2019) |
| 11/20/2019 | 156 | MOTION to Dismiss for Failure to State a Claim *Reply Memorandum of Law in Support of Motion to Dismiss* by Graig Granovsky Chiropractic PC, Criag Granovsky, Ultimate Care Chiropractic PC. (Pols, Donald) (Entered: 11/20/2019) |
| 11/21/2019 | | Motions terminated, docketed incorrectly: 156 MOTION to Dismiss for Failure to State a Claim *Reply Memorandum of Law in Support of Motion to Dismiss* filed by Graig Granovsky Chiropractic PC, Ultimate Care Chiropractic PC, Criag Granovsky, 155 MOTION to Dismiss for Failure to State a Claim *memorandum of law in support of* filed by Graig Granovsky Chiropractic PC, Ultimate Care Chiropractic PC, Criag Granovsky, 154 MOTION to Dismiss for Failure to State a Claim *Declaration of Donald Jay Pols in Suport of Motion to Dismiss* filed by Graig Granovsky Chiropractic PC, Ultimate Care Chiropractic PC, Criag Granovsky. These documents are not motions. These are supporting documents to the Motion to Dismiss for Failure to State a Claim 153 (Piper, Francine) (Entered: 11/21/2019) |
| 11/21/2019 | 157 | MOTION to Dismiss for Failure to State a Claim by Graig Granovsky Chiropractic PC, Criag Granovsky, Ultimate Care Chiropractic PC. (Attachments: # 1 Declaration in support of motion to dismiss, # 2 Memorandum in Support of motion to dismiss) (Pols, Donald) (Entered: 11/21/2019) |
| 11/21/2019 | 158 | MOTION to Dismiss for Failure to State a Claim *Reply Memorandum of Law in Support of Motion to Dismiss* by Graig Granovsky Chiropractic PC, Criag Granovsky, Ultimate Care Chiropractic PC. (Pols, Donald) (Entered: 11/21/2019) |
| 11/21/2019 | 159 | REPLY in Support re 157 MOTION to Dismiss for Failure to State a Claim *Reply Memoorandum of Law* filed by Graig Granovsky Chiropractic PC, Criag Granovsky, Ultimate Care Chiropractic PC. (Pols, Donald) (Entered: 11/21/2019) |
| 11/21/2019 | 160 | MEMORANDUM in Support re 1 Complaint,,,, *Letter of Transmittal with Notice of Motion, Memorandum of Law in Support and Reply Memorandum of Law in Support* filed by Sean Daimand. (Attachments: # 1 Notice of Motion, # 2 Memorandum in Support, # 3 Memorandum in Support) (Furman, Mark) (Entered: 11/21/2019) |
| 11/21/2019 | 161 | MOTION to Dismiss for Failure to State a Claim by Nathaniel Brex Roa Cayetuna, JMP Rehab Care PT, Dalbir Kaur, NBC Health Physical Therapy PC, Harkirtan Singh. (Attachments: # 1 Declaration In Support, # 2 Memorandum in Support) (Carton, Ruya) (Entered: 11/21/2019) |
| 11/21/2019 | 162 | REPLY in Support re 161 MOTION to Dismiss for Failure to State a Claim filed by Nathaniel Brex Roa Cayetuna, JMP Rehab Care PT, Dalbir Kaur, NBC Health Physical Therapy PC, Harkirtan Singh. (Attachments: # 1 Declaration In Further Support) (Carton, Ruya) (Entered: 11/21/2019) |
| 11/21/2019 | 163 | MOTION to Dismiss for Failure to State a Claim by Eye On Well-Being Acupuncture PC. (Attachments: # 1 Notice of Motion Notice of Defendants' Motion to Dismiss, # 2 Memorandum in Support Memorandum of Law in Support of Defendants' Motion to Dismiss, # 3 Declaration Declaration of Jeffrey Chabrowe, Esq. in Support of Defendants' Motion to Dismiss, # 4 Exhibit Exhibit A to Declaration of Jeffrey Chabrowe, Esq. in Support of Defendants' Motion to Dismiss) (Chabrowe, Jeff) (Entered: 11/21/2019) |
| 11/21/2019 | 164 | Letter *transmitting courtesy copies* by Nathaniel Brex Roa Cayetuna, JMP Rehab Care PT, Dalbir Kaur, NBC Health Physical Therapy PC, Harkirtan Singh (Carton, Ruya) (Entered: 11/21/2019) |

| | | |
|---|---|---|
| 11/21/2019 | 165 | First MOTION to Dismiss for Failure to State a Claim *pursuant to Fed. R. Civ. P 12(b)(6) and 12(b)(1)* by Body Acupuncture Care PC, Oksana Podhayetska. (Attachments: # 1 Notice of Motion Notice of Motion, # 2 Notice of Motion Amended Notice of Motion, # 3 Memorandum in Support Memo of Law in Support of Defendants' Motion to Dismiss, # 4 Declaration Declaration in Support of Defendants' Motion to Dismiss, # 5 Memorandum in Support Reply Memo of Law in Support of Defendants' Motion to Dismiss) (Mead, Wesley) (Entered: 11/21/2019) |
| 11/21/2019 | 166 | MEMORANDUM in Opposition re 141 MOTION to Dismiss for Failure to State a Claim , 160 Memorandum in Support, 165 First MOTION to Dismiss for Failure to State a Claim *pursuant to Fed. R. Civ. P 12(b)(6) and 12(b)(1)*, 157 MOTION to Dismiss for Failure to State a Claim , 143 First MOTION to Dismiss for Lack of Jurisdiction *pursuant to FRCP 12(B)(1)*Second MOTION to Dismiss for Failure to State a Claim *pursuant to FRCP 12(B)(6)*, 161 MOTION to Dismiss for Failure to State a Claim , 163 MOTION to Dismiss for Failure to State a Claim *Plaintiff Petroff Amshen LLP's Memorandum of Law in Opposition to the Motion(s) to Dismiss of the Moving Defendants* filed by Petroff Amshen LLP. (Attachments: # 1 Declaration of Christopher Villanti, Esq. in Opposition to the Motion(s) to Dismiss of the Moving Defendants with Exhibit(s)) (Villanti, Christopher) (Entered: 11/21/2019) |
| 11/21/2019 | 167 | Letter *of transmittal* by Brunswick Bank & Trust Company (Sico, Steven) (Entered: 11/21/2019) |
| 11/22/2019 | | Motions terminated, docketed incorrectly: 158 MOTION to Dismiss for Failure to State a Claim *Reply Memorandum of Law in Support of Motion to Dismiss* filed by Graig Granovsky Chiropractic PC, Ultimate Care Chiropractic PC, Criag Granovsky. This Document is not a Motion. This is a Reply Memorandum of Law in Support of Motion to Dismiss. (Piper, Francine) (Entered: 11/22/2019) |
| 11/22/2019 | 168 | Letter *transmitting courtesy copies to Judge Levy* by Petroff Amshen LLP (Villanti, Christopher) (Entered: 11/22/2019) |
| 11/22/2019 | 169 | Letter *Courtesy Copy Transmittal* by Graig Granovsky Chiropractic PC, Criag Granovsky, Ultimate Care Chiropractic PC (Pols, Donald) (Entered: 11/22/2019) |
| 11/22/2019 | 170 | REPLY in Support *of Defendants* filed by Hatem E. Abouhassan, Abdelhamid Abourya, Agyal Physical Therapy PLLC, Alfa Rehab PT PC, Assem Physical Therapy PC, Amro Mahmoud Shokry Barakat, Barakat PT PC, Islam Bekhet, Bright Star Rehab PT PC, Danimark Physical Therapy PC, Motaz M. Ebeido, Mohamed M. Elmandouh, MD, Extensive Care PT PC, First Hand Physical Therapy PC, Rakmin Ilyabayev, Kishore Kanduri, Dalbir Kaur, Zenon Kurkarewicz, Lite Care Rehab PT PC, MMA Physical Therapy PT PC, Manhattans Hands of Hope PT PC, Anna Meyerzon, NBC Health Physical Therapy PC, Physical Therapy Rehab PC, Physio Solutions PT PC, Radwa PT PC, Rehab Concepts PT PC, Mohamed Y EL Saidy, Sayed F. Sayed, Significant Care PT PC, Therakinematice PT PC, Vital Meridian Acupuncture PC, Wisdom Physical Therapy PC. (Attachments: # 1 Transmittal, # 2 Notice of Motion, # 3 Declaration) (Pinczewski, Benjamin) (Entered: 11/22/2019) |
| 11/22/2019 | 171 | MOTION for Extension of Time to File *letter re: Oral Argument* by Graig Granovsky Chiropractic PC, Criag Granovsky, Ultimate Care Chiropractic PC. (Pols, Donald) (Entered: 11/22/2019) |
| 11/26/2019 | | ORDER granting 171 Motion for Extension of Time to File. Ordered by Magistrate Judge Robert M. Levy on 11/26/2019. (Marino, Janine) (Entered: 11/26/2019) |
| 12/10/2019 | 172 | Letter *re Oral Argument Format* by Graig Granovsky Chiropractic PC, Criag Granovsky, Ultimate Care Chiropractic PC (Pols, Donald) (Entered: 12/10/2019) |

| | | |
|---|---|---|
| 01/22/2020 | | Minute Entry for proceedings held before Magistrate Judge Robert M. Levy: Oral argument heard on motions to dismiss. Status report due 2/7/20. (FTR Log #2:55-3:46; 3:56-4:09.) (Ferrara, Alicia) (Entered: 01/22/2020) |
| 01/23/2020 | 173 | NOTICE of Appearance by Courtney Anne Chadwell on behalf of Acupuncture Healthcare Plaza I PC (aty to be noticed) (Chadwell, Courtney) (Entered: 01/23/2020) |
| 02/06/2020 | 174 | DISCLOSURE of Interested Parties by Dominick Lavelle. (Neumann, Donald) (Entered: 02/06/2020) |
| 02/07/2020 | 175 | TRANSCRIPT of Proceedings held on January 22, 2020, before Judge Levy. Court Reporter/Transcriber TypeWrite Word Processing Service, Telephone number 518-581-8973. Email address: transcripts@typewp.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 2/28/2020. Redacted Transcript Deadline set for 3/9/2020. Release of Transcript Restriction set for 5/7/2020. (Hong, Loan) (Entered: 02/07/2020) |
| 02/07/2020 | 176 | STATUS REPORT by Graig Granovsky Chiropractic PC, Criag Granovsky, Ultimate Care Chiropractic PC (Pols, Donald) (Entered: 02/07/2020) |
| 02/07/2020 | 177 | STATUS REPORT by Petroff Amshen LLP (Villanti, Christopher) (Entered: 02/07/2020) |
| 02/07/2020 | 178 | Letter *Status Letter* by Third Avenue Chiropractic Care PC (Malone, Dianne) (Entered: 02/07/2020) |
| 02/07/2020 | 179 | Letter *providing status update on settlement discussions* by Acupuncture Healthcare Plaza I PC (Chadwell, Courtney) (Entered: 02/07/2020) |
| 02/11/2020 | 180 | Letter *to request status conference* by Hatem E. Abouhassan, Abdelhamid Abourya, Agyal Physical Therapy PLLC, Alfa Rehab PT PC, Assem Physical Therapy PC, Amro Mahmoud Shokry Barakat, Barakat PT PC, Islam Bekhet, Best Touch PT PC, Ludmila Bobchynska, MD, Bright Star Rehab PT PC, Danimark Physical Therapy PC, Motaz M. Ebeido, Mohamed M. Elmandouh, MD, Extensive Care PT PC, First Hand Physical Therapy PC, Rakmin Ilyabayev, Kishore Kanduri, Dalbir Kaur, Zenon Kurkarewicz, Lite Care Rehab PT PC, MMA Physical Therapy PT PC, Mazed Abdel Magid, MD, Manhattans Hands of Hope PT PC, Anna Meyerzon, NBC Health Physical Therapy PC, Physical Therapy Rehab PC, Physio Solutions PT PC, Radwa PT PC, Rehab Concepts PT PC, Mohamed Y EL Saidy, Sayed F. Sayed, Significant Care PT PC, Therakinematice PT PC, Vital Meridian Acupuncture PC, Wisdom Physical Therapy PC (Pinczewski, Benjamin) (Entered: 02/11/2020) |
| 02/21/2020 | | SCHEDULING ORDER: An in-person status conference has been scheduled **3/9/2020 at 03:30 PM** before Magistrate Judge Robert M. Levy. Ordered by Magistrate Judge Robert M. Levy on 2/21/2020. (Marino, Janine) (Entered: 02/21/2020) |
| 03/09/2020 | | Minute Entry for proceedings held before Magistrate Judge Robert M. Levy: All counsel present. Within 30 days, (1) plaintiff shall provide pre-answer discovery discussed on the record relating to plaintiffs' alleged loss of clients, and (2) defendants shall provide information re: check cashing discussed on the record. Next conference 5/6/20 at 2:30 (Courtroom 11B)(settlement). At counsel's request, the court will not decide the pending motion until after the next conference.Settlement Conference held on 3/9/2020 (FTR Log #3:56-4:27.) (Levy, Robert) (Entered: 03/09/2020) |
| 03/12/2020 | | ORDER: The pending motions to dismiss have been stayed at the movants' request. (See Min. Entry dated Mar. 9, 2020.) Accordingly, they are removed from the motion calendar, |

| | | |
|---|---|---|
| | | with leave to reinstate at any party's request. Ordered by Judge Margo K. Brodie on 3/12/2020. (Valentin, Winnethka) (Entered: 03/12/2020) |
| 03/13/2020 | | Motion terminated: 157 MOTION to Dismiss for Failure to State a Claim. (Valentin, Winnethka) (Entered: 03/13/2020) |
| 04/21/2020 | 181 | MOTION to Adjourn Conference *May 6, 2020 Settlement Conference* by Petroff Amshen LLP. (Villanti, Christopher) (Entered: 04/21/2020) |
| 04/21/2020 | | ORDER granting 181 Motion to Adjourn 5/6/20 Conference to 6/24/20 at 2:00 (dial-in) (settlement/status). Ordered by Magistrate Judge Robert M. Levy on 4/21/2020. (Levy, Robert) (Entered: 04/21/2020) |
| 05/29/2020 | | SCHEDULING ORDER: The telephone settlement conference previously scheduled for 6/24/20 at 2:00 p.m. before Magistrate Judge Robert M. Levy will be held via AT&T audio conference. Parties are directed to call 888-684-8852 and use access code 6223489. Ordered by Magistrate Judge Robert M. Levy on 5/29/2020. (Marino, Janine) (Entered: 05/29/2020) |
| 06/23/2020 | 182 | Letter *to Judge Levy re March 9, 2020 Order to produce pre-answer discovery of Plaintiff's alleged loss of clients* by Petroff Amshen LLP (Villanti, Christopher) (Entered: 06/23/2020) |
| 06/23/2020 | 183 | Letter by Graig Granovsky Chiropractic PC, Criag Granovsky, Ultimate Care Chiropractic PC (Attachments: # 1 Exhibit A) (Pols, Donald) (Entered: 06/23/2020) |
| 06/24/2020 | 184 | NOTICE of Appearance by Conor McNamara on behalf of Acupuncture Healthcare Plaza I PC (aty to be noticed) (McNamara, Conor) (Entered: 06/24/2020) |
| 06/24/2020 | 185 | Letter by Third Avenue Chiropractic Care PC (Malone, Dianne) (Entered: 06/24/2020) |
| 06/24/2020 | | Minute Entry for proceedings held before Magistrate Judge Robert M. Levy: Counsel present by telephone. Argument on plaintiffs damages disclosures, focusing in large part on plaintiffs claim of privilege re: identity of new clients lost as a result of defendants actions. Counsel will not brief the privilege issue at this time but reserve the right to do so at a later date. Plaintiffs have settled with some of the defendants. Plaintiffs will provide details of the settlements discussed at this conference to the non-settling defendants and the court within one week. Further argument held on motions to dismiss. Counsel request that the motions be reinstated and decided, as settlement with the remaining defendants is at an impasse. Discovery Hearing held on 6/24/2020 (FTR Log #2:05-3:08. AT&T teleconference.) (Levy, Robert) (Entered: 06/24/2020) |
| 06/24/2020 | 186 | Letter *to clarify minute order of 6-24-2020* by Third Avenue Chiropractic Care PC (Malone, Dianne) (Entered: 06/24/2020) |
| 06/25/2020 | 187 | NOTICE of Appearance by Serge Felix Petroff on behalf of Petroff Amshen LLP (aty to be noticed) (Petroff, Serge) (Entered: 06/25/2020) |
| 06/25/2020 | 188 | Letter *Letter to Judge Levy re June 24, 2020 Order to identify discharged parties and seeking waiver of confidentiality of settlement amounts* by Petroff Amshen LLP (Petroff, Serge) (Entered: 06/25/2020) |
| 06/25/2020 | 189 | Letter *in Response to Plaintiff's Letter (regarding former clients)* by Nathaniel Brex Roa Cayetuna, JMP Rehab Care PT, Dalbir Kaur, NBC Health Physical Therapy PC, Harkirtan Singh (Carton, Ruya) (Entered: 06/25/2020) |
| 06/29/2020 | 190 | First MOTION for Protective Order *to disclose settlement amount without other identifying information* by Petroff Amshen LLP. (Attachments: # 1 Proposed Order, # 2 Exhibit) (Petroff, Serge) (Entered: 06/29/2020) |

| | | |
|---|---|---|
| 06/29/2020 | | ORDER granting 190 Motion for Protective Order but staying the Order until the close of business (5:00 p.m.) on 6/30/20 in the event any party raises an objection. Ordered by Magistrate Judge Robert M. Levy on 6/29/2020. (Levy, Robert) (Entered: 06/29/2020) |
| 06/29/2020 | 191 | Letter *Joining in Co Defendants Request for Reinstatement of Motions to Dismiss and Decision* by Body Acupuncture Care PC, Oksana Podhayetska (Mead, Wesley) (Entered: 06/29/2020) |
| 06/29/2020 | 192 | Letter *joining in co-defendants motions to dismiss* by Nathaniel Mazza, Third Avenue Chiropractic Care PC (Malone, Dianne) (Entered: 06/29/2020) |
| 06/30/2020 | 193 | Letter by Brunswick Bank & Trust Company, Cambridge Clarendon Financial Services LLC (Sico, Steven) (Entered: 06/30/2020) |
| 06/30/2020 | 194 | Letter *Joining in Co-Defendants Request for Reinstatement of Motions to Dismiss and Decision* by Acupuncture Healthcare Plaza I PC (Kofman, Rostislav) (Entered: 06/30/2020) |
| 06/30/2020 | 195 | Letter *re: Motion to Dismiss* by Graig Granovsky Chiropractic PC, Criag Granovsky, Ultimate Care Chiropractic PC (Pols, Donald) (Entered: 06/30/2020) |
| 07/01/2020 | 196 | TRANSCRIPT of Proceedings held on June 24, 2020, before Judge Levy. Court Transcriber: Transcription Plus II, Inc. Email address: laferrara44@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 7/22/2020. Redacted Transcript Deadline set for 8/3/2020. Release of Transcript Restriction set for 9/29/2020. (Rocco, Christine) (Entered: 07/01/2020) |
| 07/01/2020 | 197 | Letter *Requesting Reinstatement of Motion to Dismiss* by Nathaniel Brex Roa Cayetuna, JMP Rehab Care PT, Dalbir Kaur, NBC Health Physical Therapy PC, Harkirtan Singh (Carton, Ruya) (Entered: 07/01/2020) |
| 07/01/2020 | 198 | Letter *Request to Reinstate and Decide Motion to Dismiss* by Hatem E. Abouhassan, Abdelhamid Abourya, Agyal Physical Therapy PLLC, Alfa Rehab PT PC, Assem Physical Therapy PC, Amro Mahmoud Shokry Barakat, Barakat PT PC, Islam Bekhet, Best Touch PT PC, Ludmila Bobchynska, MD, Bright Star Rehab PT PC, Danimark Physical Therapy PC, Motaz M. Ebeido, Mohamed M. Elmandouh, MD, Mahmoud Elsanaa, Elsanaa PT PC, Extensive Care PT PC, First Hand Physical Therapy PC, Hillside Family Chiropractic PC, Rakmin Ilyabayev, Kishore Kanduri, Dalbir Kaur, Howard Kessler, MD, Zenon Kurkarewicz, Lite Care Rehab PT PC, MMA Physical Therapy PT PC, Legaspi Madeline, Mazed Abdel Magid, MD, Manhattans Hands of Hope PT PC, Anna Meyerzon, Physical Therapy Rehab PC, Physio Solutions PT PC, Radwa PT PC, Rehab Concepts PT PC, Mohamed Y EL Saidy, Sayed F. Sayed, Significant Care PT PC, Therakinematice PT PC, Vital Meridian Acupuncture PC, Wisdom Physical Therapy PC (Pinczewski, Benjamin) (Entered: 07/01/2020) |
| 07/17/2020 | 199 | Stipulation and Order of Voluntary Dismissal without Prejudice Solely as to Christian Fernandez and Diana Fernandez Only. Ordered by Judge Margo K. Brodie on 7/17/2020. (Piper, Francine) (Entered: 07/17/2020) |
| 07/17/2020 | 200 | Stipulation of Voluntary Dismissal without Prejudice Solely as to DJ Drugs & Surgicals, Inc. Improperly Sued Herein as DJ Drug Services LLC. Ordered by Judge Margo K. Brodie on 7/17/2020. (Piper, Francine) (Entered: 07/17/2020) |
| 08/17/2020 | 201 | MOTION to Withdraw as Attorney *for attorney Christopher Villanti, Esq. only* by Petroff Amshen LLP. (Attachments: # 1 Declaration of Christopher Villanti, Esq.) (Villanti, |

| | | |
|---|---|---|
| | | Christopher) (Entered: 08/17/2020) |
| 08/18/2020 | | ORDER granting 201 Motion to Withdraw as Attorney. Attorney Christopher Anthony Villanti terminated. Ordered by Magistrate Judge Robert M. Levy on 8/18/2020. (Marino, Janine) (Entered: 08/18/2020) |
| 08/31/2020 | 202 | Letter by Eye On Well-Being Acupuncture PC (Chabrowe, Jeff) (Entered: 08/31/2020) |
| 09/10/2020 | 203 | STIPULATION of Dismissal *with prejudice solely as to Defendants Roman Shamalov and River Chemist Corp. D/B/A DJ Drugs Only* by Petroff Amshen LLP (Petroff, Serge) (Entered: 09/10/2020) |
| 09/11/2020 | 204 | Order Dismissing Parties Party Roman Shamalov terminated. Ordered by Judge Margo K. Brodie on 9/11/2020. (Valentin, Winnethka) (Entered: 09/11/2020) |
| 12/14/2020 | 205 | REPORT AND RECOMMENDATIONS RE 141 and 143 : By order dated October 28, 2019, the Honorable Margo K. Brodie, United States District Judge, referred defendants' motions to dismiss to me for Report and Recommendation. I heard oral argument on January 22, 2020. For the reasons stated in the attached Report and Recommendation, I respectfully recommend that plaintiff's complaint be dismissed with prejudice. Any objections to this Report and Recommendation must be filed electronically within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d). Ordered by Magistrate Judge Robert M. Levy on 12/14/2020. (Marino, Janine) ***See attached Report & Recommendation for details.*** (Entered: 12/14/2020) |
| 12/21/2020 | 206 | OBJECTION to 205 Report and Recommendations filed by Petroff Amshen LLP. (Petroff, Serge) (Entered: 12/21/2020) |
| 12/21/2020 | 207 | NOTICE of Appearance by Steven Amshen on behalf of Petroff Amshen LLP (aty to be noticed) (Amshen, Steven) (Entered: 12/21/2020) |
| 01/02/2021 | 208 | MEMORANDUM in Opposition re 206 Objection to Report and Recommendations filed by Body Acupuncture Care PC, Oksana Podhayetska. (Mead, Wesley) (Entered: 01/02/2021) |
| 01/03/2021 | 209 | REPLY in Support re 205 REPORT AND RECOMMENDATIONS re 141 MOTION to Dismiss for Failure to State a Claim filed by Brunswick Bank & Trust Company, 143 First MOTION to Dismiss for Lack of Jurisdiction *pursuant to FRCP 12(B)(1)*Second MOTION to Dismiss, 206 Objection to Report and Recommendations *Reply to Plaintiff's objections and in support of report and recommendation* filed by Graig Granovsky Chiropractic PC, Criag Granovsky, Ultimate Care Chiropractic PC. (Pols, Donald) (Entered: 01/03/2021) |
| 01/04/2021 | 210 | MEMORANDUM in Opposition re 206 Objection to Report and Recommendations filed by Nathaniel Brex Roa Cayetuna, JMP Rehab Care PT, Dalbir Kaur, NBC Health Physical Therapy PC, Harkirtan Singh. (Carton, Ruya) (Entered: 01/04/2021) |
| 01/04/2021 | 211 | REPLY in Opposition re 206 Objection to Report and Recommendations filed by Brunswick Bank & Trust Company, Cambridge Clarendon Financial Services LLC. (Sico, Steven) (Entered: 01/04/2021) |
| 01/04/2021 | 212 | REPLY in Opposition *re Objections to Report and Recommendations by Mag. Judge Levy* filed by Nathaniel Mazza. (Malone, Dianne) (Entered: 01/04/2021) |
| 01/05/2021 | 213 | REPLY in Support re 205 REPORT AND RECOMMENDATIONS re 141 MOTION to Dismiss for Failure to State a Claim filed by Brunswick Bank & Trust Company, 143 First MOTION to Dismiss for Lack of Jurisdiction *pursuant to FRCP 12(B)(1)*Second MOTION to Dismiss, 206 Objection to Report and Recommendations filed by Hatem E. |

| | | |
|---|---|---|
| | | Abouhassan, Abdelhamid Abourya, Agyal Physical Therapy PLLC, Alfa Rehab PT PC, Assem Physical Therapy PC, Amro Mahmoud Shokry Barakat, Barakat PT PC, Islam Bekhet, Best Touch PT PC, Ludmila Bobchynska, MD, Bright Star Rehab PT PC, Danimark Physical Therapy PC, Motaz M. Ebeido, Mohamed M. Elmandouh, MD, Extensive Care PT PC, First Hand Physical Therapy PC, Rakmin Ilyabayev, Kishore Kanduri, Dalbir Kaur, Zenon Kurkarewicz, Lite Care Rehab PT PC, MMA Physical Therapy PT PC, Mazed Abdel Magid, MD, Manhattans Hands of Hope PT PC, Anna Meyerzon, NBC Health Physical Therapy PC, Physical Therapy Rehab PC, Physio Solutions PT PC, Radwa PT PC, Rehab Concepts PT PC, Mohamed Y EL Saidy, Sayed F. Sayed, Significant Care PT PC, Therakinematice PT PC, Vital Meridian Acupuncture PC, Wisdom Physical Therapy PC. (Pinczewski, Benjamin) (Entered: 01/05/2021) |
| 01/08/2021 | 214 | REPLY in Support re 141 MOTION to Dismiss for Failure to State a Claim , 205 REPORT AND RECOMMENDATIONS re 141 MOTION to Dismiss for Failure to State a Claim filed by Brunswick Bank & Trust Company, 143 First MOTION to Dismiss for Lack of Jurisdiction *pursuant to FRCP 12(B)(1)*Second MOTION to Dismiss filed by Dominick Lavelle, Law Offices of Dominick W. Lavelle PC. (Neumann, Donald) (Entered: 01/08/2021) |
| 03/15/2021 | 215 | ORDER ADOPTING REPORT AND RECOMMENDATIONS. For the reasons stated in the attached Memorandum and Order, the Court adopts the R&R as modified herein and grants Moving Defendants' motions to dismiss the Complaint as against them. Moving Defendants against whom the Complaint is dismissed are: Hatem E. Abouhassan, Abdelhamid Abourya, Agyal Physical Therapy PLLC, Alfa Rehab PT PC, Assem Physical Therapy PC, Amro Mahmoud Shokry Barakat, Barakat PT PC, Islam Bekhet, Best Touch PT PC, Ludmila Bobchynska, MD, Bright Star Rehab PT PC, Danimark Physical Therapy, PC, Motaz M. Ebeido, Mohamed M. Elmandouh, MD, Extensive Care PT PC, First Hand Physical Therapy PC, Rakmin Ilyabayev, Kishore Kanduri, Dalbir Kaur, Zenon Kurkarewicz, Lite Care Rehab PT PC, MMA Physical Therapy PT PC, Mazed Abdel Magid, MD, Manhattan's Hands of Hope PT PC, Anna Meyerzon, NBC Health Physical Therapy PC, Physical Therapy Rehab PC, Physio Solutions PT PC, Radwa PT PC, Rehab Concepts PT PC, Mohamed Y EL Saidy, Sayed F. Sayed, Significant Care PT PC, Therakinematice PT PC, Vital Meridian Acupuncture PC, Wisdom Physical Therapy PC, Cambridge Clarendon Financial Services LLC, Brunswick Bank & Trust Company, Graig Granovsky, Graig Granovsky Chiropractic PC, Ultimate Care Chiropractic PC, NBC Health Physical Therapy P.C., Nathaniel Brex Roa Cayetuna, JMP Rehab Care, P.T. P.C., Harkirtan Singh, Eye On Well-Being Acupuncture PC, Body Acupuncture Care PC, Oksana Podhayetska, Sean Diamond D.C., Bronx Chiropractic Rehabilitation, P.C., Dominick Lavelle, and the Law Offices of Dominick W. Lavelle PC. In view of the Court's findings, Plaintiff is ordered to show cause within two weeks of this decision, on or before March 29, 2021, why the Court should not dismiss the action against all non-moving Defendants. In addition, the Court orders Cambridge to show cause within two weeks of this decision why the Court should not dismiss its crossclaims seeking contribution from all Defendants with respect to any damages that may be assessed against it. Ordered by Chief Judge Margo K. Brodie on 3/15/2021. (Valentin, Winnethka) Modified on 4/9/2021 to correct defendant's names (Piper, Francine). (Entered: 03/15/2021) |
| 03/30/2021 | | ORDER DISMISSING CASE. In the Court's Memorandum and Order dated March 15, 2021, the Court ordered Plaintiff Petroff Amshen LLP to show cause why, in view of the Court's decision, Plaintiff's claims against the remaining Defendants should not be dismissed. The Court also ordered Defendant Cambridge Clarendon Financial Services LLC ("Cambridge Clarendon") to show cause why its crossclaims should not be dismissed. Neither party has responded to the order to show cause and the time for doing so has passed. Accordingly, the Court dismisses Plaintiff Petroff Amshen LLP's claims |

| | | |
|---|---|---|
| | | against the remaining Defendants and Defendant Cambridge Clarendon's crossclaims against all cross Defendants. The Clerk of Court is directed to close this case. Ordered by Chief Judge Margo K. Brodie on 3/30/2021. (Carrero, Jacquellena) (Entered: 03/30/2021) |
| 03/30/2021 | 216 | NOTICE OF APPEAL by Petroff Amshen LLP. Filing fee $ 505, receipt number ANYEDC-14326806. Appeal Record due by 6/30/2021. (Amshen, Steven) (Entered: 03/30/2021) |
| 03/30/2021 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 216 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (Jones, Vasean) (Entered: 03/30/2021) |
| 03/31/2021 | 217 | CLERK'S JUDGMENT, It is ORDERED and ADJUDGED that Moving Defendants' motions to dismiss the Complaint as against them is granted; that Plaintiff Petroff Amshen LLP's claims against the remaining Defendants and Defendant Cambridge Clarendon's crossclaims against all cross Defendants are dismissed; and that this case is closed. Signed by Douglas C. Palmer, Clerk of Court by Jalitza Poveda, Deputy Clerk on 3/31/2021. (Piper, Francine) (Entered: 03/31/2021) |
| 04/09/2021 | 218 | Subsequent NOTICE OF APPEAL by Petroff Amshen LLP . Appeal Record due by 6/30/2021. (Amshen, Steven) (Entered: 04/09/2021) |
| 04/09/2021 | 219 | ORDER, The Court corrects the spelling of names of two Defendants currently listed on the docket sheet and case caption as Bronx Chiropractice Rehabilitation PC and Sean Daimand. The Court also clarifies that in the March 2021 Decision, the Court adopted the spelling of the names of Defendants Bronx Chiropractice Rehabilitation PC and Sean Daimand as "Bronx Chiropractic Rehabilitation, P.C." and "Sean Diamond, D.C." as specified in filings by their attorney of record Mark L. Furman. The Court directs the Clerk of Court to amend the docket to reflect the correct spelling of these Defendants' names as "Bronx Chiropractic Rehabilitation, P.C." and "Sean Diamond, D.C." Ordered by Chief Judge Margo K. Brodie on 4/9/2021. (Piper, Francine) (Entered: 04/09/2021) |


| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 04/12/2021 10:36:58 | | | |
| **PACER Login:** | samshen85 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:19-cv-01861-MKB-RML |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

Serge F. Petroff, Esq.
Steven Amshen, Esq.
Christopher Villanti, Esq.
Yehuda C. Morgenstern, Esq.
PETROFF AMSHEN LLP
1795 Coney Island Avenue, 3rd Floor
Brooklyn, New York 11230
(718) 336-4200

*Counsel for Plaintiff, Petroff Amshen LLP*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PETROFF AMSHEN LLP,

Plaintiff,

v.

ALFA REHAB PT PC, CAMBRIDGE CLARENDON FINANCIAL SERVICES LLC, BRUNSWICK BANK & TRUST COMPANY, JAMES CHENG, CHUNG KWONG YAU, CAI FENG TAN, THE SAMANTHA LEE FAMILY TRUST, ADVANCED REHAB CARE PT PC, JOSEPHINE BELLONI, ANNAROSE ROTONDI TRUST, AGYAL PHYSICAL THERAPY PLLC, WEI JI LI, ASSEM PHYSICAL THERAPY PC, LIU YU, KAI HO RICHARD TANG, BARAKAT PT PC, AMRO MAHMOUD SHOKRY BARAKAT, DIANA FERNANDEZ, CHRISTIAN FERNANDEZ, WISDOM PHYSICAL THERAPY PC, HATEM E ABOUHASSAN, KISHORE KANDURI A/K/A KISHORE K KANDURI, RADWA PT PC, MOHAMED M. ELMANDOUH, MD, ULTIMATE CARE CHIROPRACTIC PC, GRAIG GRANOVSKY, GRAIG GRANOVSKY CHIROPRACTIC PC, THIRD AVENUE CHIROPRACTIC CARE PC, NATHANIEL MAZZA, THERAKINEMATICE PT PC, LEGASPI MADELINE, PHYSIO SOLUTIONS PT PC, REHAB CONCEPTS PT PC, SIGNIFICANT CARE PT PC, SAYED F.

Docket No.: _____________ (   )

**Plaintiff Demands a Trial by Jury**

SAYED, NBC HEALTH PHYSICAL THERAPY PC, NATHANIEL BREX ROA CAYETUNA, LITE CARE REHAB PT PC, ISLAM BEKHET, EXTENSIVE CARE PT PC, DANIMARK PHYSICAL THERAPY PC, ANNA MEYERZON, DJ DRUG SERVICES LLC, ROMAN SHAMALOV, RIVER CHEMIST CORP, MMA PHYSICAL THERAPY PT PC, MAZED ABDEL MAGID, MD, JMP REHAB CARE PT, HARKIRTAN SINGH, DALBIR KAUR, HILLSIDE FAMILY CHIROPRACTIC PC, HOWARD KESSLER, MD, FIRST HAND PHYSICAL THERAPY PC, ABDELHAMID ABOURYA A/K/A ABDELHAMID MAHMOUD ABOURYA, EYE ON WELL-BEING ACUPUNCTURE PC, OATES DEVAN, CORE BASICS PC, KHALED NASR, COMMUNITY WELLNESS PHARMACY INC, RAKMIN ILYABAYEV, COMFORT TOUCH PT PC, FERRIN MANUEL, CANARSIE WELLNESS PHARMACY INC, JEREMY JAMES SCHIES, BODY ACUPUNCTURE CARE PC, OKSANA PODHAYETSKA, BRIGHT STAR REHAB PT PC, MOHAMED Y EL SAIDY, BL HEALTHY LIFE ACUPUNCTURE PC, ZENON KURKAREWICZ, BRONX CHIROPRACTICE REHABILITATION PC, SEAN DAIMAND, BEST TOUCH PT PC, MANHATTAN'S HANDS OF HOPE PT PC, MOTAZ M EBEIDO, VITAL MERIDIAN ACUPUNCTURE PC, LUDMILA BOBCHYNSKA MD, MEDS4DAYS PHARMACY INC, BRITTNEY COLEMAN, PHYSICAL THERAPY REHAB PC, ACUPUNTURE HEALTHCARE PLAZA I PC, LAW OFFICES OF DOMINICK W. LAVELLE PC, DOMINICK LAVELLE A/K/A DOMINICK W LAVELLE, ELSANAA PT PC, MAHMOUD ELSANAA, ZHONG SU, LIBING SU, JOHN DOE #1 through JOHN DOE #10,

Defendants.

## COMPLAINT

Plaintiff Petroff Amshen LLP ("Petroff Amshen"), by and through its counsel, Petroff Amshen LLP as and for its Complaint against the Defendants Alfa Rehab PT PC, Cambridge Clarendon Financial Services LLC, Brunswick Bank & Trust Company, James Cheng, Chung Kwong Yau, Cai Feng Tan, The Samantha Lee Family Trust, Advanced Rehab Care PT PC, Josephine Belloni, Annarose Rotondi Trust, Agyal Physical Therapy PLLC, Wei Ji Li, Assem Physical Therapy PC, Liu Yu, Kai Ho Richard Tang, Barakat PT PC, Amro Mahmoud Shokry Barakat, Diana Fernandez, Christian Fernandez, Wisdom Physical Therapy PC, Hatem E Abouhassan, Kishore Kanduri aka/ Kishore K Kanduri, Radwa PT PC, Mohamed M. Elmandouh, MD, Ultimate Care Chiropractic PC, Graig Granovsky, Graig Granovsky Chiropractic PC, Third Avenue Chiropractic Care PC, Nathaniel Mazza, Therakinematic PT PC, Legaspi Madeline, Physio Solutions PT PC, Rehab Concepts PT PC, Significant Care PT PC, Sayed F Sayed, NBC Health Physical Therapy PC, Nathaniel Brex Roa Cajetan, Lite Care Rehab PT PC, Islam Bekhet, Extensive Care PT PC, Danimark Physical Therapy PC, Anna Meyerezon, DJ Drug Services LLC, Roman Shamalov, River Chemist Corp, MMA Physical Therapy PT PC, Mazen Abdel Magid, MD, JMP Rehab Care PT PC, Harkirtan Singh, Dalber Kaur, Hillside Family Chiropractic PC, Howard Kessler, MD, First Hand Physical Therapy PC, Abdelhamid Abourya a/k/a Abdelhamid Mahmoud Abourya, Eye On Well-Being Acupuncture PC, Oates Devan, Core Basics PC, Khaled Nasr, Community Wellness Pharmacy Inc, Rakmin Ilyabayev, Comfort Touch PT PC, Ferrin Manuel, Canarsie Wellness Pharmacy Inc, Jeremy James Schies, Body Acupuncture Care PC, Oksana Podhayetska, Bright Star Rehab PT PC, Mohamed Y El Saidy, BL Healthy Life Acupuncture PC, Ludmila Bodchynska, Zenon Kurkarewicz, Bronx Chiropractic Rehabilitation PC, Sean Daimond, Best Touch PT PC, Manhattan's Hands of Hope PT PC, Motaz M Ebeido,

Vital Meridian Acupuncture PC, Ludmila Bobchynska MD, Meds4Days Inc, Brittney Coleman, Physical Therapy Rehab PC, Acupuncture Healthcare Plaza I PC, Law Offices of Dominick W. Lavelle PC, Dominick Lavelle a/k/a Dominick W Lavelle, Elsanaa PT PC, Zhong Su and Libing Su, (collectively the "Defendants"), hereby allege as follows:

**NATURE OF THE ACTION**

1. This action is about a criminal enterprise orchestrated by the Defendants relating to the laundering of illicitly obtained sums in excess of $600,000.000, whereby unbeknownst to Petroff Amshen, the Defendants fraudulently used the name and reputation of Petroff Amshen as a vehicle in their nefarious and illegal scheme, and thereby exposed Petroff Amshen to liability.

2. The Defendants are comprised primarily of chiropractors, physical therapists and acupuncturists in the State of New York and the State of New Jersey, as well as an attorney and an individual recently convicted at trial for money laundering charges.

3. The Defendants conspired together via more than 50 corporate entities in their control, and generated more than 120 negotiable instruments, issued and signed by the Defendants as makers of said checks, all made payable to Petroff Amshen. The Defendants distributed the checks amongst themselves – not to Petroff Amshen – and fraudulently endorsed the checks via the repeated forging of signatures of Petroff Amshen. Subsequently, the Defendants presented said checks to a devious check cashier in New Jersey.

4. Thereby, substantial sums were transferred amongst the Defendants, from their corporate accounts that were then converted to liquid assets, *i.e.,* cash.

5. Petroff Amshen had absolutely no knowledge of the entire enterprise and that it was being used as an apparent conduit for Defendants' illegal laundering of illicitly gained money.

6. Moreover, in furtherance of the scheme and in order to substantiate the fraud, the Defendants created false W-9 forms claimed to be issued by Petroff Amshen to the Defendants and used the same to hold themselves out as having authority to act on behalf of Petroff Amshen. Knowingly and with intent to further perpetrate illegal activity, the Defendants wrote on the memo line of the checks, fraudulent statements such as "legal fees" or "legal services" to create the illusion that the check were actually issued to Petroff Amshen.

7. Upon information and belief, the repeated use of one specific check casher was not a mere happenstance; it was integral for the overall scheme. The check casher located in New Jersey was aware of the scheme from the outset and otherwise would not have allowed for multiple checks issued from more than 50 different entities in New York to a single law firm, without raising red flags and suspicion.

8. The check casher Defendant did not do basic due diligence; to *wit*, it did not verify that the Employee Identification Number on the fraudulent W-9 ostensibly issued by Petroff Amshen was patently incorrect and erroneous. Also, it neglected to call the publicly available phone number of Petroff Amshen to verify whether the individuals purportedly depositing checks on its behalf, were indeed associated with Petroff Amshen.

9. Moreover, upon information and belief, the Check Casher received remuneration and compensation for its role in the scheme.

10. Petroff Amshen had absolutely no knowledge of the existence of the enterprise, and conduct and activities of the Defendants; was never retained by any of the Defendants to provide legal services; never communicated with any of the Defendants regarding the fraudulent checks or any checks; had no knowledge of the existence of the scheme and existence of the enterprise due to the subterfuge and acts of concealment of the Defendants until a recent detection of same in an

unrelated action; the fraudulent checks were never signed or endorsed by an owner, officer, and/or agent of Petroff Amshen; and Petroff Amshen did not receive any of the funds that were generated by the scheme.

11. The criminal enterprise was comprised of all of the Defendants, each of which played a pivotal role in advancing its purpose and common interest. The crimes of the enterprise include, *inter alia,* tax evasion and money laundering, as well as violations of state penal laws criminalizing the falsification of business records, forgery and identity theft statutes, independent of the underlying criminal activity that generated the proceeds.

12. Accordingly, Petroff Amshen seek a declaration that at all relevant times:

(a) Petroff Amshen was never retained by any of the Defendants;

(b) Petroff Amshen had no knowledge of the existence of the Defendants;

(c) Petroff Amshen had no knowledge of the criminal conduct and activities of the Defendants;

(d) Petroff Amshen did not have any communication with the Defendants regarding the checks;

(e) The checks were fraudulent, as the checks were never signed or endorsed by an owner, officer, and/or agent of Petroff Amshen;

(f) Petroff Amshen did not receive any of the funds that were generated by the checks, directly or indirectly;

(g) Any W-9 or 1099 Form, in the past and in the future, that ostensibly reflects that Petroff Amshen employed or used the services of any of the Defendants is a forgery and thereby null and void; and

(h) Any check, in the past and in the future, issued by the Defendants and made payable to Petroff Amshen is a nullity and Petroff Amshen is not a holder in due course of any such check.

13. The Defendants fall into the following categories:

(a) Alfa Rehab PT PC, Advanced Rehab Care PT PC, Assem Physical Therapy PC, Barakat PT PC, Wisdom Physical Therapy PC, Radwa PT PC, Ultimate Care Chiropractic PC, Graig Granovsky Chiropractic PC, Third Avenue Chiropractic Care PC, Therakinematic PT PC, Physio Solutions PT PC, Rehab Concepts PT PC, Significant Care PT PC, NBC Health Physical Therapy PC, Nathaniel Brex Roa Cayetuna, Lite Care Rehab PT PC, Extensive Care PT PC, Danimark Physical Therapy PC , DJ Drugs Services LLC, River Chemist Corp., MMA Physical Therapy PT PC, JMP Rehab Care PT PC, Hillside Family Chiropractic PC, First Hand Physical Therapy PC, Eye On Well-Being Acupuncture PC, Core Basics PC, Community Wellness Pharmacy Inc, Comfort Touch PT PC, Canarsie Wellness Pharmacy Inc, Body Acupuncture Care PC, Bright Star Rehab PT PC, Bronx Chiropractic Rehabilitation PC, Best Touch PT PC, Manhattan's Hands of Hope PT PC, Meds4days Pharmacy Inc, Physical Therapy Rehab PC, Acupuncture Healthcare Plaza I PC, The Law Offices of Dominick W Lavelle, PC and Elsanaa PT PC (collectively the "Corporate Defendants"), are New York State Corporations that issued the subject checks.

(b) James Cheng, Chung Kwong Yau, Cai Feng Tan, Wei Ji Li, Amro Mahmoud Shokry Barakat, Diana Fernandez, Christian Fernandez, Hatem E Abouhassan Kishore Kanduri a/k/a Kishore K. Kanduri, Mohamed M. Elmandouh, MD, Nathaniel Mazza, Legaspi Madeline, Sayed F Sayed, Islam Bekhet, Anna Meyerzon, Roman Shamalov, Mazen Abdel Magid, MD, Harkirtan Singh, Dalber Kaur, Howard Kessler, MD, Abdelhamid Abourya, Oates Devan, Khaled

Nasr, Rakmin Ilyabayev, Ferrin Manuel, Jeremy James Schies, Oksana Podhayetska, Mohamed Y El Saidy, Sean Diamond, Motaz M Ebeido, Brittney Coleman, Dominick Lavelle a/k/a Dominick W Lavelle, Mahmoud Elsanaa, Zhong Sue and Libing Su (collectively the "Individual Defendants"), are citizens and residents of the State of New York, who upon information and belief, control the Corporate Defendants, affixed their signatures upon the checks on behalf of the Corporate Defendants, fraudfully endorsed the checks on behalf of Petroff Amshen and received the cash generated by depositing the checks at the Check Casher in New Jersey.

(c) The Check Casher Defendant is known as Cambridge Clarendon Financial Services, LLC located in East Brunswick, New Jersey and is a business that engages in the cashing of checks and it operates by endorsing checks it receives to pay to the order of Brunswick Bank & Trust Company, a Bank situated nearby.

14. As discussed below, Defendants at all relevant times had knowledge that Petroff Amshen (i) did not provide legal services or any services to the Defendants, (ii) the checks were not issued to Petroff Amshen (iii) no one associated with Petroff Amshen endorsed the checks or presented it for payment and, that (iv) the name of Petroff Amshen was merely used as a conduit to funnel funds amongst the Defendants that they did not want to be public knowledge, as the source of the funds were illegitimate and the Defendants wanted to conceal the sums from the taxing authorities.

15. The Defendants' fraudulent scheme began as early as January 1, 2016 and has continued uninterrupted until the present day.

16. Defendant Jeremy James Schies is been subject of conviction regarding, *inter alia,* money laundering, in the Eastern District of the State of New York, Case number 2:18-cr-00602 and is now released on $250,000.00 bail pending his sentencing date.

17. As a result of the Defendants' conduct, Petroff Amshen has been harmed and will continue to be harmed in the near future, especially since at this time, the entire scope of the enterprise has not yet known. Therefore, these matters present issues of sufficient immediacy and reality that warrant a judicial determination.

**THE PARTIES**

18. Plaintiff Petroff Amshen LLP is a domestic Limited Liability Partnership, duly organized and existing under the State of New York, with its principal place of business located in the State of New York.

19. Defendant Alfa Rehab PT, PC ("Alfa Rehab"), is a New York professional corporation with its principal place of business in New York.

20. Defendant Cambridge Clarendon Financial Services LLC (the "Check Casher"), is a New Jersey Limited Liability Corporation and functions as a Check Cashier with its principal place of business in New Jersey.

21. Defendant Brunswick Bank & Trust Company (the "Brunswick Bank"), is a Bank chartered in the State of New Jersey with its headquarters located at New York.

22. Defendant James Cheng ("Cheng"), resides in and is a citizen of the State of New York.

23. Defendant Chung Kwong Yau ("Yau"), resides in and is a citizen of the State of New York.

24. Defendant Cai Feng Tan ("Tan"), resides in and is a citizen of the State of New York.

25. Defendant The Samantha Lee Family Trust (the "Samantha Trust"), is a trust created under the laws of the State of New York.

26. Defendant Advanced Rehab Care PT PC ("Advanced Rehab"), is a New York professional corporation with its principal place of business in New York.

27. Defendant Josephine Belloni ("Belloni"), resides in and is a citizen of the State of New York.

28. Defendant Annarose Rotondi Trust (the "Annarose Rotondi Trust"), is a trust created under the laws of the State of New York.

29. Defendant Agyal Physical Therapy PLLC ("Agyal Physical"), is a New York professional services limited liability company with its principal place of business in New York.

30. Defendant Wei Ji Li ("Wei"), resides in and is a citizen of the State of New York.

31. Defendant Assem Physical Therapy PC ("Assem Physical"), is a New York professional corporation with its principal place of business in New York.

32. Defendant Liu Yu ("Yu"), resides in and is a citizen of the State of New York.

33. Defendant Kai Ho Richard Tang ("Tang"), resides in and is a citizen of the State of New York.

34. Defendant Barakat PT PC ("Barakat PC"), is a New York professional corporation with its principal place of business in New York.

35. Defendant Amro Mahmoud Shokry Barakat ("Barakat"), resides in and is a citizen of the State of New York.

36. Defendant Diana Fernandez ("Fernandez"), resides in and is a citizen of the State of New York.

37. Defendant Christian Fernandez ("Fernandez"), resides in and is a citizen of the State of New York.

38. Defendant Wisdom Physical Therapy, PC ("Wisdom"), is a New York professional corporation with its principal place of business in New York.

39. Defendant Hatem E Abouhassan ("Abouhassan"), resides in and is a citizen of the State of New York.

40. Defendant Kishore Kanduri aka/ Kishore K. Kanduri ("Kanduri"), is an individual who is a resident of the State of New Jersey.

41. Defendant Radwa PT PC ("Radwa PC"), is a New York professional corporation with its principal place of business in New York.

42. Defendant Mohamed M. Elmandouh ("Elmandouh"), resides in and is a citizen of the State of New York.

43. Defendant Ultimate Care Chiropractic PC ("Ultimate"), is a New York professional corporation with its principal place of business in New York.

44. Defendant Graig Granovsky ("Granovsky"), resides in and is a citizen of the State of New York.

45. Defendant Graig Granovsky Chiropractic PC ("Granovsky PC"), is a New York professional corporation with its principal place of business in New York.

46. Defendant Third Avenue Chiropractic Care PC ("Third Avenue"), is a New York professional corporation with its principal place of business in New York.

47. Defendant Nathaniel Mazza ("Mazza"), is an individual who is a resident of the State of New Jersey.

48. Defendant Therakinematic PT PC ("Therakinematic"), is a New York professional corporation with its principal place of business in New York.

49. Defendant Legaspi Madeline ("Madeline"), resides in and is a citizen of the State of New York.

50. Defendant Physio Solutions PT PC ("Physio"), is a New York professional corporation with its principal place of business in New York.

51. Defendant Rehab Concepts PT PC ("Rehab"), is a New York professional corporation with its principal place of business in New York.

52. Defendant Significant Care PT PC ("Significant"), is a New York professional corporation with its principal place of business in New York.

53. Defendant Sated F Sayed ("Sayed"), resides in and is a citizen of the State of New York.

54. Defendant NBC Health Physical Therapy PC ("NBC"), is a New York professional corporation with its principal place of business in New York.

55. Defendant Nathaniel Brex Roa Cayetuna ("Cayetuna"), resides in and is a citizen of the State of New York.

56. Defendant Lite Care Rehab PT PC ("Lite"), is a New York professional corporation with its principal place of business in New York.

57. Defendant Islam Bekhet ("Bekhet"), resides in and is a citizen of the State of New York.

58. Defendant Extensive Care PT PC ("Extensive"), is a New York professional corporation with its principal place of business in New York.

59. Defendant Danimark Physical Therapy PC ("Danimark"), is a New York professional corporation with its principal place of business in New York.

60. Defendant Anny Meyerzon ("Meyerzon"), resides in and is a citizen of the State of New York.

61. Defendant DJ Drugs Services LLC ("DJ"), is a New York Limited Liability Corporation with its principal place of business and residence of its members, in the State of New York.

62. Defendant Roman Shamalov ("Shamalov"), resides in and is a citizen of the State of New York.

63. Defendant River Chemist Corporation ("River"), is a New York State Corporation with its principal place of business in the State of New York.

64. Defendant MMA Physical Therapy PT PC ("MMA"), is a New York professional corporation with its principal place of business in New York.

65. Defendant Mazen Abdel Magid ("Magid"), resides in and is a citizen of the State of New York.

66. Defendant JMP Rehab Care PT PC ("JMP"), is a New York professional corporation with its principal place of business in New York.

67. Defendant Harkirtan Singh ("Singh"), resides in and is a citizen of the State of New York.

68. Defendant Dalbir Kaur ("Kaur"), resides in and is a citizen of the State of New York.

69. Defendant Hillside Family Chiropractic PC ("Hillside"), is a New York professional corporation with its principal place of business in New York.

70. Defendant Howard Kessler, MD ("Kessler"), resides in and is a citizen of the State of New York.

71. Defendant First Hand Physical Therapy PC ("First Hand"), is a New York professional corporation with its principal place of business in New York.

72. Defendant Abdelhamid Abourya ("Abourya"), resides in and is a citizen of the State of New Jersey.

73. Defendant Eye On Well-Being Acupuncture PC ("Acupuncture"), is a New York professional corporation with its principal place of business in New York.

74. Defendant Oates Devan ("Devan"), resides in and is a citizen of the State of New York.

75. Defendant Core Basics PC ("Core"), is a New York professional corporation with its principal place of business in New York.

76. Defendant Khaled Nasr ("Nasr"), resides in and is a citizen of the State of New York.

77. Defendant Community Wellness Pharmacy Inc ("Wellness"), is a New York corporation with its principal place of business in the State of New York.

78. Defendant Rakmin Ilyabayev ("Ilyabayev"), resides in and is a citizen of the State of New York.

79. Defendant Comfort Touch PT PC ("Comfort"), is a New York professional corporation with its principal place of business in New York.

80. Defendant Ferrin Manuel ("Manuel"), resides in and is a citizen of the State of New York.

81. Defendant Canarsie Wellness Pharmacy Inc ("Canarsie Wellness"), is a New York corporation with its principal place of business in New York.

82. Defendant Jeremy James Schies ("Schies"), is a citizen of the State of Missouri.

83. Defendant Body Acupuncture Care PC ("BAC"), is a New York professional corporation with its principal place of business in New York.

84. Defendant Oksana Podhayetska ("Podhayetska"), resides in and is a citizen of the State of New York.

85. Defendant Bright Star Rehab PT PC ("BSR"), is a New York professional corporation with its principal place of business in New York.

86. Defendant Mohamed Y El Saidy ("Saidy"), resides in and is a citizen of the State of New York.

87. Defendant BL Health Life Acupuncture PC ("BL"), is a New York professional corporation with its principal place of business in New York.

88. Defendant Zenon Kurkarewicz ("Kurkarewicz"), resides in and is a citizen of the State of New York.

89. Defendant Bronx Chiropractic Rehabilitation PC ("BCR"), is a New York professional corporation with its principal place of business in New York.

90. Defendant Sean Daimond ("Daimond"), resides in and is a citizen of the State of New York.

91. Defendant Best Touch PT PC ("BT"), is a New York professional corporation with its principal place of business in New York.

92. Defendant Manhattan's Hands of Hope PT PC ("MHOH"), is a New York professional corporation with its principal place of business in New York.

93. Defendant Motaz M Ebeido ("Ebeido"), resides in and is a citizen of the State of New York.

94. Defendant Vital Meridian Acupuncture PC ("Meridian"), is a New York professional corporation with its principal place of business in New York.

95. Defendant Ludmila Bodchynska, MD ("Bodchynska"), resides in and is a citizen of the State of New York.

96. Defendant Meds4days Inc ("MI"), is a New York corporation, with its principal place of business in the State of New York.

97. Defendant Brittney Coleman ("Coleman"), resides in and is a citizen of the State of New York.

98. Defendant Physical Therapy Rehab PC ("PTR"), is a New York professional corporation with its principal place of business in New York.

99. Defendant Acupuncture Healthcare Plaza I PC ("AHP"), is a New York professional corporation with its principal place of business in New York.

100. Defendant The Law Offices of Dominick W. Lavelle PC ("Lavelle PC"), is a New York Professional Corporation which has its principal place of business in the State of New York.

101. Defendant Dominick W. Lavelle ("Lavelle"), is a citizen of the State of New York, and practices law at 100 Herricks Rd, Mineola, NY 11501.

102. Defendant Elsanaa PT PC ("Elasanaa PT"), is a New York Professional Corporation which has its principal place of business in the State of New York.

103. Defendant Mahmoud Elsanaa ("Elasanaa"), resides in and is a citizen of the State of New York.

104. Defendant Zhon Su ("Zhon"), resides in and is a citizen of the State of New York.

105. Defendant Libing Su ("Libing"), resides in and is a citizen of the State of New York.

106. Upon information and belief, Defendants John Doe #1 through John Doe # 10 are fictitious and unknown to Petroff Amshen, named as persons or entities who may potentially have aided and abetted the conduct described herein.

## JURISDICTION AND VENUE

107. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the matter in controversy and intended benefit or the value of the right being protected and the injury being averted exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

108. Pursuant to 28 U.S.C. § 1331, the Court also has jurisdiction over claims brought under 18 U.S.C. § 1961 et seq, (the Racketeer Influence and Corrupt Organization ["RICO"] Act) because they arise under the laws of the United States.

109. In addition, Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. §1367.

110. Declaratory relief is proper pursuant to 28 U.S.C. §§ 2201 and 2202.

111. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Eastern District of New York is the District where the Plaintiff conducts most of its business and where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of this Complaint occurred.

## STATEMENT OF FACTS

112. Upon information and belief, on or about January 1, 2016, the Defendants conspired together to avoid both the detection of their criminal activities and the payment of federal, state and city income taxes via a scheme to funnel funds from the accounts of the Corporate Defendants to the pockets of the Individual Defendants. It was essential to said scheme that the Defendants

did not transfer funds directly amongst themselves and that they apparently utilize an independent and legitimate and reputable intermediary. Accordingly, they opted to use the name of Petroff Amshen on the face of the checks, with the belief that Petroff Amshen would never learn of same.

113. In furtherance of the conspiracy, and necessary to avoid detection by the relevant governmental agencies – to conceal the criminal source of the funds and to avoid paying taxes on same – the Defendants conspired to issue checks issued to Petroff Amshen and fraudulently endorsed those checks by forging signatures of Petroff Amshen.

114. The Defendants knew that if the checks would be deposited in a conventional banking institution, the fraud would be uncovered, either at the outset or over the course of time. A reputable banking institution, in accordance with regulatory requirements and due diligence, would require adequate and proper verification that the presenter or presenters of a negotiable interest is indeed an employee of Petroff Amshen. The Defendants were not employed and/or agents of Petroff Amshen nor were they ever associated with Petroff Amshen, and the foregoing would undoubtedly be uncovered by a banking institution that complied with all regulations, including verification of the Employment Identification Number on the subject W-9 forms.

115. The Defendants knew that if the checks would be deposited directly into a bank account of the Defendants, it would then be traceable to the Defendants; something the Defendants wanted to avoid at all costs. Therefore, necessary to conceal the fraudulent scheme, and to have access to cash, the Defendants conspired to utilize a specific dishonest and unscrupulous check cashing business, namely the Check Cashing Defendant.

116. Upon information and belief, the Defendants conspired with Defendant Check Chaser because the Check Casher was a member of the criminal enterprise and was amenable and

more than ready, willing and able to be a vehicle and perpetuator of the underlying fraud, solely for its own pecuniary interest.

117. Upon information and belief, all of the Defendants knew or should have known that the checks that were not actually issued to Petroff Amshen, as Petroff Amshen did not provide services for the Defendants, of any kind.

118. Upon information and belief, all of the Defendants knew or should have known that the checks that were not actually issued to Petroff Amshen, as none of the Defendants were independent contractors, nor did they provide services of any kind, to Petroff Amshen.

119. Upon information and belief, all of the Defendants affixed, or caused to be fixed, fraudulent signatures to the checks that would appear to be an endorsement of Petroff Amshen.

120. Upon information and belief, all the Defendants actually "presented" the check or caused the checks to be presented, to the Check Casher Defendant in New Brunswick, New Jersey.

121. Upon information and belief, all the Defendants gave fraudulent checks to the Check Casher Defendant in exchange for cash, less the amount the Defendant Check Casher withheld as compensation for its pivotal role in the criminal enterprise.

122. Upon information and belief, the Defendants Check Casher and Brunswick Bank were aware that the checks were never endorsed by Petroff Amshen.

123. Upon information and belief, the Defendants Check Casher and Brunswick Bank were aware that the so-called presenter of said checks was never associated with Petroff Amshen.

124. Upon information and belief, the Defendants Check Cashers and Brunswick Bank were aware that the cash provided will never go to Petroff Amshen; rather it would be used to enrich the coffers of the Defendants, to be dispensed pro rata amongst the Defendants based on a pre-determined amount that was agreed upon by the Defendants.

125. Upon information and belief, the Check Casher Defendant actually withheld a larger than average percentage of the face value of the checks, independent and addition to its usual fee, as compensation and consideration for the crucial and pivotal rule in its perpetuation and facilitation of the Defendants' criminal enterprise.

126. Moreover, the Defendants created multiple fraudulent W-9 documents that were purportedly issued by Petroff Amshen, as a means to form a veneer of a legitimate association with Petroff Amshen. The exact scope of the fraudulent creation of official documents, will be exposed during discovery and ultimately at trial, of this action. A copy of a fraudulent W-9 created by the Defendants is attached hereto as Exhibit A.

127. Upon information and belief, the Defendants filed documents with the Internal Revenue Service that reflects payments made to Petroff Amshen.

128. Petroff Amshen did not provide any services to the Defendants, and certainly did not create any W-9 for any of the Defendants.

129. Petroff Amshen was unaware of the entire conspiracy and it did not receive any compensation, pecuniary or otherwise, as a result of the illegal conduct of the Defendants.

130. Upon information and belief, Petroff Amshen will face, as proximate cause of the Defendants' criminal action, significant tax penalties, in an amount to be determined in the future and during discovery, unless the Court grants the relief sought herein.

131. Upon information and belief, Petroff Amshen will suffer substantial injury to its reputation as a result of the Defendants' conduct in which the name, business reputation and identity of Petroff Amshen was used to conduct a fraudulent scheme.

**FIRST CAUSE OF ACTION**
**Against All Defendants**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 & 2202)**

132. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

133. There is an actual controversy between Petroff Amshen and the Defendants regarding more than $75,000.00 in past and future tax consequences as well as harm to its reputation as a result of the past and future conduct of the Defendants in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

134. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

135. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibits B through PP to this Complaint as Exhibits; any W-9 or 1099 form that reflects that the Defendants received services from Petroff Amshen are null and void, including, but not limited to, the W-9 form that is attached as Exhibit A to this Complaint; and the Defendants are precluded from engaging in any such acts in the future.

**SECOND CAUSE OF ACTION**
**Against Cheng, Yau, Samantha Trust and Tan**
**(Violation of 18 U.S.C. § 1962(c))**

136. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

137. Alfa Rehab is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

138. Cheng, Yau, Samantha Trust and Tan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Alfa Rehab through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

139. Furthermore, Cheng, Yau, Samantha Trust and Tan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Alfa Rehab through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

140. Upon information and belief, the property that Cheng, Yau, Samantha Trust and Tan transferred and divided amongst themselves, were proceeds of illegal activity.

141. Upon information and belief, Cheng, Yau, Samantha Trust and Tan intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

142. Upon information and belief, Cheng, Yau, Samantha Trust and Tan knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Cheng, Yau, Samantha Trust and Tan.

143. Upon information and belief, Cheng, Yau, Samantha Trust and Tan knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

144. Alfa Rehab is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with various addresses that appear on the checks: 8844 24th Ave, Brooklyn, NY 11214 and 225 Bay 44th St, Brooklyn, NY 11214.

145. Copies of 19 of the checks used in the scheme by Alfa Rehab are attached hereto as Exhibit B.

146. As reflected therein, Alfa Rehab issued checks from a time period spanning from November 1, 2016 through November 2, 2018 totaling $69,157.00. Notably, the memo line of some of the earlier checks state "legal services." Petroff Amshen never provided legal services to Alfa Rehab.

147. Upon information and belief, 8844 24th Ave, Brooklyn, NY 11214, the address that appears on many of the checks issued by Alfa Rehab, is the primary residence of Cheng as well as the official address of the "Samantha Trust."

148. Upon information and belief, 225 Bay 44th St, Brooklyn, NY 11214, the address that appears on many of the checks issued by Alfa Rehab, is the primary residence of Chung Kwong Yau.

149. Upon information and belief, 225 Bay 44th St, Brooklyn, NY 11214 the address that appears on many of the checks issued by Alfa Rehab, is the primary residence of Defendant Cai Feng Tan.

150. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

151. Upon information and belief, Alfa Rehab's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Cheng, Yau, Samantha Trust and Tan operate Alfa Rehab, inasmuch as Alfa Rehab is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Alfa Rehab to function.

152. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Cheng, Yau, Samantha Trust and Tan, upon information and belief, continue to engage in the criminal activity described herein.

153. These inherently unlawful acts are taken by Cheng, Yau, Samantha Trust and Tan in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

154. Petroff Amshen has been injured as stated above.

**<u>THIRD CAUSE OF ACTION</u>**
**Against Cheng, Yau, Samantha Trust, Tan and Alfa Rehab**
**(Common Law Fraud)**

155. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

156. Alfa Rehab, Cheng, Yau, Samantha Trust and Tan intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

157. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Alfa Rehab (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

158. Cheng, Yau, Samantha Trust, Tan and Alfa Rehab intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

159. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

160. Alfa Rehab and Cheng, Yau, Samantha Trust, and Tan's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

161. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Against Cheng, Yau, Samantha Trust, Tan and Alfa Rehab**
**(Unjust Enrichment)**

162. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

163. As set forth above, Cheng, Yau, Samantha Trust, Tan and Alfa Rehab have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

164. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Cheng, Yau, Samantha Trust, Tan and Alfa Rehab, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

165. Cheng, Yau, Samantha Trust, Tan and Alfa Rehab have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Cheng, Yau, Samantha Trust, Tan and Alfa Rehab voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

166. Cheng, Yau, Samantha Trust, Tan and Alfa Rehab's retention of sums violates fundamental principles of justice, equity and good conscience.

167. By reason of the above, Cheng, Yau, Samantha Trust, Tan and Alfa Rehab have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**FIFTH CAUSE OF ACTION**
**Against Cheng, Yau, Samantha Trust, Tan and Alfa Rehab**
**(Declaratory Judgment)**

168. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

169. There is an actual controversy between Petroff Amshen and Cheng, Yau, Samantha Trust and Tan regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Cheng, Yau, Samantha Trust and Tan in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

170. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

171. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1201 | 11/1/2016 | $4,500 |
| 1208 | 11/16/2016 | $3,000 |
| 1222 | 12/1/2016 | $4,150 |
| 1243 | 1/3/2017 | $3,149 |
| 1328 | 2/1/2017 | $4,000 |
| 1341 | 3/3/2017 | $2,858 |
| 1352 | 4/1/2017 | $5,000 |
| 1372 | 5/1/2017 | $3,300 |
| 1536 | 7/8/2017 | $5,000 |
| 1558 | 8/4/2017 | $1,255 |
| 1576 | 9/7/2017 | $4,100 |
| 1597 | 10/3/2017 | $4,500 |
| 1620 | 11/7/2017 | $2,800 |
| 1647 | 1/2/2018 | $4,000 |
| 1419 | 2/4/2018 | $4,000 |
| 1434 | 3/4/2018 | $4,000 |
| 1441 | 4/4/2018 | $2,884 |
| 1514 | 5/3/2018 | $3,200 |
| 104 | 11/2/2018 | $3,461 |
| | | **$69,157** |
| | | |

172. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Cheng, Yau, Samantha Trust and Tan; never communicated with Cheng, Yau, Samantha Trust and Tan regarding payment of services, had no knowledge that Cheng, Yau, Samantha Trust and Tan were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit B; and Cheng, Yau, Samantha Trust and Tan are precluded from engaging in any such acts in the future.

**SIXTH CAUSE OF ACTION**
**Against Belloni and Annarose Rotondi Trust**
**(Violation of 18 U.S.C. § 1962(c))**

173. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

174. Advanced Rehab is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

175. Belloni and Annarose Rotondi Trust knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Advanced Rehab through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

176. Furthermore, Belloni and Annarose Rotondi Trust knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Advanced Rehab through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

177. Upon information and belief, the property that Belloni and Annarose Rotondi Trust transferred and divided amongst themselves, were proceeds of illegal activity.

178. Upon information and belief, Belloni and Annarose Rotondi Trust intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

179. Upon information and belief, Belloni and Annarose Rotondi Trust knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Belloni and Annarose Rotondi Trust.

180. Upon information and belief, Belloni and Annarose Rotondi Trust knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

181. Advanced Rehab is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with the addresses that appears on the checks being 1931 60th Street, 2nd Floor, Brooklyn, New York 11204.

182. A copy of a check used in the scheme by Advanced Rehab is attached hereto as Exhibit C.

183. Upon information and belief, 1931 60th Street, 2nd Floor, Brooklyn, New York 11204, the address that appears on the checks issued by Advanced Rehab, is the primary residence of Belloni.

184. Upon information and belief, 1931 60th Street, 2nd Floor, Brooklyn, New York 11204 the address that appears on many of the checks issued by Advanced Rehab, is the address of Defendant the Annarose Rotondi Trust.

185. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

186. Upon information and belief, Advanced Rehab's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Belloni and Annarose Rotondi Trust operate Advanced Rehab, inasmuch as Advanced Rehab is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Advanced Rehab to function.

187. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Belloni and Annarose Rotondi Trust, upon information and belief, continue to engage in the criminal activity described herein.

188. These inherently unlawful acts are taken by Belloni and Annarose Rotondi Trust in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

189. Petroff Amshen has been injured as stated above.

**SEVENTH CAUSE OF ACTION**
**Against Belloni, Annarose Rotondi Trust and Advance Rehab**
**(Common Law Fraud)**

190. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

191. Advanced Rehab, Belloni and Annarose Rotondi Trust intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

192. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Advanced Rehab (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

193. Belloni, Annarose Rotondi Trust and Advanced Rehab intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

194. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

195. Advanced Rehab, Belloni and Annarose Rotondi Trust's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

196. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages

**EIGHTH CAUSE OF ACTION**
**Against Belloni, Annarose Rotondi Trust and Advance Rehab**
**(Unjust Enrichment)**

197. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

198. As set forth above, Belloni, Annarose Rotondi Trust and Advanced Rehab have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

199. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Tan Belloni, Annarose Rotondi Trust and Advanced Rehab, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

200. Belloni, Annarose Rotondi Trust and Advanced Rehab have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Belloni, Annarose, Rotondi Trust and Advanced Rehab voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

201. Belloni, Annarose Rotondi Trust and Advanced Rehab's retention of sums violates fundamental principles of justice, equity and good conscience.

202. By reason of the above, Belloni, Annarose Rotondi Trust and Advanced Rehab have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**NINTH CAUSE OF ACTION**
**Against Belloni, Annarose Rotondi Trust and Advance Rehab**
**(Declaratory Judgment)**

203. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

204. There is an actual controversy between Petroff Amshen and Belloni, Annarose Rotondi Trust and Advance Rehab regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Belloni, Annarose Rotondi Trust and Advance Rehab in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

205. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

206. Examples of a past that is subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK# | DATES | AMOUNT |
|---|---|---|
| | | |
| 15 | 6/4/2018 | $6,404 |
| | | |

207. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Belloni, Annarose Rotondi Trust and Advance Rehab; never communicated with Belloni, Annarose Rotondi Trust and Advance Rehab regarding payment of services, had no knowledge that Belloni, Annarose Rotondi Trust and Advance Rehab were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit C, and Belloni, Annarose Rotondi Trust and Advance Rehab are precluded from engaging in any such acts in the future.

**TENTH CAUSE OF ACTION**
**Against Defendant Wei**
**(Violation of 18 U.S.C. § 1962(c))**

208. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

209. Agyal Physical is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

210. Wei knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Agyal Physical through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

211. Furthermore, Wei knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Agyal Physical through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

212. Upon information and belief, the property that Wei transferred and divided were proceeds of illegal activity.

213. Upon information and belief, Wei intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

214. Upon information and belief, Wei knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Wei.

215. Upon information and belief, Wei knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

216. Agyal Physical is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with an address at 223 Bay 44th St, Apt 1, Brooklyn, NY 11214.

217. A copy of a check used in the scheme by Agyal Physical is attached hereto as Exhibit D.

218. As reflected therein, Agyal Physical issued a check on May 31, 2017 totaling $4,423.00. Notably, the memo line of that check states "legal services." Petroff Amshen never provided legal services to Agyal Physical.

219. Upon information and belief, 8844 24th Ave, Brooklyn, NY 11214, the address that appears on many of the checks issued by Agyal Physical, is the primary residence of Wei.

220. None of the various signatures on the check that purport to be signature and endorsement of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

221. Upon information and belief, Agyal Physical's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Wei operate Agyal Physical, inasmuch as Agyal Physical is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Agyal Physical to function.

222. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of

continued criminal activity, as does the fact that Wei, upon information and belief, continues to engage in the criminal activity described herein.

223. These inherently unlawful acts are taken by Wei in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

224. Petroff Amshen has been injured as stated above.

**ELEVENTH CAUSE OF ACTION**
**Against Wei and Agya Physical**
**(Common Law Fraud)**

225. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

226. Agya Physical and Wei intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

227. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Agya Physical (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

228. Agya Physical and Wei intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

229. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

230. Agya Physical and Wei's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

231. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages.

**TWELFTH CAUSE OF ACTION**
**Against Wei and Agya Physical**
**(Unjust Enrichment)**

232. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

233. As set forth above, Wei and Agya Physical have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

234. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Wei and Agya Physical, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

235. Wei and Agya Physical have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Wei and Agya Physical voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

236. Wei and Agya Physical's retention of sums violates fundamental principles of justice, equity and good conscience.

237. By reason of the above, Wei and Agya Physical have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**THIRTEENTH CAUSE OF ACTION**
**Against Wei and Agya Physical**
**(Declaratory Judgment)**

238. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

239. There is an actual controversy between Petroff Amshen and Wei and Agya Physical regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Wei and Agya Physical in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

240. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

241. Examples of a past check that is subject to the relief sought herein, include, but not limited to a check from Citibank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 766 | 5/31/2017 | $4,423 |
| | | |

242. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Wei and Agya Physical; never communicated with Wei and Agya Physical regarding payment of services, had no knowledge that Wei and Agya Physical were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the check that copy of which is attached as Exhibit D, and Wei and Agya Physical are precluded from engaging in any such acts in the future.

**FOURTEENTH CAUSE OF ACTION**
**Against Yu and Tang**
**(Violation of 18 U.S.C. § 1962(c))**

243. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

244. Assem Physical is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

245. Yu and Tang knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Assem Physical through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

246. Furthermore, Yu and Tang Cheng, knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Assem Physical through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

247. Upon information and belief, the property that Yu and Tang transferred and divided amongst themselves, were proceeds of illegal activity.

248. Upon information and belief, Yu and Tang intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

249. Upon information and belief, Yu and Tang knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Yu and Tang.

250. Upon information and belief, Yu and Tang, knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

251. Assem Physical is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with an address that appears on the checks being 327 99th Street, 2nd Fl, Brooklyn, NY 11209.

252. Copies of the checks used in the scheme by Assem Physical are attached hereto as Exhibit E.

253. As reflected therein, Assem Physical issued checks from a time period spanning from April 2, 2017 through April 5, 2017 totaling $12,969.00. Notably, the memo line of one of the checks state "legal services." Petroff Amshen never provided legal services to Assem Physical.

254. Upon information and belief, 327 99th Street, 2nd Fl, Brooklyn, NY 11209, the address that appears on many of the checks issued by Assem Physical, is the primary residence of Yu.

255. Upon information and belief, 327 99th Street, 2nd Fl, Brooklyn, NY 11209, the address that appears on many of the checks issued by Assem Physical, is the primary residence of Tang.

256. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

257. Upon information and belief, Assem Physical's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money

instruments are the regular way in which Yu and Tang operate Assem Physical, inasmuch as Assem Physical is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Assem Physical to function.

258. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Yu and Tang, upon information and belief, continue to engage in the criminal activity described herein.

259. These inherently unlawful acts are taken by Yu and Tang in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

260. Petroff Amshen has been injured as stated above.

**FIFTEENTH CAUSE OF ACTION**
**Against Yu, Tang and Assem Physical**
**(Common Law Fraud)**

261. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

262. Assem Physical, Yu and Tang intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

263. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Assem Physical (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement

of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

264. Assem Physical, Yu and Tang intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

265. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

266. Assem Physical, Yu and Tang's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

267. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**SIXTEENTH CAUSE OF ACTION**
**Against Yu, Tang and Assem Physical**
**(Unjust Enrichment)**

268. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

269. As set forth above, Yu, Tang and Assem Physical have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

270. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Yu, Tang and Assem Physical as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

271. Yu, Tang and Assem Physical have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Yu, Tang and Assem Physical voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

272. Yu, Tang and Assem Physical ’s retention of sums violates fundamental principles of justice, equity and good conscience.

273. By reason of the above, Yu, Tang and Assem Physical have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**SEVENTEENTH CAUSE OF ACTION**
**Against Yu, Tang and Assem Physical**
**(Declaratory Judgment)**

274. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

275. There is an actual controversy between Petroff Amshen and Yu, Tang and Assem Physical regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen’s reputation as a result of the past and future conduct of Yu, Tang and Assem Physical in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

276. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

277. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from TD Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1003 | 4/2/2017 | $5,400 |
| 1015 | 4/5/2017 | $7,569 |
| | | |
| | | **$12,969** |
| | | |

278. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Yu, Tang and Assem Physical; never communicated with Yu, Tang and Assem Physical regarding payment of services, had no knowledge that Yu, Tang and Assem Physical were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit E and Yu, Tang and Assem Physical are precluded from engaging in any such acts in the future.

**<u>EIGHTEENTH CAUSE OF ACTION</u>**
**Against Defendants Barakat and Fernandez**
**(Violation of 18 U.S.C. § 1962(c))**

279. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

280. Barakat PC is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

281. Barakat and Fernandez knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Barakat PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

282. Furthermore, Barakat and Fernandez knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Barakat PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

283. Upon information and belief, the property that Barakat and Fernandez transferred and divided amongst themselves, were proceeds of illegal activity.

284. Upon information and belief, Barakat and Fernandez intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

285. Upon information and belief, Barakat and Fernandez knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Barakat and Fernandez.

286. Upon information and belief, Barakat and Fernandez knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

287. Barakat PC is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with its address from DOS is 3702 Shore Pkwy, Apt 1, Brooklyn, NY 11235.

288. Barakat PC is owned by Amro Mahmoud Shokry Barakat, who upon information and belief is an individual who is a citizen of the State of New and resides at 717 Southern Blvd, Bronx, New York 10455.

289. Copy of a check used in the scheme by Barakat PC is attached hereto as Exhibit F.

290. As reflected therein, Barakat PC issued a check on June 19, 2017 totaling $4,663.00. Notably, the memo line of the check states "legal services." Petroff Amshen never provided legal services to Barakat PC.

291. Upon information and belief, 3702 Shore Pkwy, Apt 1, Brooklyn, NY 11235 the address of Barakat PC, is the primary residence of Fernandez.

292. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

293. Upon information and belief, Barakat PC's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Barakat and Fernandez operate Barakat PC, inasmuch as Barakat PC is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Barakat PC to function.

294. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Barakat and Fernandez, upon information and belief, continue to engage in the criminal activity described herein.

295. These inherently unlawful acts are taken by Barakat and Fernandez in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

296. Petroff Amshen has been injured as stated above.

**NINETEENTH CAUSE OF ACTION**
**Against Barakat, Fernandez and Barakat PC**
**(Common Law Fraud)**

297. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

298. Barakat, Fernandez and Barakat PC intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

299. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Barakat PC (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

300. Barakat, Fernandez and Barakat PC intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

301. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

302. Barakat, Fernandez and Barakat PC's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

303. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**TWENTIETH CAUSE OF ACTION**
**Against Barakat, Fernandez and Barakat PC**
**(Unjust Enrichment)**

304. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

305. As set forth above, Barakat, Fernandez and Barakat PC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

306. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Barakat, Fernandez and Barakat PC, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

307. Barakat, Fernandez and Barakat PC have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Barakat, Fernandez and Barakat PC voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

308. Barakat, Fernandez and Barakat PC’s retention of sums violates fundamental principles of justice, equity and good conscience.

309. By reason of the above, Barakat, Fernandez and Barakat PC have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**TWENTY-FIRST CAUSE OF ACTION**
**Against Barakat, Fernandez and Barakat PC**
**(Declaratory Judgment)**

310. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

311. There is an actual controversy between Petroff Amshen and Barakat, Fernandez and Barakat PC regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Barakat, Fernandez and Barakat PC in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

312. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

313. Examples of a past check that is subject to the relief sought herein, include, but not limited to a check from TD Bank:

| DATES | AMOUNT |
|---|---|
| | |
| 6/19/2017 | **$4,663** |
| | |

314. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Barakat, Fernandez and Barakat PC; never communicated with Barakat, Fernandez and Barakat PC regarding payment of services, had no knowledge that Barakat, Fernandez and Barakat PC were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit F, and Barakat, Fernandez and Barakat PC are precluded from engaging in any such acts in the future.

**<u>TWENTY-SECOND CAUSE OF ACTION</u>**
**Against Kanduri and Abouhassan**
**(Violation of 18 U.S.C. § 1962(c))**

315. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

316. Wisdom is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

317. Kanduri and Abouhassan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Wisdom through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

318. Furthermore, Kanduri and Abouhassan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Wisdom through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

319. Upon information and belief, the property that Kanduri and Abouhassan transferred and divided amongst themselves, were proceeds of illegal activity.

320. Upon information and belief, Kanduri and Abouhassan intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

321. Upon information and belief, Kanduri and Abouhassan knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Kanduri and Abouhassan.

322. Upon information and belief, Kanduri and Abouhassan knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

323. Wisdom is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with its address at 200 Bay 49th St, Suite 3, Brooklyn, NY 11214.

324. Copies of some of the checks used in the scheme by Wisdom are attached hereto as Exhibit G.

325. As reflected therein, Wisdom issued checks from a time period spanning from November 3, 2016 through November 7, 2018 totaling $49,141. Notably, the memo line of most of the checks state "legal fee." Petroff Amshen never provided legal services to Wisdom. Also, the memo line of a check dated July 14, 2017 states "return check fee" in the amount of $4,300.00.

326. Upon information and belief, 200 Bay 49th St, Suite 3, Brooklyn, NY 11214, the address of Wisdom is also a place in which Kanduri and Abouhassan conducts business.

327. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

328. Upon information and belief, Wisdom's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Kanduri and Abouhassan operate Wisdom, inasmuch as Wisdom is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records

under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Wisdom to function.

329. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Kanduri and Abouhassan, upon information and belief, continue to engage in the criminal activity described herein.

330. These inherently unlawful acts are taken by Kanduri and Abouhassan in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

331. Petroff Amshen has been injured as stated above.

## TWENTY-THIRD CAUSE OF ACTION
**Against Kanduri, Abouhassan and Wisdom**
**(Common Law Fraud)**

332. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

333. Kanduri, Abouhassan and Wisdom intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

334. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Wisdom (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

335. Kanduri, Abouhassan and Wisdom intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

336. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

337. Kanduri, Abouhassan and Wisdom's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

338. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**TWENTY-FOURTH CAUSE OF ACTION**
**Against Kanduri, Abouhassan and Wisdom**
**(Unjust Enrichment)**

339. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

340. As set forth above, Kanduri, Abouhassan and Wisdom have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

341. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Kanduri and Wisdom, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

342. Kanduri, Abouhassan and Wisdom have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Kanduri, Abouhassan and Wisdom

voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

343. Kanduri, Abouhassan and Wisdom's retention of sums violates fundamental principles of justice, equity and good conscience.

344. By reason of the above, Kanduri, Abouhassan and Wisdom have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**TWENTY-FIFTH CAUSE OF ACTION**
**Against Kanduri, Abouhassan and Wisdom**
**(Declaratory Judgment)**

345. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

346. There is an actual controversy between Petroff Amshen and Kanduri, Abouhassan and Wisdom regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Kanduri, Abouhassan and Wisdom in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

347. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

348. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from Bank of America:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1308 | 11/3/2016 | $5,406 |
| 1394 | 7/7/2017 | $4,200 |
| 1398 | 7/14/2017 | $4,300 |
| 1432 | 9/2/2017 | $4,700 |
| 1454 | 9/23/2017 | $8,600 |
| 1458 | 10/11/2017 | $4,200 |
| 1498 | 12/15/2017 | $4,285 |
| 1518 | 1/26/2018 | $4,600 |
| 1619 | 8/16/2018 | $4,850 |
| 1657 | 11/7/2018 | $4,000 |
| | | |
| | | **$49,141** |
| | | |

349. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Kanduri, Abouhassan and Wisdom; never communicated with Kanduri, Abouhassan and Wisdom regarding payment of services, had no knowledge that Kanduri, Abouhassan and Wisdom were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit G, and Kanduri, Abouhassan and Wisdom are precluded from engaging in any such acts in the future.

**TWENTY-SIXTH CAUSE OF ACTION**
**Against Elmandouh**
**(Violation of 18 U.S.C. § 1962(c))**

350. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

351. Radwa PC is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

352. Elmandouh knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Radwa PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

353. Furthermore, Elmandouh knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Radwa PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

354. Upon information and belief, the property that Elmandouh transferred and divided, were proceeds of illegal activity.

355. Upon information and belief, Elmandouh intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

356. Upon information and belief, Elmandouh knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Elmandouh.

357. Upon information and belief, Elmandouh knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

358. Radwa PC is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with its address at 230 Bay 22nd St, Brooklyn, NY 11214.

359. Copies of some of the checks used in the scheme by Radwa PC are attached hereto as Exhibit H.

360. As reflected therein, Radwa PC issued checks from a time period spanning from November 30, 2017 through June 4, 2018 totaling $25,352.00. Notably, the memo line of the checks state "legal fee" or "legal service" or "official legal service." Petroff Amshen never provided legal services to Radwa PC.

361. Upon information and belief, the address of Radwa PC, 230 Bay 22nd St, Brooklyn, NY 11214 is also a place in which Elmandouh resides.

362. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

363. Upon information and belief, Radwa PC's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Elmandouh operates Radwa PC, inasmuch as Radwa PC is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Radwa PC to function.

364. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Elmandouh, upon information and belief, continue to engage in the criminal activity described herein.

365. These inherently unlawful acts are taken by Elmandouh in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

366. Petroff Amshen has been injured as stated above.

**<u>TWENTY-SEVENTH CAUSE OF ACTION</u>**
**Against Elmandouh and Radwa PC**
**(Common Law Fraud)**

367. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

368. Elmandouh and Radwa PC intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

369. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Radwa PC (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

370. Elmandouh and Radwa PC intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

371. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

372. Elmandouh and Radwa PC's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

373. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**TWENTY-EIGHTH CAUSE OF ACTION**
**Against Elmandouh and Radwa PC**
**(Unjust Enrichment)**

374. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

375. As set forth above, Elmandouh and Radwa PC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

376. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Elmandouh and Radwa PC, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

377. Elmandouh and Radwa PC have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Elmandouh and Radwa PC voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

378. Elmandouh and Radwa PC's retention of sums violates fundamental principles of justice, equity and good conscience.

379. By reason of the above, Elmandouh and Radwa PC have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**TWENTY-NINTH CAUSE OF ACTION**
**Against Elmandouh and Radwa PC**
**(Declaratory Judgment)**

380. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

381. There is an actual controversy between Petroff Amshen and Elmandouh and Radwa PC regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Elmandouh and Radwa PC in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

382. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

383. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1342 | 11/30/2017 | $4,350 |
| 1411 | 1/3/2018 | $8,502 |
| 1404 | 2/5/2018 | $8,500 |
| 1474 | 6/4/2018 | $4,000 |
| | | |
| | | **$25,352** |
| | | |

384. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Elmandouh and Radwa PC; never communicated with Elmandouh and Radwa PC regarding payment of services, had no knowledge that Elmandouh and Radwa PC were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent

checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit H, and Elmandouh and Radwa PC are precluded from engaging in any such acts in the future.

**THIRTIETH CAUSE OF ACTION**
**Against Granovsky**
**(Violation of 18 U.S.C. § 1962(c))**

385. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

386. Ultimate is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

387. Granovsky knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Ultimate through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

388. Furthermore, Granovsky knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Ultimate through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

389. Upon information and belief, the property that Granovsky transferred and divided, were proceeds of illegal activity.

390. Upon information and belief, Granovsky intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

391. Upon information and belief, Granovsky knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the

nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Granovsky.

392. Upon information and belief, Granovsky knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

393. Ultimate is a New York entity that appears on checks purportedly issued to Petroff Amshen, with its address at 601 Surf Avenue, #22D, Brooklyn, New York 11224.

394. A copy of a check used in the scheme by Ultimate is attached hereto as Exhibit I.

395. As reflected therein, Ultimate issued a check on July 15, 2017, totaling $3,225.00. Petroff Amshen never provided legal services to Ultimate.

396. Upon information and belief, the address of Ultimate, 601 Surf Avenue, #22D, Brooklyn, New York 11224 is also a place in which Granovsky resides.

397. None of the signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

398. Upon information and belief, Ultimate's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Granovsky operates Ultimate, inasmuch as Ultimate is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Ultimate to function.

399. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Granovsky, upon information and belief, continue to engage in the criminal activity described herein.

400. These inherently unlawful acts are taken by Granovsky in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

401. Petroff Amshen has been injured as stated above.

**<u>THIRTY-FIRST CAUSE OF ACTION</u>**
**Against Granovsky and Ultimate**
**(Common Law Fraud)**

402. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

403. Granovsky and Ultimate intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

404. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Ultimate (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

405. Granovsky and Ultimate intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

406. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

407. Granovsky and Ultimate's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

408. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**THIRTY-SECOND CAUSE OF ACTION**
**Against Granovsky and Ultimate**
**(Unjust Enrichment)**

409. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

410. As set forth above, Granovsky and Ultimate have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

411. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Granovsky and Ultimate, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

412. Granovsky and Ultimate have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Granovsky and Ultimate voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

413. Granovsky and Ultimate's retention of sums violates fundamental principles of justice, equity and good conscience.

414. By reason of the above, Granovsky and Ultimate have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**THIRTY-THIRD CAUSE OF ACTION**
**Against Granovsky and Ultimate**
**(Declaratory Judgment)**

415. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

416. There is an actual controversy between Petroff Amshen and Granovsky and Ultimate regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Granovsky and Ultimate in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

417. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

418. An example of a past check that is subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 533 | 7/15/2017 | **$3,225** |
| | | |

419. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Granovsky and Ultimate; never communicated with Granovsky and Ultimate regarding payment of services, had no knowledge that Granovsky and Ultimate were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are

forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit I, and Granovsky and Ultimate are precluded from engaging in any such acts in the future.

**THIRTY-FOURTH CAUSE OF ACTION**
**Against Granovsky**
**(Violation of 18 U.S.C. § 1962(c))**

420. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

421. Granovsky PC is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

422. Granovsky knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Granovsky PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

423. Furthermore, Granovsky knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Granovsky PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

424. Upon information and belief, the property that Granovsky transferred and divided amongst themselves, were proceeds of illegal activity.

425. Upon information and belief, Granovsky intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

426. Upon information and belief, Granovsky knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the

nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Granovsky.

427. Upon information and belief, Granovsky knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

428. Granovsky PC is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with an address that appears on the checks being 1684 E 18th St, Brooklyn, NY 11229.

429. Copies of the checks used in the scheme by Granovsky PC are attached hereto as Exhibit J.

430. As reflected therein, Granovsky PC issued checks from a time period spanning from July 5, 2017 through July 27, 2018 totaling $6,903.48.

431. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

432. Upon information and belief, Granovsky PC's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Granovsky operate Granovsky PC, inasmuch as Granovsky PC is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Granovsky PC to function.

433. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Granovsky, upon information and belief, continue to engage in the criminal activity described herein.

434. These inherently unlawful acts are taken by Granovsky in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

435. Petroff Amshen has been injured as stated above.

**THIRTY-FIFTH CAUSE OF ACTION**
**Against Granovsky and Granovsky PC**
**(Common Law Fraud)**

436. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

437. Granovsky intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

438. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Granovsky PC (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

439. Granovsky PC and Granovsky intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

440. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

441. Granovsky PC and Granovsky's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

442. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**THIRTY-SIXTH CAUSE OF ACTION**
**Against Granovsky and Granovsky PC**
**(Unjust Enrichment)**

443. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

444. As set forth above, Granovsky and Granovsky PC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

445. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Granovsky and Granovsky PC, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

446. Granovsky and Granovsky PC have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Granovsky and Granovsky PC voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

447. Granovsky and Granovsky PC's retention of sums violates fundamental principles of justice, equity and good conscience.

448. By reason of the above, Granovsky and Granovsky PC have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**THIRTY-SEVENTH CAUSE OF ACTION**
**Against Granovsky and Granovsky PC**
**(Declaratory Judgment)**

449. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

450. There is an actual controversy between Petroff Amshen and Granovsky PC and Granovsky regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Granovsky PC and Granovsky in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

451. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

452. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1036 | 7/5/2017 | $3,052 |
| 1260 | 7/27/2018 | $3,851.48 |
| | | |
| | | **$6,903.48** |
| | | |
| | | |

453. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Granovsky PC and Granovsky; never communicated with Granovsky PC and Granovsky regarding payment of services, had no knowledge that Granovsky PC and Granovsky

were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit J, and Granovsky PC and Granovsky are precluded from engaging in any such acts in the future.

**THIRTY-EIGHTH CAUSE OF ACTION**
**Against Mazza**
**(Violation of 18 U.S.C. § 1962(c))**

454. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

455. Third Avenue is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

456. Mazza knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Third Avenue through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

457. Furthermore, Mazza knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Third Avenue through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

458. Upon information and belief, the property that Mazza transferred and divided, were proceeds of illegal activity.

459. Upon information and belief, Mazza intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

460. Upon information and belief, Mazza knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Mazza.

461. Upon information and belief, Mazza knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

462. Third Avenue is a New York entity that appears on checks purportedly issued to Petroff Amshen, with an address that appears on the check being 465 Elwood Road, East Northport, New York 11731.

463. A copy of a check used in the scheme by Third Avenue is attached hereto as Exhibit K.

464. As reflected therein, Third Avenue issued checks a check on June 5, 2018 totaling $3,635.00. Notably, the memo line of the check states "legal services." Petroff Amshen never provided legal services to Third Avenue.

465. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

466. Upon information and belief, Third Avenue's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Mazza operate Third Avenue, inasmuch as Third Avenue is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations

of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Third Avenue to function.

467. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Mazza, upon information and belief, continue to engage in the criminal activity described herein.

468. These inherently unlawful acts are taken by Mazza in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

469. Petroff Amshen has been injured as stated above.

**THIRTY-NINTH CAUSE OF ACTION**
**Against Mazza and Third Avenue**
**(Common Law Fraud)**

470. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

471. Third Avenue and Mazza intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

472. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Third Avenue (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

473. Mazza and Third Avenue intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

474. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

475. Third Avenue and Mazza's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

476. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**FORTIETH CAUSE OF ACTION**
**Against Mazza and Third Avenue**
**(Unjust Enrichment)**

477. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

478. As set forth above, Mazza and Third Avenue have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

479. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Mazza and Third Avenue, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

480. Mazza and Third Avenue have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Mazza and Third Avenue voluntarily accepted

and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

481. Mazza and Third Avenue's retention of sums violates fundamental principles of justice, equity and good conscience.

482. By reason of the above, Mazza and Third Avenue have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**FORTY-FIRST CAUSE OF ACTION**
**Against Mazza and Third Avenue**
**(Declaratory Judgment)**

483. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

484. There is an actual controversy between Petroff Amshen and Mazza and Third Avenue regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Mazza and Third Avenue in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

485. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

486. Example of a past check that is the subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 3415 | 6/5/2018 | **$3,635** |
| | | |
| | | |

487. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Mazza and Third Avenue; never communicated with Mazza and Third Avenue regarding payment of services, had no knowledge that Mazza and Third Avenue were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit K, and Mazza and Third Avenue are precluded from engaging in any such acts in the future.

**FORTY-SECOND CAUSE OF ACTION**
**Against Madeline**
**(Violation of 18 U.S.C. § 1962(c))**

488. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

489. Therakinematic is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

490. Madeline knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Therakinematic through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

491. Furthermore, Madeline knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Therakinematic through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

492. Upon information and belief, the property that Madeline transferred and divided amongst themselves, were proceeds of illegal activity.

493. Upon information and belief, Madeline intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

494. Upon information and belief, Madeline knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Madeline.

495. Upon information and belief, Madeline knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

496. Copies of checks used in the scheme by Therakinematic is attached hereto as Exhibit L.

497. As reflected therein, Therakinematic issued checks from May 4, 2018 through December 3, 2018 totaling $23,935.00. Notably, the memo line of some of the checks state "legal fee." Petroff Amshen never provided legal services to Therakinematic.

498. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

499. Upon information and belief, Therakinematic's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Madeline operates Therakinematic, inasmuch as Therakinematic is not engaged in any legitimate business, and acts of federal crimes such as mail

fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Therakinematic to function.

500. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Madeline, upon information and belief, continue to engage in the criminal activity described herein.

501. These inherently unlawful acts are taken by Madeline in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

502. Petroff Amshen has been injured as stated above.

**FORTY-THIRD CAUSE OF ACTION**
**Against Madeline and Therakinematic**
**(Common Law Fraud)**

503. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

504. Therakinematic and Madeline intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

505. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Therakinematic (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image

that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

506. Madeline and Therakinematic intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

507. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

508. Therakinematic and Madeline's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

509. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**FORTY-FOURTH CAUSE OF ACTION**
**Against Madeline and Therakinematic**
**(Unjust Enrichment)**

510. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

511. As set forth above, Madeline and Therakinematic have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

512. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Madeline and Therakinematic, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

513. Madeline and Therakinematic have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Madeline and Therakinematic voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

514. Madeline and Therakinematic's retention of sums violates fundamental principles of justice, equity and good conscience.

515. By reason of the above, Madeline and Therakinematic have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**FORTY-FIFTH CAUSE OF ACTION**
**Against Madeline and Therakinematic**
**(Declaratory Judgment)**

516. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

517. There is an actual controversy between Petroff Amshen and Madeline and Therakinematic regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Madeline and Therakinematic in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

518. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

519. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from TD Bank and Capitol One:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 244 | 4/4/2018 | $3,885 |
| 253 | 5/2/2018 | $5,350 |
| 307 | 8/7/2018 | $5,200 |
| 146 | 11/8/2018 | $4,500 |
| 201 | 12/3/2018 | $5,000 |
| | | |
| | | **$23,935** |
| | | |

520. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Madeline and Therakinematic; never communicated with Madeline and Therakinematic regarding payment of services, had no knowledge that Madeline and Therakinematic were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit L, and Madeline and Therakinematic are precluded from engaging in any such acts in the future.

**FORTY-SIXTH CAUSE OF ACTION**
**Against Madeline**
**(Violation of 18 U.S.C. § 1962(c))**

521. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

522. Physio is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

523. Madeline knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Physio through a pattern of racketeering activity consisting of repeated

violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

524. Furthermore, Madeline knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Physio through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

525. Upon information and belief, the property that Madeline transferred and divided were proceeds of illegal activity.

526. Upon information and belief, Madeline intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

527. Upon information and belief, Madeline knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Madeline.

528. Upon information and belief, Madeline knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

529. Copy of a check used in the scheme by Physio is attached hereto as Exhibit M.

530. As reflected therein, Physio issued a check to Petroff Amshen on June 9, 2017, totaling $2,500.00. Notably, the memo line of the check state "legal fee." Petroff Amshen never provided legal services to Physio.

531. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

532. Upon information and belief, Physio's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Madeline operates Physio, inasmuch as Physio is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Physio to function.

533. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Madeline, upon information and belief, continue to engage in the criminal activity described herein.

534. These inherently unlawful acts are taken by Madeline in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

535. Petroff Amshen has been injured as stated above.

**FORTY-SEVENTH CAUSE OF ACTION**
**Against Madeline and Physio**
**(Common Law Fraud)**

536. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

537. Physio and Madeline intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

538. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Physio (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

539. Madeline and Physio intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

540. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

541. Physio and Madeline's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

542. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**FORTY-EIGHTH CAUSE OF ACTION**
**Against Madeline and Physio**
**(Unjust Enrichment)**

543. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

544. As set forth above, Madeline and Physio have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

545. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Madeline and Physio, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

546. Madeline and Physio have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Madeline and Physio voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

547. Madeline and Physio's retention of sums violates fundamental principles of justice, equity and good conscience.

548. By reason of the above, Madeline and Physio have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**FORTY-NINTH CAUSE OF ACTION**
**Against Madeline and Physio**
**(Declaratory Judgment)**

549. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

550. There is an actual controversy between Petroff Amshen and Madeline and Physio regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Madeline and Physio in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

551. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

552. Example of a past check that is the subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1279 | 6/9/2017 | **$2,500** |
| | | |

553. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Madeline and Physio; never communicated with Madeline and Physio regarding payment of services, had no knowledge that Madeline and Physio were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit M, and Madeline and Physio are precluded from engaging in any such acts in the future.

**FIFTIETH CAUSE OF ACTION**
**Against Madeline**
**(Violation of 18 U.S.C. § 1962(c))**

554. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

555. Rehab is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

556. Madeline knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Rehab through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

557. Furthermore, Madeline knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Rehab through a pattern of racketeering activity

consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

558. Upon information and belief, the property that Madeline transferred and divided were proceeds of illegal activity.

559. Upon information and belief, Madeline intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

560. Upon information and belief, Madeline knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Madeline.

561. Upon information and belief, Madeline knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

562. Copies of checks used in the scheme by Rehab is attached hereto as Exhibit N.

563. As reflected therein, Rehab issued checks to Petroff Amshen from July 3, 2018 through November 10, 2018 totaling $13,278.00. Notably, the memo line of the check state "legal fee." Petroff Amshen never provided legal services to Rehab.

564. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

565. Upon information and belief, Rehab's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Madeline operates Rehab, inasmuch as Rehab is not

engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Rehab to function.

566. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Madeline, upon information and belief, continue to engage in the criminal activity described herein.

567. These inherently unlawful acts are taken by Madeline in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

568. Petroff Amshen has been injured as stated above.

**FIFTY-FIRST CAUSE OF ACTION**
**Against Madeline and Rehab**
**(Common Law Fraud)**

569. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

570. Rehab and Madeline intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

571. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Rehab (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff

Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

572. Madeline and Rehab intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

573. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

574. Rehab and Madeline's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

575. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**FIFTY-SECOND CAUSE OF ACTION**
**Against Madeline and Rehab**
**(Unjust Enrichment)**

576. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

577. As set forth above, Madeline and Rehab have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

578. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Madeline and Rehab, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

579. Madeline and Rehab have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Madeline and Rehab voluntarily accepted and

distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

580. Madeline and Rehab's retention of sums violates fundamental principles of justice, equity and good conscience.

581. By reason of the above, Madeline and Rehab have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**FIFTY-THIRD CAUSE OF ACTION**
**Against Madeline and Rehab**
**(Declaratory Judgment)**

582. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

583. There is an actual controversy between Petroff Amshen and Madeline and Rehab regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Madeline and Rehab in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

584. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

585. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from TD Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 156 | 7/3/2018 | $4,500 |
| 130 | 9/2/2018 | $5,500 |
| 142 | 11/10/2018 | $3,278 |
| | | |
| | | **$13,278** |
| | | |
| | | |
| | | |

586. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Madeline and Rehab; never communicated with Madeline and Rehab regarding payment of services, had no knowledge that Madeline and Rehab were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit N, and Madeline and Rehab are precluded from engaging in any such acts in the future.

**FIFTY-FOURTH CAUSE OF ACTION**
**Against Sayed**
**(Violation of 18 U.S.C. § 1962(c))**

587. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

588. Significant is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

589. Sayed knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Significant through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

590. Furthermore, Sayed knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Significant through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

591. Upon information and belief, the property that Sayed transferred and divided amongst themselves, were proceeds of illegal activity.

592. Upon information and belief, Sayed intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

593. Upon information and belief, Sayed knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Sayed.

594. Upon information and belief, Sayed knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

595. Copies of checks used in the scheme by Significant is attached hereto as Exhibit O.

596. As reflected therein, Significant issued checks to Petroff Amshen from June 1, 2018 through July 2, 2018 totaling $12,00.00. Notably, the memo line of the check state "legal fee." Petroff Amshen never provided legal services to Significant.

597. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

598. Upon information and belief, Significant's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Sayed operates Significant, inasmuch as Significant is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New

York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Significant to function.

599. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Sayed, upon information and belief, continue to engage in the criminal activity described herein.

600. These inherently unlawful acts are taken by Sayed in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

601. Petroff Amshen has been injured as stated above.

**FIFTY-FIFTH CAUSE OF ACTION**
**Against Sayed and Significant**
**(Common Law Fraud)**

602. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

603. Significant and Sayed intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

604. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Significant (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

605. Sayed and Significant intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

606. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

607. Significant and Sayed's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

608. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**FIFTY-SIXTH CAUSE OF ACTION**
**Against Sayed and Significant**
**(Unjust Enrichment)**

609. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

610. As set forth above, Sayed and Significant have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

611. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Sayed and Significant, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

612. Sayed and Significant have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Sayed and Significant voluntarily accepted

and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**FIFTY-SEVENTH CAUSE OF ACTION**
**Against Sayed and Significant**
**(Declaratory Judgment)**

613. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

614. There is an actual controversy between Petroff Amshen and Sayed and Significant regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Sayed and Significant in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

615. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

616. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1281 | 6/1/2018 | $6,750 |
| 1296 | 7/2/2018 | $5,250 |
| | | |
| | | **$12,000** |
| | | |

617. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Sayed and Significant; never communicated with Sayed and Significant regarding payment of services, had no knowledge that Sayed and Significant were using its name to launder

money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit O and Sayed and Significant are precluded from engaging in any such acts in the future.

**FIFTY-EIGHTH CAUSE OF ACTION**
**Against Cayetuna**
**(Violation of 18 U.S.C. § 1962(c))**

618. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

619. NBC is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

620. Cayetuna knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of NBC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

621. Furthermore, Cayetuna knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of NBC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

622. Upon information and belief, the property that Cayetuna transferred and divided were proceeds of illegal activity.

623. Upon information and belief, Cayetuna intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

624. Upon information and belief, Cayetuna knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the

nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Cayetuna.

625. Upon information and belief, Cayetuna knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

626. Copies of checks used in the scheme by NBC are attached hereto as Exhibit P.

627. As reflected therein, NBC issued checks to Petroff Amshen from September 5, 2018 through December 3, 2018 totaling $11,92.00. Notably, the memo line of the check state "legal fee." Petroff Amshen never provided legal services to NBC.

628. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

629. Upon information and belief, NBC's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Cayetuna operates NBC, inasmuch as NBC is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for NBC to function.

630. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of

continued criminal activity, as does the fact that Cayetuna, upon information and belief, continue to engage in the criminal activity described herein.

631. These inherently unlawful acts are taken by Cayetuna in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

632. Petroff Amshen has been injured as stated above.

**FIFTY-NINTH CAUSE OF ACTION**
**Against Cayetuna and NBC**
**(Common Law Fraud)**

633. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

634. NBC and Cayetuna intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

635. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the NBC (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

636. Cayetuna and NBC intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

637. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

638. NBC and Cayetuna's extensive fraudulent conduct demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

639. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**SIXTIETH CAUSE OF ACTION**
**Against Cayetuna and NBC**
**(Unjust Enrichment)**

640. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

641. As set forth above, Cayetuna and NBC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

642. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Cayetuna and NBC, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

643. Cayetuna and NBC have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Cayetuna and NBC voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**SIXTY-FIRST CAUSE OF ACTION**
**Against Cayetuna and NBC**
**(Declaratory Judgment)**

644. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

645. There is an actual controversy between Petroff Amshen and Cayetuna and NBC regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Cayetuna and NBC in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

646. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

647. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from Bank of America:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 130 | 9/5/2018 | $6,000 |
| 168 | 10/30/2018 | $5,925 |
| | | |
| | | **$11,925** |
| | | |

648. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Cayetuna and NBC; never communicated with Cayetuna and NBC regarding payment of services, had no knowledge that Cayetuna and NBC were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit P and Cayetuna and NBC are precluded from engaging in any such acts in the future.

**SIXTY-SECOND CAUSE OF ACTION**
**Against Bekhet**
**(Violation of 18 U.S.C. § 1962(c))**

649. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

650. Lite is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

651. Bekhet knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Lite through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

652. Furthermore, Bekhet knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Lite through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

653. Upon information and belief, the property that Bekhet transferred and divided were proceeds of illegal activity.

654. Upon information and belief, Bekhet intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

655. Upon information and belief, Bekhet knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Bekhet.

656. Upon information and belief, Bekhet knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

657. Copies of checks used in the scheme by Lite are attached hereto as Exhibit Q.

658. As reflected therein, Lite issued checks to Petroff Amshen on August 7, 2018 and November 9, 2018 totaling $7,500.00. Notably, the memo line of the check state "legal fee." Petroff Amshen never provided legal services to Lite.

659. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

660. Upon information and belief, Lite's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Bekhet operates Lite, inasmuch as Lite is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Lite to function.

661. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Bekhet, upon information and belief, continue to engage in the criminal activity described herein.

662. These inherently unlawful acts are taken by Bekhet in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

663. Petroff Amshen has been injured as stated above.

**SIXTY-THIRD CAUSE OF ACTION**
**Against Bekhet and Lite**
**(Common Law Fraud)**

664. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

665. Lite and Bekhet intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

666. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Lite (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

667. Bekhet and Lite intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

668. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

669. Lite and Bekhet's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

670. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**SIXTY-FOURTH CAUSE OF ACTION**
**Against Bekhet and Lite**
**(Unjust Enrichment)**

671. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

672. As set forth above, Bekhet and Lite have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

673. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Bekhet and Lite, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

674. Bekhet and Lite have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Bekhet and Lite voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**SIXTY-FIFTH CAUSE OF ACTION**
**Against Bekhet and Lite**
**(Declaratory Judgment)**

675. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

676. There is an actual controversy between Petroff Amshen and Bekhet and Lite regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen’s reputation as a result of the past and future conduct of Bekhet and Lite in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

677. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

678. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1659 | 8/7/2018 | $4,000 |
| 2008 | 11/9/2018 | $3,500 |
| | | |
| | | **$7,500** |
| | | |

679. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Bekhet and Lite; never communicated with Bekhet and Lite regarding payment of services, had no knowledge that Bekhet and Lite were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit Q, and Bekhet and Lite are precluded from engaging in any such acts in the future.

**SIXTY-SIXTH CAUSE OF ACTION**
**Against Sayed**
**(Violation of 18 U.S.C. § 1962(c))**

680. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

681. Extensive is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

682. Sayed knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Extensive through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

683. Furthermore, Sayed knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Extensive through a pattern of racketeering activity

consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

684. Upon information and belief, the property that Sayed transferred and divided, were proceeds of illegal activity.

685. Upon information and belief, Sayed intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

686. Upon information and belief, Sayed knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Sayed.

687. Upon information and belief, Sayed knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

688. A copy of a check used in the scheme by Extensive is attached hereto as Exhibit R.

689. As reflected therein, Extensive issued a check to Petroff Amshen on May 31, 2018 totaling $4,500.00.

690. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

691. Upon information and belief, Extensive's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Sayed operates Extensive, inasmuch as Extensive is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud,

laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Extensive to function.

692. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Sayed, upon information and belief, continue to engage in the criminal activity described herein.

693. These inherently unlawful acts are taken by Sayed in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

694. Petroff Amshen has been injured as stated above.

**SIXTY-SEVENTH CAUSE OF ACTION**
**Against Sayed and Extensive**
**(Common Law Fraud)**

695. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

696. Extensive and Sayed intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

697. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Extensive (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that

Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

698. Sayed and Extensive intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

699. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

700. Extensive and Sayed's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

701. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**SIXTY-EIGHTH CAUSE OF ACTION**
**Against Sayed and Extensive**
**(Unjust Enrichment)**

702. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

703. As set forth above, Sayed and Extensive have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

704. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Sayed and Extensive, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

705. Sayed and Extensive have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Sayed and Extensive voluntarily accepted

and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**SIXTY-NINTH CAUSE OF ACTION**
**Against Sayed and Extensive**
**(Declaratory Judgment)**

706. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

707. There is an actual controversy between Petroff Amshen and Sayed and Extensive regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Sayed and Extensive in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

708. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

709. Example of a past checks that are subject to the relief sought herein, include, but not limited to a check from Bank of America:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1558 | 5/31/2018 | $4,500 |
| | | |

710. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Sayed and Extensive; never communicated with Sayed and Extensive regarding payment of services, had no knowledge that Sayed and Extensive were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are

forgeries, including, but not limited to, the check that copies of which is attached as Exhibit R, Sayed and Extensive are precluded from engaging in any such acts in the future.

**SEVENTIETH CAUSE OF ACTION**
**Against Meyerzon**
**(Violation of 18 U.S.C. § 1962(c))**

711. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

712. Danimark is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

713. Meyerzon knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Danimark through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

714. Furthermore, Meyerzon knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Danimark through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

715. Upon information and belief, the property that Meyerzon transferred and divided were proceeds of illegal activity.

716. Upon information and belief, Meyerzon intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

717. Upon information and belief, Meyerzon knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the

nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Meyerzon.

718. Upon information and belief, Meyerzon knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

719. Copies of checks used in the scheme by Danimark is attached hereto as Exhibit S.

720. As reflected therein, Danimark issued a check to Petroff Amshen on July 25, 2018 and November 2, 2018 totaling $11,000.00.

721. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

722. Upon information and belief, Danimark's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Meyerzon operates Danimark, inasmuch as Danimark is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Danimark to function.

723. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Meyerzon, upon information and belief, continue to engage in the criminal activity described herein.

724. These inherently unlawful acts are taken by Meyerzon in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

725. Petroff Amshen has been injured as stated above.

**SEVENTY-FIRST CAUSE OF ACTION**
**Against Meyerzon and Danimark**
**(Common Law Fraud)**

726. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

727. Danimark and Meyerzon intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

728. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Danimark (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

729. Meyerzon and Danimark intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

730. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

731. Danimark and Meyerzon's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

732. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**SEVENTY-SECOND CAUSE OF ACTION**
**Against Meyerzon and Danimark**
**(Unjust Enrichment)**

733. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

734. As set forth above, Meyerzon and Danimark have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

735. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Meyerzon and Danimark, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

736. Meyerzon and Danimark have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Meyerzon and Danimark voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**SEVENTY-THIRD CAUSE OF ACTION**
**Against Meyerzon and Danimark**
**(Declaratory Judgment)**

737. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

738. There is an actual controversy between Petroff Amshen and Meyerzon and Danimark regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Meyerzon and Danimark in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

739. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

740. Example of a past checks that is subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 66 | 7/25/2018 | $7,600 |
| 119 | 11/2/2018 | $3,400 |
| | | |
| | | **$11,000** |
| | | |

741. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Meyerzon and Danimark; never communicated with Meyerzon and Danimark regarding payment of services, had no knowledge that Meyerzon and Danimark were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit S, Meyerzon and Danimark are precluded from engaging in any such acts in the future.

**SEVENTY-FOURTH CAUSE OF ACTION**
**Against Shamalov**
**(Violation of 18 U.S.C. § 1962(c))**

742. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

743. DJ is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

744. Shamalov knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of DJ through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

745. Furthermore, Shamalov knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of DJ through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

746. Upon information and belief, the property that Shamalov transferred and divided were proceeds of illegal activity.

747. Upon information and belief, Shamalov intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

748. Upon information and belief, Shamalov knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Shamalov.

749. Upon information and belief, Shamalov knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

750. Copies of checks used in the scheme by DJ are attached hereto as Exhibit T.

751. As reflected therein, DJ issued a check to Petroff Amshen from December 14, 2017 through May 24, 2018 totaling $26,345.74.

752. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

753. Upon information and belief, DJ's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Shamalov operates DJ, inasmuch as DJ is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for DJ to function.

754. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Shamalov, upon information and belief, continue to engage in the criminal activity described herein.

755. These inherently unlawful acts are taken by Shamalov in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

756. Petroff Amshen has been injured as stated above.

**SEVENTY-FIFTH CAUSE OF ACTION**
**Against Shamalov and DJ**
**(Common Law Fraud)**

757. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

758. DJ and Shamalov intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

759. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the DJ (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

760. Shamalov and DJ intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

761. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

762. DJ and Shamalov's extensive fraudulent conduct demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

763. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**SEVENTY-SIXTH CAUSE OF ACTION**
**Against Shamalov and DJ**
**(Unjust Enrichment)**

764. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

765. As set forth above, Shamalov and DJ have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

766. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Shamalov and DJ, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

767. Shamalov and DJ have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Shamalov and DJ voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**SEVENTY-SEVENTH CAUSE OF ACTION**
**Against Shamalov and DJ**
**(Declaratory Judgment)**

768. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

769. There is an actual controversy between Petroff Amshen and Shamalov and DJ regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Shamalov and DJ in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

770. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

771. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from Wells Fargo:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 2356 | 10/14/2017 | $8,451 |
| 4609 | 5/21/2018 | $9,747.07 |
| 4564 | 5/24/2018 | $8,147.67 |
| | | |
| | | |

772. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Shamalov and DJ; never communicated with Shamalov and DJ regarding payment of services, had no knowledge that Shamalov and DJ were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit T, Shamalov and DJ are precluded from engaging in any such acts in the future.

**<u>SEVENTY-EIGHTH CAUSE OF ACTION</u>**
**Against Shamalov**
**(Violation of 18 U.S.C. § 1962(c))**

773. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

774. River is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

775. Shamalov knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of River through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

776. Furthermore, Shamalov knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of River through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

777. Upon information and belief, the property that Shamalov transferred and divided amongst themselves, were proceeds of illegal activity.

778. Upon information and belief, Shamalov intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

779. Upon information and belief, Shamalov knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Shamalov.

780. Upon information and belief, Shamalov knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

781. A copy of a check used in the scheme by River is attached hereto as Exhibit U.

782. As reflected therein, River issued a check to Petroff Amshen on April 20, 2018 totaling $6,824.24.

783. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

784. Upon information and belief, River's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Shamalov operates River, inasmuch as River is not engaged in any legitimate

business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for River to function.

785. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Shamalov, upon information and belief, continue to engage in the criminal activity described herein.

786. These inherently unlawful acts are taken by Shamalov in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

787. Petroff Amshen has been injured as stated above.

**SEVENTY-NINTH CAUSE OF ACTION**
**Against Shamalov and River**
**(Common Law Fraud)**

788. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

789. River and Shamalov intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

790. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the River (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff

Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

791. Shamalov and River intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

792. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

793. River and Shamalov's extensive fraudulent conduct demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

794. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**EIGHTIETH CAUSE OF ACTION**
**Against Shamalov and River**
**(Unjust Enrichment)**

795. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

796. As set forth above, Shamalov and River have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

797. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Shamalov and River, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

798. Shamalov and River have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Shamalov and River voluntarily accepted and

distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**EIGHTY-FIRST CAUSE OF ACTION**
**Against Shamalov and River**
**(Declaratory Judgment)**

799. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

800. There is an actual controversy between Petroff Amshen and Shamalov and River regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Shamalov and River in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

801. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

802. Example of a past check that is subject to the relief sought herein, include, but not limited to a check from Wells Fargo:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 8118 | 4/20/2018 | **$6,824.24** |
| | | |

803. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Shamalov and River; never communicated with Shamalov and River regarding payment of services, had no knowledge that Shamalov and River were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are

forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit U, Shamalov and River are precluded from engaging in any such acts in the future.

**<u>EIGHTY-SECOND CAUSE OF ACTION</u>**
**Against Magid**
**(Violation of 18 U.S.C. § 1962(c))**

804. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

805. MMA is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

806. Magid knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of MMA through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

807. Furthermore, Magid knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of MMA through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

808. Upon information and belief, the property that Magid transferred and divided, were proceeds of illegal activity.

809. Upon information and belief, Magid intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

810. Upon information and belief, Magid knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature,

the location, the source, the ownership, and the control of the proceeds of unlawful activity of Magid.

811. Upon information and belief, Magid knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

812. A copy of a check used in the scheme by MMA is attached hereto as Exhibit V.

813. As reflected therein, MMA issued a check to Petroff Amshen on July 11, 2018 totaling $2,700.00.

814. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

815. Upon information and belief, MMA's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Magid operates MMA, inasmuch as MMA is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for MMA to function.

816. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Magid, upon information and belief, continue to engage in the criminal activity described herein.

817. These inherently unlawful acts are taken by Magid in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

818. Petroff Amshen has been injured as stated above.

**EIGHTY-THIRD CAUSE OF ACTION**
**Against Magid and MMA**
**(Common Law Fraud)**

819. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

820. MMA and Magid intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

821. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the MMA (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

822. Magid and MMA intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

823. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

824. MMA and Magid's extensive fraudulent conduct demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

825. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**EIGHTY-FOURTH CAUSE OF ACTION**
**Against Magid and MMA**
**(Unjust Enrichment)**

826. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

827. As set forth above, Magid and MMA have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

828. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Magid and MMA, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

829. Magid and MMA have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Magid and MMA voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**EIGHTY-SEVENTH CAUSE OF ACTION**
**Against Magid and MMA**
**(Declaratory Judgment)**

830. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

831. There is an actual controversy between Petroff Amshen and Magid and MMA regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff

Amshen's reputation as a result of the past and future conduct of Magid and MMA in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

832. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

833. Example of a past check that is subject to the relief sought herein, include, but not limited to a check from TD Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1052 | 7/11/2018 | **$2,700** |
| | | |

834. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Magid and MMA; never communicated with Magid and MMA regarding payment of services, had no knowledge that Magid and MMA were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit V, Magid and MMA are precluded from engaging in any such acts in the future.

**EIGHTY-FIFTH CAUSE OF ACTION**
**Against Singh and Kaur**
**(Violation of 18 U.S.C. § 1962(c))**

835. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

836. JMP is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

837. Singh and Kaur knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of JMP through a pattern of racketeering activity consisting of repeated

violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

838. Furthermore, Singh and Kaur knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of JMP through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

839. Upon information and belief, the property that Singh and Kaur transferred and divided amongst themselves, were proceeds of illegal activity.

840. Upon information and belief, Singh and Kaur intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

841. Upon information and belief, Singh and Kaur knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Singh and Kaur.

842. Upon information and belief, Singh and Kaur knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

843. A copy of a check used in the scheme by JMP is attached hereto as Exhibit W.

844. As reflected therein, JMP issued a check to Petroff Amshen on December 30, 2018 totaling $4,120.00.

845. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

846. Upon information and belief, JMP's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Singh and Kaur operate JMP, inasmuch as JMP is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for JMP to function.

847. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Singh and Kaur, upon information and belief, continue to engage in the criminal activity described herein.

848. These inherently unlawful acts are taken by Singh and Kaur in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

849. Petroff Amshen has been injured as stated above.

**EIGHTY-SIXTH CAUSE OF ACTION**
**Against Singh, Kaur and JMP**
**(Common Law Fraud)**

850. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

851. JMP and Singh and Kaur intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

852. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the JMP (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

853. Singh and Kaur and JMP intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

854. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

855. Singh, Kaur and JMP's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

856. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**EIGHTY-EIGHTH CAUSE OF ACTION**
**Against Singh, Kaur and JMP**
**(Unjust Enrichment)**

857. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

858. As set forth above, Sing, Kaur and JMP have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

859. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Singh, Kaur and JMP, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

860. Singh, Kaur and JMP have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Singh, Kaur and JMP voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**EIGHTY-NINTH CAUSE OF ACTION**
**Against Singh, Kaur and JMP**
**(Declaratory Judgment)**

861. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

862. There is an actual controversy between Petroff Amshen and JMP and Singh and Kaur regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of JMP and Singh and Kaur in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

863. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

864. Example of a past check that is subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 582 | 10/30/2018 | **$4,120** |
| | | |

865. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to JMP and Singh and Kaur; never communicated with JMP and Singh and Kaur regarding payment of services, had no knowledge that JMP and Singh and Kaur were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit W, and Singh and Kaur are precluded from engaging in any such acts in the future.

**NINETIETH CAUSE OF ACTION**
**Against Kessler**
**(Violation of 18 U.S.C. § 1962(c))**

866. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

867. Hillside is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

868. Kessler knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Hillside through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

869. Furthermore, Kessler knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Hillside through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

870. Upon information and belief, the property that Kessler transferred and divided were proceeds of illegal activity.

871. Upon information and belief, Kessler intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

872. Upon information and belief, Kessler knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Kessler.

873. Upon information and belief, Kessler knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

874. Copies of checks used in the scheme by Hillside is attached hereto as Exhibit X.

875. As reflected therein, Hillside issued checks to Petroff Amshen on July 12, 2018 and December 17, 2018 totaling $7,214.00. The addresses on the checks as reflected therein, are 185 Marcy Avenue, Brooklyn, New York 11211 and 230 Broadway, Hillside, New Jersey 07642.

876. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

877. Upon information and belief, Hillside's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Kessler operates Hillside, inasmuch as Hillside is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New

York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Hillside to function.

878. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Kessler, upon information and belief, continue to engage in the criminal activity described herein.

879. These inherently unlawful acts are taken by Kessler in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

880. Petroff Amshen has been injured as stated above.

**NINETY-FIRST CAUSE OF ACTION**
**Against Kessler and Hillside**
**(Common Law Fraud)**

881. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

882. Hillside and Kessler intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

883. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Hillside (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

884. Kessler and Hillside intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

885. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

886. Hillside and Kessler's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

887. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**NINETY-SECOND CAUSE OF ACTION**
**Against Kessler and Hillside**
**(Unjust Enrichment)**

888. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

889. As set forth above, Kessler and Hillside have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

890. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Kessler and Hillside, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

891. Kessler and Hillside have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Kessler and Hillside voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**NINETY-THIRD CAUSE OF ACTION**
**Against Kessler and Hillside**
**(Declaratory Judgment)**

892. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

893. There is an actual controversy between Petroff Amshen and Kessler and Hillside regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Kessler and Hillside in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

894. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

895. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from Capitol One:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 5524 | 7/12/2018 | $ 3,538.00 |
| 5548 | 12/17/2018 | $ 3,676.00 |
| | | |
| | | **$7,214** |
| | | |
| | | |

896. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Kessler and Hillside; never communicated with Kessler and Hillside regarding payment of services, had no knowledge that Kessler and Hillside were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including,

but not limited to, the checks that copies of which are attached as Exhibit X and Kessler and Hillside are precluded from engaging in any such acts in the future.

**NINETY-FOURTH CAUSE OF ACTION**
**Against Abourya**
**(Violation of 18 U.S.C. § 1962(c))**

897. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

898. First Hand is an ongoing “enterprise” as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

899. Abourya knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of First Hand through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

900. Furthermore, Abourya knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of First Hand through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

901. Upon information and belief, the property that Abourya transferred and divided amongst themselves, were proceeds of illegal activity.

902. Upon information and belief, Abourya intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

903. Upon information and belief, Abourya knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the

nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Abourya.

904. Upon information and belief, Abourya knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

905. Copies of checks used in the scheme by First Hand, attached hereto as Exhibit Y.

906. As reflected therein, First Hand issued checks to Petroff Amshen from April 4, 2017 through September 6, 2018 totaling $15,298.00. The addresses on the checks as reflected therein, are 2625 Atlantic Avenue, Brooklyn, New York 11207 and 35 Starlight Road, Staten Island, New York 10301.

907. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

908. Upon information and belief, First Hand's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Abourya operates First Hand, inasmuch as First Hand is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for First Hand to function.

909. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of

continued criminal activity, as does the fact that Abourya, upon information and belief, continue to engage in the criminal activity described herein.

910. These inherently unlawful acts are taken by Abourya in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

911. Petroff Amshen has been injured as stated above.

**NINETY-FIFTH CAUSE OF ACTION**
**Against Abourya and First Hand**
**(Common Law Fraud)**

912. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

913. First Hand and Abourya intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

914. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the First Hand (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

915. Abourya and First Hand intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

916. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

917. First Hand and Abourya's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

918. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**NINETY-SIXTH CAUSE OF ACTION**
**Against Abourya and First Hand**
**(Unjust Enrichment)**

919. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

920. As set forth above, Abourya and First Hand have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

921. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Abourya and First Hand, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

922. Abourya and First Hand have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Abourya and First Hand voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**NINETY-SEVENTH CAUSE OF ACTION**
**Against Abourya and First Hand**
**(Declaratory Judgment)**

923. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

924. There is an actual controversy between Petroff Amshen and Abourya and First Hand regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Abourya and First Hand in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

925. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

926. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 116 | 4/4/2017 | $4,735 |
| 368 | 7/14/2018 | $3,000 |
| 98 | 8/6/2018 | $4,000 |
| 2103 | 9/6/2018 | $3,563 |
| | | |
| | | **$15,298** |
| | | |

927. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Abourya and First Hand; never communicated with Abourya and First Hand regarding payment of services, had no knowledge that Abourya and First Hand were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit Y and Abourya and First Hand are precluded from engaging in any such acts in the future.

**NINETY-EIGHTH CAUSE OF ACTION**
**Against Devan**
**(Violation of 18 U.S.C. § 1962(c))**

928. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

929. Acupuncture is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

930. Devan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Acupuncture through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

931. Furthermore, Devan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Acupuncture through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

932. Upon information and belief, the property that Devan transferred and divided amongst themselves, were proceeds of illegal activity.

933. Upon information and belief, Devan intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

934. Upon information and belief, Devan knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Devan.

935. Upon information and belief, Devan knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

936. Copies of checks used in the scheme by Acupuncture is attached hereto as Exhibit Z.

937. As reflected therein, Acupuncture issued checks to Petroff Amshen from December 1, 2017 through July 18, 2018 totaling $7,976.94. The address on the checks as reflected therein is 1516 Dutch Broadway, Elmont, New York 11003.

938. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

939. Upon information and belief, Acupuncture's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Devan operates Acupuncture, inasmuch as Acupuncture is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Acupuncture to function.

940. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Devan, upon information and belief, continue to engage in the criminal activity described herein.

941. These inherently unlawful acts are taken by Devan in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

942. Petroff Amshen has been injured as stated above.

**NINETY-NINTH CAUSE OF ACTION**
**Against Devan and Acupuncture**
**(Common Law Fraud)**

943. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

944. Acupuncture and Devan intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

945. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Acupuncture (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

946. Devan and Acupuncture intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

947. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

948. Acupuncture and Devan's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

949. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDREDTH CAUSE OF ACTION**
**Against Devan and Acupuncture**
**(Unjust Enrichment)**

950. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

951. As set forth above, Devan and Acupuncture have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

952. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Devan and Acupuncture, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

953. Devan and Acupuncture have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Devan and Acupuncture voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND FIRST CAUSE OF ACTION**
**Against Devan and Acupuncture**
**(Declaratory Judgment)**

954. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

955. There is an actual controversy between Petroff Amshen and Devan and Acupuncture regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Devan and Acupuncture in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

956. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

957. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from Santander:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 2032 | 7/14/2017 | $7,500 |
| 106 | 12/15/2017 | $6,800 |
| 144 | 2/22/2018 | $5,200 |
| 159 | 3/8/2018 | $7,500 |
| 193 | 4/11/2018 | $7,500 |
| 221 | 5/7/2018 | $7,300 |
| | | |
| | | **$48,600** |
| | | |

958. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Devan and Acupuncture; never communicated with Devan and Acupuncture regarding payment of services, had no knowledge that Devan and Acupuncture were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit Z and Devan and Acupuncture are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND SECOND CAUSE OF ACTION**
**Against Nasr**
**(Violation of 18 U.S.C. § 1962(c))**

959. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

960. Core is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

961. Nasr knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Core through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

962. Furthermore, Nasr knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Core through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

963. Upon information and belief, the property that Nasr transferred and divided amongst themselves, were proceeds of illegal activity.

964. Upon information and belief, Nasr intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

965. Upon information and belief, Nasr knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Nasr.

966. Upon information and belief, Nasr knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

967. A copy of a check used in the scheme by Core is attached hereto as Exhibit AA.

968. As reflected therein, Core issued a check to Petroff Amshen on August 7, 2018 totaling $7,976.94.

969. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

970. Upon information and belief, Core's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Nasr operates Core, inasmuch as Core is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Core to function.

971. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Nasr, upon information and belief, continue to engage in the criminal activity described herein.

972. These inherently unlawful acts are taken by Nasr in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

973. Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND THIRD CAUSE OF ACTION**
**Against Nasr and Core**
**(Common Law Fraud)**

974. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

975. Core and Nasr intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

976. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Core (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

977. Nasr and Core intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

978. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

979. Core and Nasr's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

980. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND FOURTH CAUSE OF ACTION**
**Against Nasr and Core**
**(Unjust Enrichment)**

981. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

982. As set forth above, Nasr and Core have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

983. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Nasr and Core, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

984. Nasr and Core have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Nar and Core voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND FIFTH CAUSE OF ACTION**
**Against Nasr and Core**
**(Declaratory Judgment)**

985. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

986. There is an actual controversy between Petroff Amshen and Nasr and Core regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Nasr and Core in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

987. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

988. Example of a past check that is the subject to the relief sought herein, include, but not limited to a check from Bank of America:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1036 | 8/7/2018 | $7,032 |
| | | |

989. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Nasr and Core; never communicated with Nasr and Core regarding payment of services, had no knowledge that Nasr and Core were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit AA, and Nasr and Core are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND SIXTH CAUSE OF ACTION**
**Against Ilyabayev**
**(Violation of 18 U.S.C. § 1962(c))**

990. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

991. Wellness is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

992. Ilyabayev knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Wellness through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

993. Furthermore, Ilyabayev knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Wellness through a pattern of racketeering activity

consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

994. Upon information and belief, the property that Ilyabayev transferred and divided were proceeds of illegal activity.

995. Upon information and belief, Ilyabayev intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

996. Upon information and belief, Ilyabayev knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Ilyabayev.

997. Upon information and belief, Ilyabayev knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

998. A Copy of a checks used in the scheme by Wellness is attached hereto as Exhibit BB.

999. As reflected therein, Wellness issued checks to Petroff Amshen on September 25, 2017 and October 25, 2017 totaling $15,500.00.

1000. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1001. Upon information and belief, Wellness's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Ilyabayev operates Wellness, inasmuch as Wellness is

not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Wellness to function.

1002. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Ilyabayev, upon information and belief, continue to engage in the criminal activity described herein.

1003. These inherently unlawful acts are taken by Ilyabayev in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1004. Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND SEVENTH CAUSE OF ACTION**
**Against Ilyabayev and Wellness**
**(Common Law Fraud)**

1005. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1006. Wellness and Ilyabayev intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1007. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Wellness (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that

Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1008. Ilyabayev and Wellness intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1009. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1010. Wellness and Ilyabayev's extensive fraudulent conduct demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1011. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND EIGHTH CAUSE OF ACTION**
**Against Ilyabayev and Wellness**
**(Unjust Enrichment)**

1012. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1013. As set forth above, Ilyabayev and Wellness have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1014. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Ilyabayev and Wellness, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1015. Ilyabayev and Wellness have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Ilyabayev and Wellness voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND NINENTH CAUSE OF ACTION**
**Against Ilyabayev and Wellness**
**(Declaratory Judgment)**

1016. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1017. There is an actual controversy between Petroff Amshen and Ilyabayev and Wellness regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Ilyabayev and Wellness in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1018. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1019. Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 304 | 9/25/2017 | $7,500 |
| 306 | 10/25/2017 | $8,500 |
| | | |

1020. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Ilyabayev and Wellness; never communicated with Ilyabayev and Wellness regarding

payment of services, had no knowledge that Ilyabayev and Wellness were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit CC, Ilyabayev and Wellness are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND TENTH CAUSE OF ACTION**
**Against Manuel**
**(Violation of 18 U.S.C. § 1962(c))**

1021. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1022. Comfort is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1023. Manuel knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Comfort through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1024. Furthermore, Manuel knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Comfort through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1025. Upon information and belief, the property that Manuel transferred and divided amongst themselves, were proceeds of illegal activity.

1026. Upon information and belief, Manuel intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1027. Upon information and belief, Manuel knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Ilyabayev.

1028. Upon information and belief, Manuel knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1029. A copy of a check used in the scheme by Comfort is attached hereto as Exhibit CC.

1030. As reflected therein, Comfort issued a check to Petroff Amshen on July 2, 2018 totaling $1,650.00.

1031. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1032. Upon information and belief, Comfort's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Manuel operates Comfort, inasmuch as Comfort is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Comfort to function.

1033. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of

continued criminal activity, as does the fact that Manuel, upon information and belief, continue to engage in the criminal activity described herein.

1034. These inherently unlawful acts are taken by Manuel in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1035. Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND ELEVENTH CAUSE OF ACTION**
**Against Manuel and Comfort**
**(Common Law Fraud)**

1036. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1037. Comfort and Manuel intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1038. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Comfort (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1039. Manuel and Comfort intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1040. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1041. Comfort and Manuel's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1042. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND TWELFTH CAUSE OF ACTION**
**Against Manuel and Comfort**
**(Unjust Enrichment)**

1043. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1044. As set forth above, Manuel and Comfort have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1045. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Manuel and Comfort, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1046. Manuel and Comfort have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Manuel and Comfort voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND THIRTEENTH CAUSE OF ACTION**
**Against Manuel and Comfort**
**(Declaratory Judgment)**

1047. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1048. There is an actual controversy between Petroff Amshen and Manuel and Comfort regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Manuel and Comfort in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1049. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1050. Example of a past check that is the subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 147 | 7/2/2018 | **$1,650** |
| | | |
| | | |

1051. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Manuel and Comfort; never communicated with Manuel and Comfort regarding payment of services, had no knowledge that Manuel and Comfort were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit CC and Manuel and Comfort are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND FOURTEENTH CAUSE OF ACTION**
**Against Schies**
**(Violation of 18 U.S.C. § 1962(c))**

1052. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1053. Canarsie Wellness is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1054. Schies knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Canarsie Wellness through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1055. Furthermore, Schies knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Canarsie Wellness through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1056. Upon information and belief, the property that Schies transferred and divided were proceeds of illegal activity.

1057. Upon information and belief, Schies intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1058. Upon information and belief, Schies knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Schies.

1059. Upon information and belief, Schies knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1060. A copy of a check used in the scheme by Canarsie Wellness is attached hereto as Exhibit DD.

1061. As reflected therein, Canarsie Wellness issued a check to Petroff Amshen on December 24, 2017 totaling $9,125.00.

1062. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1063. Upon information and belief, Canarsie Wellness' business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Schies operates Canarsie Wellness, inasmuch as Canarsie Wellness is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Canarsie Wellness to function.

1064. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Schies, upon information and belief, continue to engage in the criminal activity described herein.

1065. These inherently unlawful acts are taken by Schies in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1066. Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND FIFTEENTH CAUSE OF ACTION**
**Against Schies and Canarsie Wellness**
**(Common Law Fraud)**

1067. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1068. Canarsie Wellness and Schies intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1069. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Canarsie Wellness (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1070. Schies and Canarsie Wellness intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1071. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1072. Canarsie Wellness and Schies' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1073. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND SIXTEENTH CAUSE OF ACTION**
**Against Schies and Canarsie Wellness**
**(Unjust Enrichment)**

1074. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1075. As set forth above, Schies and Canarsie Wellness have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1076. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Schies and Canarsie Wellness, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1077. Schies and Canarsie Wellness have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Schies and Canarsie Wellness voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND SEVENTEENTH CAUSE OF ACTION**
**Against Schies and Canarsie Wellness**
**(Declaratory Judgment)**

1078. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1079. There is an actual controversy between Petroff Amshen and Schies and Canarsie Wellness regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen’s reputation as a result of the past and future conduct of Schies and Canarsie

Wellness in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1080. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1081. An example of a past check that is subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 2000 | 12/24/2017 | $9,125 |
| | | |

1082. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Schies and Canarsie Wellness; never communicated with Schies and Canarsie Wellness regarding payment of services, had no knowledge that Schies and Canarsie Wellness were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit DD Schies and Canarsie Wellness are precluded from engaging in any such acts in the future.

**<u>ONE HUNDRED AND EIGHTEENTH CAUSE OF ACTION</u>**
**Against Podhayetska**
**(Violation of 18 U.S.C. § 1962(c))**

1083. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1084. BAC is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1085. Podhayetska knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BAC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1086. Furthermore, Podhayetska knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BAC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1087. Upon information and belief, the property that Podhayetska transferred and divided amongst themselves, were proceeds of illegal activity.

1088. Upon information and belief, Podhayetska intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1089. Upon information and belief, Podhayetska knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Podhayetska.

1090. Upon information and belief, Podhayetska knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1091. Copies of the checks used in the scheme by BAC are attached hereto as Exhibit EE.

1092. As reflected therein, BAC issued checks to Petroff Amshen from August 29, 2018 through November 26, 2018 totaling $21,400.00.

1093. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1094. Upon information and belief, BAC's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Podhayetska operates BAC, inasmuch as BAC is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for BAC to function.

1095. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Podhayetska, upon information and belief, continue to engage in the criminal activity described herein.

1096. These inherently unlawful acts are taken by Podhayetska in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1097. Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND NINETEENTH CAUSE OF ACTION**
**Against Podhayetska and BAC**
**(Common Law Fraud)**

1098. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1099. BAC and Podhayetska intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1100. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the BAC (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1101. Podhayetska and BAC intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1102. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1103. BAC and Podhayetska's extensive fraudulent conduct demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1104. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND TWENTIETH CAUSE OF ACTION**
**Against Podhayetska and BAC**
**(Unjust Enrichment)**

1105. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1106. As set forth above, Podhayetska and BAC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1107. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Podhayetska and BAC, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1108. Podhayetska and BAC have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Podhayetska and BAC voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND TWENTY-FIRST CAUSE OF ACTION**
**Against Podhayetska and BAC**
**(Declaratory Judgment)**

1109. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1110. There is an actual controversy between Petroff Amshen and Podhayetska and BAC regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Podhayetska and BAC in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1111. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1112. Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 624 | 8/29/2018 | $8,000 |
| 676 | 10/30/2018 | $7,200 |
| 724 | 11/26/2018 | $6,200 |
| | | |
| | | **$21,400** |
| | | |

1113. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Podhayetska and BAC; never communicated with Podhayetska and BAC regarding payment of services, had no knowledge that Podhayetska and BAC were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit EE, Podhayetska and BAC are precluded from engaging in any such acts in the future.

**<u>ONE HUNDRED AND TWENTY-SECOND CAUSE OF ACTION</u>**
**Against Saidy**
**(Violation of 18 U.S.C. § 1962(c))**

1114. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1115. BSR is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1116. Saidy knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BSR through a pattern of racketeering activity consisting of repeated

violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1117. Furthermore, Saidy knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BSR through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1118. Upon information and belief, the property that Saidy transferred and divided amongst themselves, were proceeds of illegal activity.

1119. Upon information and belief, Saidy intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1120. Upon information and belief, Saidy knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Saidy.

1121. Upon information and belief, Saidy knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1122. Copies of the checks used in the scheme by BSR are attached hereto as Exhibit FF.

1123. As reflected therein, BSR issued checks to Petroff Amshen on July 2, 2018 and November 2, 2018 totaling $14,438.00.

1124. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1125. Upon information and belief, BSR's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering

money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Saidy operates BSR, inasmuch as BSR is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for BSR to function.

1126. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Saidy, upon information and belief, continue to engage in the criminal activity described herein.

1127. These inherently unlawful acts are taken by Saidy in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1128. Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND TWENTY-THIRD CAUSE OF ACTION**
**Against Saidy and BSR**
**(Common Law Fraud)**

1129. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1130. BSR and Saidy intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1131. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the BSR (ii) claiming that Petroff Amshen received checks

as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1132. Saidy and BSR intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1133. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1134. BSR and Saidy's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1135. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ONE HUNDRED AND TWENTY-FOURTH CAUSE OF ACTION
**Against Saidy and BSR**
**(Unjust Enrichment)**

1136. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1137. As set forth above, Saidy and BSR have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1138. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Saidy and BSR, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1139. Saidy and BSR have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Saidy and BSR voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND TWENTY-FIFTH CAUSE OF ACTION**
**Against Saidy and BSR**
**(Declaratory Judgment)**

1140. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1141. There is an actual controversy between Petroff Amshen and Saidy and BSR regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Saidy and BSR in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1142. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1143. Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 123 | 8/2/2018 | $10,838 |
| 150 | 11/2/2018 | $3,600 |
| | | |
| | | **$14,438** |
| | | |

Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Saidy and BSR; never communicated with Saidy and BSR regarding payment of services, had no knowledge that Saidy and BSR were using its name to launder money; all signatures of Petroff

Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit FF, Saidy and BSR are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND TWENTY-SIXTH CAUSE OF ACTION**
**Against Bodchynska and Kurkarewicz**
**(Violation of 18 U.S.C. § 1962(c))**

1144. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1145. BL is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1146. Bodchynska and Kurkarewicz knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BL through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1147. Furthermore, Bodchynska and Kurkarewicz knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BL through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1148. Upon information and belief, the property that Bodchynska and Kurkarewicz transferred and divided amongst themselves, were proceeds of illegal activity.

1149. Upon information and belief, Bodchynska and Kurkarewicz intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1150. Upon information and belief, Bodchynska and Kurkarewicz knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole

to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Saidy.

1151. Upon information and belief, Bodchynska and Kurkarewicz knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1152. Copies of the checks used in the scheme by BL are attached hereto as Exhibit GG.

1153. As reflected therein, BL issued checks to Petroff Amshen on February 27, 2017 and April 28, 2018 totaling $5,100.00.

1154. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1155. Upon information and belief, BL's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Bodchynska and Kurkarewicz operate BL, inasmuch as BL is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for BL to function.

1156. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of

continued criminal activity, as does the fact that Bodchynska and Kurkarewicz, upon information and belief, continue to engage in the criminal activity described herein.

1157. These inherently unlawful acts are taken by Bodchynska and Kurkarewicz in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1158. Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND TWENTY-SEVENTH CAUSE OF ACTION**
**Against Bodchynska, Kurkarewicz and BL**
**(Common Law Fraud)**

1159. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1160. BL, Bodchynska and Kurkarewicz intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1161. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the BL (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1162. Bodchynska and Kurkarewicz and BL intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1163. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1164. BL, Bodchynska and Kurkarewicz's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1165. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND TWENTY-EIGHTH CAUSE OF ACTION**
**Against Bodchynska, Kurkarewicz and BL**
**(Unjust Enrichment)**

1166. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1167. As set forth above, Bodchynska, Kurkarewicz and BL have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1168. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of BL, Bodchynska and Kurkarewicz, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1169. BL, Bodchynska and Kurkarewicz have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that BL, Bodchynska and Kurkarewicz voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND TWENTY-NINTH CAUSE OF ACTION**
**Against Bodchynska, Kurkarewicz and BL**
**(Declaratory Judgment)**

1170. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1171. There is an actual controversy between Petroff Amshen and BL, Bodchynska and Kurkarewicz regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of BL, Bodchynska and Kurkarewicz in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1172. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1173. Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from TD Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1222 | 2/27/2017 | $2,500 |
| 1542 | 4/28/2018 | $2,600 |
| | | |
| | | **$5,100** |
| | | |

1174. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to BL, Bodchynska and Kurkarewicz; never communicated with BL, Bodchynska and Kurkarewicz regarding payment of services, had no knowledge that BL, Bodchynska and Kurkarewicz were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit GG, BL, Bodchynska and Kurkarewicz are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND THIRTIETH CAUSE OF ACTION**
**Against Daimond**
**(Violation of 18 U.S.C. § 1962(c))**

1175. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1176. BCR is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1177. Daimond knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BCR through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1178. Furthermore, Daimond knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BCR through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1179. Upon information and belief, the property that Daimond transferred and divided, were proceeds of illegal activity.

1180. Upon information and belief, Daimond intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1181. Upon information and belief, Daimond knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Daimond.

1182. Upon information and belief, Daimond knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1183. A copy of a check used in the scheme by BCR is attached hereto as Exhibit HH.

1184. As reflected therein, BCR issued a check to Petroff Amshen on November 1, 2018 totaling $3,400.00.

1185. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1186. Upon information and belief, BCR's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Daimond operates BCR, inasmuch as BCR is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for BCR to function.

1187. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Daimond, upon information and belief, continue to engage in the criminal activity described herein.

1188. These inherently unlawful acts are taken by Daimond in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1189. Petroff Amshen has been injured as stated above.

## ONE HUNDRED AND THIRTY-FIRST CAUSE OF ACTION
**Against Daimond and BCR**
**(Common Law Fraud)**

1190. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1191. BCR and Daimond intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1192. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the BCR (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1193. Daimond and BCR intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1194. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1195. Daimond and BCR's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1196. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRETH AND THIRTY-SECOND CAUSE OF ACTION**
**Against Daimond and BCR**
**(Unjust Enrichment)**

1197. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1198. As set forth above, Daimond and BCR have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1199. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Daimond and BCR, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1200. Daimond and BCR have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Daimond and BCR voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRETH AND THIRTY-THIRD CAUSE OF ACTION**
**Against Daimond and BCR**
**(Declaratory Judgment)**

1201. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1202. There is an actual controversy between Petroff Amshen and Daimond and BCR regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen’s reputation as a result of the past and future conduct of Daimond and BCR in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1203. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1204. Example of a past check that is the subject to the relief sought herein, include, but not limited to a check from TD Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 620 | 11/1/2018 | **$3,400** |
| | | |

1205. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Daimond and BCR; never communicated with Daimond and BCR regarding payment of services, had no knowledge that Daimond and BCR were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit HH, and Daimond and BCR are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND THIRTY-FOURTH CAUSE OF ACTION**
**Against Abourya**
**(Violation of 18 U.S.C. § 1962(c))**

1206. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1207. BT is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1208. Abourya knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BT through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1209. Furthermore, Abourya knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BT through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1210. Upon information and belief, the property that Abourya transferred and divided were proceeds of illegal activity.

1211. Upon information and belief, Abourya intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1212. Upon information and belief, Abourya knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Abourya.

1213. Upon information and belief, Abourya knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1214. Copies of checks used in the scheme by BT is attached hereto as Exhibit II.

1215. As reflected therein, BT issued checks to Petroff Amshen from June 9, 2017 through September 5, 2018 totaling $23,239.00. The addresses on the checks as reflected therein, 35 Starlight Road, Staten Island, New York 10301.

1216. As reflected therein, the memo lines of most of the check state "legal fee." Petroff Amshen did not provide legal services to BT.

1217. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1218. Upon information and belief, BT's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Abourya operates BT, inasmuch as BT is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for BT to function.

1219. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Abourya, upon information and belief, continue to engage in the criminal activity described herein.

1220. These inherently unlawful acts are taken by Abourya in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1221. Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND THIRTY-FIFTH CAUSE OF ACTION**
**Against Abourya and BT**
**(Common Law Fraud)**

1222. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1223. BT and Abourya intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1224. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the BT (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1225. Abourya and BT intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1226. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1227. BT and Abourya's extensive fraudulent conduct demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1228. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ONE HUNDRED AND THIRTY-SIXTH CAUSE OF ACTION
**Against Abourya and BT**
**(Unjust Enrichment)**

1229. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1230. As set forth above, Abourya and BT have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1231. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Abourya and BT, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1232. Abourya and BT have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Abourya and BT voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND THIRTY-SEVENTH CAUSE OF ACTION**
**Against Abourya and BT**
**(Declaratory Judgment)**

1233. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1234. There is an actual controversy between Petroff Amshen and Abourya and BT regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Abourya and BT in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1235. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1236. Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from TD Bank and JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1557 | 6/9/2017 | $2,500 |
| 1566 | 6/30/2017 | $3,100 |
| 1655 | 9/7/2017 | $4,539 |
| 1701 | 1/9/2018 | $8,500 |
| 1813 | 7/10/2018 | $3,000 |
| 1897 | 8/6/2018 | $5,600 |
| 2106 | 9/5/2018 | $5,000 |
| | | |
| | | **$32,239** |
| | | |

1237. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Abourya and BT; never communicated with Abourya and BT regarding payment of services, had no knowledge that Abourya and BT were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit II, and Abourya and BT are precluded from engaging in any such acts in the future.

**<u>ONE HUNDRED AND THIRTY-EIGHTH CAUSE OF ACTION</u>**
**Against Ebeido**
**(Violation of 18 U.S.C. § 1962(c))**

1238. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1239. MHOH is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1240. Ebeido knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of MHOH through a pattern of racketeering activity consisting of repeated

violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1241. Furthermore, Ebeido knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of MHOH through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1242. Upon information and belief, the property that Ebeido transferred and divided were proceeds of illegal activity.

1243. Upon information and belief, Ebeido intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1244. Upon information and belief, Ebeido knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Ebeido.

1245. Upon information and belief, Ebeido knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1246. Copies of checks used in the scheme by MHOH is attached hereto as Exhibit JJ.

1247. As reflected therein, MHOH issued checks to Petroff Amshen from August 1, 2017 through May 7, 2018 totaling $13,985.00 The addresses on the checks as reflected therein vary as four different addresses were used as the purported corporate address.

1248. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1249. Upon information and belief, MHOH's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Ebeido operates MHOH, inasmuch as MHOH is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for MHOH to function.

1250. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Ebeido, upon information and belief, continue to engage in the criminal activity described herein.

1251. These inherently unlawful acts are taken by Ebeido in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1252. Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND THIRTY-NINTH CAUSE OF ACTION**
**Against Ebeido and MHOH**
**(Common Law Fraud)**

1253. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1254. MHOH and Ebeido intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1255. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the MHOH (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1256. Ebeido and MHOH intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1257. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1258. MHOH and Ebeido's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1259. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND FORTIETH CAUSE OF ACTION**
**Against Ebeido and MHOH**
**(Unjust Enrichment)**

1260. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1261. As set forth above, Ebeido and MHOH have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1262. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Ebeido and MHOH, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1263. Ebeido and MHOH have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Ebeido and MHOH voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND FORTY-FIRST CAUSE OF ACTION**
**Against Ebeido and MHOH**
**(Declaratory Judgment)**

1264. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1265. There is an actual controversy between Petroff Amshen and Ebeido and MHOH regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Ebeido and MHOH in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1266. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1267. Example of past checks that are the subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 291 | 8/1/2017 | $3,650 |
| 261 | 12/7/2017 | $3,885 |
| 500 | 5/7/2018 | $6,450 |
| | | |
| | | **$13,985** |
| | | |

1268. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Ebeido and MHOH; never communicated with Ebeido and MHOH regarding payment of services, had no knowledge that Ebeido and MHOH were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit JJ, and Ebeido and MHOH are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND FORTY-SECOND CAUSE OF ACTION**
**Against Bobchynska**
**(Violation of 18 U.S.C. § 1962(c))**

1269. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1270. Meridian is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1271. Bobchynska knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Meridian through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1272. Furthermore, Bobchynska knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Meridian through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1273. Upon information and belief, the property that Bobchynska transferred and divided were proceeds of illegal activity.

1274. Upon information and belief, Bobchynska intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1275. Upon information and belief, Bobchynska knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Bobchynska.

1276. Upon information and belief, Bobchynska knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1277. Copies of checks used in the scheme by Meridian is attached hereto as Exhibit KK.

1278. As reflected therein, Meridian issued checks to Petroff Amshen on March 3, 2017 and December 26, 2018 totaling $5,577.00.

1279. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1280. Upon information and belief, Meridian's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Bobchynska operates Meridian, inasmuch as Meridian is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Meridian to function.

1281. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Bobchynska, upon information and belief, continue to engage in the criminal activity described herein.

1282. These inherently unlawful acts are taken by Bobchynska in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1283. Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND FORTY-THIRD CAUSE OF ACTION**
**Against Bobchynska and Meridian**
**(Common Law Fraud)**

1284. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1285. Meridian and Bobchynska intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1286. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Meridian (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1287. Bobchynska and Meridian intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1288. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1289. Meridian and Bobchynska's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1290. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND FORTY-FOURTH CAUSE OF ACTION**
**Against Bobchynska and Meridian**
**(Unjust Enrichment)**

1291. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1292. As set forth above, Bobchynska and Meridian have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1293. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Bobchynska and Meridian, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1294. Bobchynska and Meridian have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Bobchynska and Meridian voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND FORTY-FIFTH CAUSE OF ACTION**
**Against Bobchynska and Meridian**
**(Declaratory Judgment)**

1295. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1296. There is an actual controversy between Petroff Amshen and Bobchynska and Meridian regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Bobchynska and Meridian in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1297. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1298. Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from Capitol One:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 2184 | 3/29/2017 | $3,500 |
| 2284 | 10/26/2018 | $2,077 |
| | | |
| | | **$5,577** |
| | | |

1299. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Bobchynska and Meridian; never communicated with Bobchynska and Meridian regarding payment of services, had no knowledge that Bobchynska and Meridian were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as

Exhibit KK, and Bobchynska and Meridian are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND FORTY-SIXTH CAUSE OF ACTION**
**Against Coleman**
**(Violation of 18 U.S.C. § 1962(c))**

1300. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1301. MI is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1302. Coleman knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of MI through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1303. Furthermore, Coleman knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of MI through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1304. Upon information and belief, the property that Coleman transferred and divided were proceeds of illegal activity.

1305. Upon information and belief, Coleman intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1306. Upon information and belief, Coleman knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Coleman.

1307. Upon information and belief, Coleman knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1308. Copies of checks used in the scheme by MI is attached hereto as Exhibit LL.

1309. As reflected therein, MI issued checks to Petroff Amshen on December 15, 2017 and December 20, 2017 totaling $2,975.00.

1310. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1311. Upon information and belief, MI's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Coleman operates MI, inasmuch as MI is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for MI to function.

1312. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Coleman, upon information and belief, continue to engage in the criminal activity described herein.

1313. These inherently unlawful acts are taken by Coleman in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1314. Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND FORTY-SEVENTH CAUSE OF ACTION**
**Against Coleman and MI**
**(Common Law Fraud)**

1315. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1316. MI and Coleman intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1317. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the MI (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1318. Coleman and MI intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1319. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1320. Coleman and MI's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1321. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND FOURTY-EIGHTH CAUSE OF ACTION**
**Against Coleman and MI**
**(Unjust Enrichment)**

1322. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1323. As set forth above, Coleman and MI have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1324. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Coleman and MI, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1325. Coleman and MI have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Coleman and MI voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND FOURTY-NINTH CAUSE OF ACTION**
**Against Coleman and MI**
**(Declaratory Judgment)**

1326. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1327. There is an actual controversy between Petroff Amshen and Coleman and MI regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff

Amshen's reputation as a result of the past and future conduct of Coleman and MI in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1328. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1329. Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from TD Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 900 | 12/15/2017 | $1,675 |
| 876 | 12/20/2017 | $1,360 |
| | | |

1330. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Coleman and MI; never communicated with Coleman and MI regarding payment of services, had no knowledge that Coleman and MI were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit LL, and Coleman and MI are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND FIFTIETH CAUSE OF ACTION**
**Against Abouhassan**
**(Violation of 18 U.S.C. § 1962(c))**

1331. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1332. PTR is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1333. Abouhassan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of PTR through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1334. Furthermore, Abouhassan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of PTR through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1335. Upon information and belief, the property that Abouhassan transferred and divided were proceeds of illegal activity.

1336. Upon information and belief, Abouhassan intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1337. Upon information and belief, Abouhassan knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Abouhassan.

1338. Upon information and belief, Abouhassan knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1339. Copies of checks used in the scheme by PTR is attached hereto as Exhibit MM.

1340. As reflected therein, PTR issued checks to Petroff Amshen from April 2, 2018 through December 3, 2018 totaling $18,997.00.

1341. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1342. Upon information and belief, PTR's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Abouhassan operates PTR, inasmuch as PTR is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for PTR to function.

1343. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Abouhassan, upon information and belief, continue to engage in the criminal activity described herein.

1344. These inherently unlawful acts are taken by Abouhassan in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1345. Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND FIFTY-FIRST CAUSE OF ACTION**
**Against Abouhassan and PTR**
**(Common Law Fraud)**

1346. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1347. PTR and Abouhassan intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1348. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the PTR (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1349. Abouhassan and PTR intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1350. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1351. Abouhassan and PTR's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1352. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND FIFTY-SECOND CAUSE OF ACTION**
**Against Abouhassan and PTR**
**(Unjust Enrichment)**

1353. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1354. As set forth above, Abouhassan and PTR have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1355. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Abouhassan and PTR, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1356. Abouhassan and PTR have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Abouhassan and PTR voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND FIFTY-THIRD CAUSE OF ACTION**
**Against Abouhassan and PTR**
**(Declaratory Judgment)**

1357. There is an actual controversy between Petroff Amshen and Abouhassan and PTR regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Abouhassan and PTR in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1358. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1359. Example of past checks that are the subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 4148 | 12/3/2019 | $6,197 |
| 4229 | 11/10/2017 | $3,500 |
| 4267 | 4/2/2018 | $5,100 |
| 4284 | 6/28/2018 | $4,200 |
| | | |
| | | **$18,997** |
| | | |

1360. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Abouhassan and PTR; never communicated with Abouhassan and PTR regarding payment of services, had no knowledge that Abouhassan and PTR were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit MM, and Abouhassan and PTR are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND FIFTY-FOURTH CAUSE OF ACTION**
**Against John Doe**
**(Violation of 18 U.S.C. § 1962(c))**

1361. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1362. AHP is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1363. John Doe knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of AHP through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1364. Furthermore, John Doe knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of AHP through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1365. Upon information and belief, the property that John Doe transferred and divided were proceeds of illegal activity.

1366. Upon information and belief, John Doe intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1367. Upon information and belief, John Doe knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of John Doe.

1368. Upon information and belief, John Doe knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1369. Copies of checks used in the scheme by AHP is attached hereto as Exhibit NN.

1370. As reflected therein, AHP issued checks to Petroff Amshen from July 14, 2017 through May 7, 2018 totaling $48,600.00.

1371. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1372. Upon information and belief, AHP's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which John Doe operates AHP, inasmuch as AHP is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for AHP to function.

1373. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that John Doe, upon information and belief, continue to engage in the criminal activity described herein.

1374. These inherently unlawful acts are taken by John Doe in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1375. Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND FIFTY-FIFTH CAUSE OF ACTION**
**Against John Doe and AHP**
**(Common Law Fraud)**

1376. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1377. AHP and John Doe intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1378. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the AHP (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1379. John Doe and AHP intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1380. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1381. John Doe and AHP's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1382. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND FIFTY-SIXTH CAUSE OF ACTION**
**Against John Doe and AHP**
**(Unjust Enrichment)**

1383. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1384. As set forth above, John Doe and AHP have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1385. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of John Doe and AHP, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1386. John Doe and AHP have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that John Doe and AHP voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND FIFTY-SEVENTH CAUSE OF ACTION**
**Against John Doe and AHP**
**(Declaratory Judgment)**

1387. There is an actual controversy between Petroff Amshen and John Doe and AHP regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of John Doe and AHP in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1388. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1389. Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from Santander:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 2032 | 7/14/2017 | $7,500 |
| 106 | 12/15/2017 | $6,800 |
| 144 | 2/22/2018 | $5,200 |
| 159 | 3/8/2018 | $7,500 |
| 193 | 4/11/2018 | $7,500 |
| 221 | 5/7/2018 | $7,300 |
| | | |
| | | **$48,600** |
| | | |

1390. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to John Doe and AHP; never communicated with John Doe and AHP regarding payment of services, had no knowledge that John Doe and AHP were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit NN, and John Doe and AHP are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND FIFTY-EIGHTH CAUSE OF ACTION**
**Against Lavelle**
**(Violation of 18 U.S.C. § 1962(c))**

1391. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1392. Lavelle PC is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1393. Lavelle knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Lavelle PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1394. Furthermore, Lavelle knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Lavelle PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1395. Upon information and belief, the property that Lavelle transferred and divided were proceeds of illegal activity.

1396. Upon information and belief, Lavelle intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1397. Upon information and belief, Lavelle knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Lavelle.

1398. Upon information and belief, Lavelle knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1399. A copy of a check used in the scheme by Lavelle PC is attached hereto as Exhibit OO.

1400. As reflected therein, Lavelle PC issued a check to Petroff Amshen totaling $4,806.00.

1401. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1402. Upon information and belief, Lavelle PC's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Lavelle operates Lavelle PC, inasmuch as Lavelle PC is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Lavelle PC to function.

1403. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Lavelle, upon information and belief, continue to engage in the criminal activity described herein.

1404. These inherently unlawful acts are taken by Lavelle in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1405. Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND FIFTY-NINTH CAUSE OF ACTION**
**Against Lavelle and Lavelle PC**
**(Common Law Fraud)**

1406. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1407. Lavelle and Lavelle PC intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1408. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Lavelle PC (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1409. Lavelle and Lavelle PC intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1410. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1411. Lavelle and Lavelle PC's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1412. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND SIXTIETH CAUSE OF ACTION**
**Against Lavelle and Lavelle PC**
**(Unjust Enrichment)**

1413. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1414. As set forth above, Lavelle and Lavelle PC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1415. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Lavelle and Lavelle PC, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1416. Lavelle and Lavelle PC have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Lavelle and Lavelle PC voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND SIXTY-FIRST CAUSE OF ACTION**
**Against Lavelle and Lavelle PC**
**(Declaratory Judgment)**

1417. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1418. There is an actual controversy between Petroff Amshen and Lavelle and Lavelle PC regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Lavelle and Lavelle PC in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1419. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1420. Examples of a past check that are subject to the relief sought herein, include, but not limited to a check from Signature Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 41313 | Aug-17 | $4,860 |
| | | |

1421. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Lavelle and Lavelle PC; never communicated with Lavelle and Lavelle PC regarding payment of services, had no knowledge that Lavelle and Lavelle PC were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit OO, and Lavelle and Lavelle PC are precluded from engaging in any such acts in the future.

## ONE HUNDRED AND SIXTY-SECOND CAUSE OF ACTION
**Against Elsanaa, Zhong and Libing**
**(Violation of 18 U.S.C. § 1962(c))**

1422. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1423. Elsanaa PC is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1424. Elsanaa, Zhon and Libing, knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Elsanaa PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1425. Furthermore, Elsanaa, Zhong and Libing, knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Elsanaa PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1426. Upon information and belief, the property that Elsanaa, Zhong and Libing transferred and divided were proceeds of illegal activity.

1427. Upon information and belief, Elsanaa, Zhong and Libing intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1428. Upon information and belief, Elsanaa, Zhong and Libing knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Elsanaa, Zhong and Libing.

1429. Upon information and belief, Elsanaa, Zhong and Libing knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1430. A copy of a check used in the scheme by Elsanaa PC is attached hereto as Exhibit PP.

1431. As reflected therein, Elsanaa PC issued a check to Petroff Amshen totaling $6,000.00.

1432. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1433. Upon information and belief, Elsanaa PC's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Elsanaa, Zhong and Libing operate Elsanaa PC, inasmuch as Elsanaa PC is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Elsanaa PC to function.

1434. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Elsanaa, Zhong and Libing, upon information and belief, continue to engage in the criminal activity described herein.

1435. These inherently unlawful acts are taken by Elsanaa, Zhong and Libing in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1436. Petroff Amshen has been injured as stated above.

**<u>ONE HUNDRED AND SIXTY-THIRD CAUSE OF ACTION</u>**
**Against Elsanaa, Zhong, Libing and Elsanaa PC**
**(Common Law Fraud)**

1437. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1438. Elsanaa, Zhong, Libing and Elsanaa PC intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1439. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to Elsanaa PC (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1440. Elsanaa, Zhong, Libing, and Elsanaa PC intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1441. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1442. Elsanaa, Zhong, Libing and Elsanaa PC's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1443. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND SIXTY-FOURTH CAUSE OF ACTION**
**Against Elsanaa, Zhong, Libing and Elsanaa PC**
**(Unjust Enrichment)**

1444. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1445. As set forth above, Elsanaa, Zhong, Libing and Elsanaa PC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1446. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Elsanaa, Zhong, Libing, and Elsanaa PC, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1447. Elsanaa, Zhong, Libing and Elsanaa PC have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Elsanaa, Zhong, Libing and Elsanaa PC voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND SIXTY-FIFTH CAUSE OF ACTION**
**Against Elsanaa, Zhong, Libing and Elsanaa PC**
**(Declaratory Judgment)**

1448. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1449. There is an actual controversy between Petroff Amshen and Elsanaa, Zhong, Libing, and Elsanaa PC regarding more than $75,000.00 in past and future tax consequences as

well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Elsanaa, Zhong, Libing, and Elsanaa PC in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1450. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1451. Examples of a past check that are subject to the relief sought herein, include, but not limited to a check from Bank of America:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1004 | 1/13/2017 | $6,000 |
| | | |

1452. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Elsanaa, Zhong, Libing and Elsanaa PC; never communicated with Elsanaa, Zhong, Libing and Elsanaa PC regarding payment of services, had no knowledge that Elsanaa, Zhong, Libing and Elsanaa PC were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the check that copy of which is attached as Exhibit PP, and Elsanaa, Zhong, Libing and Elsanaa PC are precluded from engaging in any such acts in the future.

## JURY DEMAND

1453. Pursuant to Federal Rule of Civil Procedure 38(b), Petroff Amshen demands a trial by jury.

**WHEREFORE,** Plaintiff Petroff Amshen, LLP demands that a Judgment be entered in its favor:

1. On the First Cause of Action against all the Defendants, a declaration pursuant to Declaratory Judgment Act 28 U.S.C.§§ 22011 and 2202, (a) that Petroff Amshen did not render legal services to the Defendants (b) never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money, (c) all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, (d) any W-9 or 1099 form that reflects that Petroff Amshen received services from any of the Defendants is null and void, and (e) the Defendants are precluded from doing any such acts in the future.

2. On the Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

3. On the Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

4. On the Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

5. On the Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

6. On the Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

7. On the Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

8. On the Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

9. On the Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

10. On the Tenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

11. On the Eleventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

12. On the Twelfth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

13. On the Thirteenth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

14. On the Fourteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

15. On the Fifteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

16. On the Sixteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

17. On the Seventeenth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

18. On the Eighteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

19. On the Nineteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

20. On the Twentieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

21. On the Twenty First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

22. On the Twenty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

23. Twenty Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

24. On the Twenty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive

damages, together with costs and interest and such other and further relief as this Court deems just and proper.

25. On the Twenty Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

26. On the Twenty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

27. On the Twenty Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

28. On the Twenty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper;

29. On the Twenty Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

30. On the Thirtieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

31. On the Thirty First Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

32. On the Thirty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

33. On the Thirty Third Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

34. On the Thirty-Forth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

35. On the Thirty Fifth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

36. On the Thirty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive

damages, together with costs and interest and such other and further relief as this Court deems just and proper.

37. On the Thirty Seventh Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

38. On the Thirty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

39. On the Thirty Ninth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

40. On the Fortieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

41. On the Forty First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

42. On the Forty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

43. On the Forty Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

44. On the Forth Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

45. On the Forty Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

46. On the Forty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

47. On the Forty Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

48. On the Forty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

49. On the Forty Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding

payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

50. On the Fiftieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

51. On the Fifty First Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

52. On the Fifty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

53. On the Fifty Third Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

54. On the Fifty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

55. On the Fifty Fifth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

56. On the Fifty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

57. On the Fifty Seventh Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

58. On the Fifty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

59. On the Fifty Ninth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

60. On the Sixtieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

61. On the Sixty First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

62. On the Sixty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

63. On the Sixty Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

64. On the Sixty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

65. On the Sixty Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

66. On the Sixty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

67. On the Sixty Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

68. On the Sixth Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive

damages, together with costs and interest and such other and further relief as this Court deems just and proper.

69. On the Sixty Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

70. On the Seventieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

71. On the Seventy First Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

72. On the Seventy Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

73. On the Seventy Third Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

74. On the Seventy Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

75. On the Seventy Fifth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

76. On the Seventy Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

77. On the Seventy Seventh Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

78. On the Seventy Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

79. On the Seventy Ninth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

80. On the Eightieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

81. On the Eighty First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

82. On the Eighty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

83. On the Eighty Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

84. On the Eighty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

85. On the Eighty Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

86. On the Eighty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

87. On the Eighty Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together

with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

88. On the Eighty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

89. On the Eighty Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

90. On the Ninetieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

91. On the Ninety First Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

92. On the Ninety Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

93. On the Ninety Third Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding

payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

94. On the Ninety Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

95. On the Ninety Fifth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

96. On the Ninety Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

97. On the Ninety Seventh Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

98. On the Ninety Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

99. On the Ninety Ninth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

100. On the One Hundredth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

101. On the One Hundred and First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

102. On the One Hundred and Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

103. On the One Hundred and Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

104. On the One Hundred and Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

105. On the One Hundred and Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to

launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

106. On the One Hundred and Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

107. On the One Hundred and Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

108. On the One Hundred and Eighth Cause of action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

109. On the One Hundredth and Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

110. On the One Hundred and Tenth of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

111. On the One Hundred and Eleventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00,

together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

112. On the One Hundred and Twelfth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

113. On the One Hundred and Thirteenth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

114. On the One Hundred and Fourteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

115. On the One Hundred and Fifteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

116. On the One Hundred and Sixteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

117. On the One Hundred and Seventeenth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

118. On the One Hundred and Eighteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

119. On the One Hundred and Nineteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

120. On the One Hundred and Twentieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

121. On the One Hundred and Twenty First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

122. On the One Hundred and Twenty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of

$1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

123. On the One Hundred and Twenty Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

124. On the One Hundred and Twenty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

125. On the One Hundred and Twenty Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

126. On the One Hundred and Twenty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

127. On the One Hundred and Twenty Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

128. On the One Hundred and Twenty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

129. On the One Hundred and Twenty Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

130. On the One Hundred and Thirtieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

131. On the One Hundred and Thirty First Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

132. On the One Hundred and Thirty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

133. On the One Hundred and Thirty Third Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to

launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

134. On the One Hundred and Thirty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

135. On the One Hundred and Thirty Fifth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

136. On the One Hundred and Thirty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

137. On the One Hundred and Thirty Seventh Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

138. On the One Hundred and Thirty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

139. On the One Hundred and Thirty Ninth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00

together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

140. On the One Hundred and Fortieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

141. On the One Hundred and Forty First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

142. On the One Hundred and Forty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

143. On the One Hundred and Forty Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

144. On the One Hundred and Forty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

145. On the One Hundred and Forty Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

146. On the One Hundred and Forty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

147. On the One Hundred and Forty Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

148. On the One Hundred and Forty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

149. On the One Hundred and Forty Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

150. On the One Hundred and Fiftieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

151. On the One Hundred and Fifty First Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

152. On the One Hundred and Fifty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

153. On the One Hundred and Fifty Third Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

154. On the One Hundred and Fifty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

155. On the One Hundred and Fifty Fifth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

156. On the One Hundred and Fifty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

157. On the One Hundred and Fifty Seventh Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

158. On the One Hundred and Fifty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

159. On the One Hundred and Fifty Ninth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

160. On the One Hundred and Sixtieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

161. On the One Hundred and Sixty First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to

launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

162. On the One Hundred and Sixty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

163. On the One Hundred and Sixty Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

164. On the One Hundred and Sixty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

165. On the One Hundred and Sixty Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

Dated: March 29, 2019
Brooklyn, New York

*<u>/s/ Yehuda C. Morgenstern</u>*
Yehuda C. Morgenstern
Petroff Amshen LLP
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
(718) 336-4200 (tel)

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Petroff Amshen LLP | Alfa Rehab PT PC et al |
| (b) County of Residence of First Listed Plaintiff Kings<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant Kings<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| (c) Attorneys *(Firm Name, Address, and Telephone Number)*<br>Petroff Amshen LLP<br>1795 Coney Island Avenue, 3rd Floor Brooklyn, New York 11230<br>(718) 336-4200 | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☒ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. § 1962(c)

Brief description of cause:
Check cashing fraud case involving civil RICO/common law fraud/unjust enrichment/declaratory claims

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE DOCKET NUMBER

DATE
04/01/2019

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, Yehuda C. Morgenstern, counsel for Plaintiff, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☑ monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐ the complaint seeks injunctive relief,

☐ the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

None

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County? ☐ Yes ☑ No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? ☐ Yes ☑ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? ☑ Yes ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County? ☐ Yes ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☑ Yes ☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes (If yes, please explain ☑ No

I certify the accuracy of all information provided above.

**Signature:** [signature]

# Exhibit

# A

Form **W-9**
(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer Identification Number and Certification

**Give Form to the requester. Do not send to the IRS.**

Print or type
See Specific Instructions on page 2.

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.
PETROFF AMSHEN, LLP

2 Business name/disregarded entity name, if different from above

3 Check appropriate box for federal tax classification; check only **one** of the following seven boxes:
☐ Individual/sole proprietor or single-member LLC ☑ C Corporation ☐ S Corporation ☐ Partnership ☐ Trust/estate
☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶
**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.
☐ Other (see instructions) ▶

4 Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):
Exempt payee code (if any)
Exemption from FATCA reporting code (if any)
*(Applies to accounts maintained outside the U.S.)*

5 Address (number, street, and apt. or suite no.)
1795 CONEY ISLAND AVENUE

Requester's name and address (optional)

6 City, state, and ZIP code
BROOKLYN, NY 11230

7 List account number(s) here (optional)

## Part I Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

**Social security number**
☐☐☐ – ☐☐ – ☐☐☐☐

**or**

**Employer identification number**
[redacted]

## Part II Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here** Signature of U.S. person ▶ [signature] Date ▶ 10|1|2016

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

- Form 1099-INT (interest earned or paid)
- Form 1099-DIV (dividends, including those from stocks or mutual funds)
- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)
- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding? *on page 2.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),
2. Certify that you are not subject to backup withholding, or
3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and
4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.